# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **CR16-01012-PHX-SRB** |
| vs. | ) Phoenix, Arizona |
| | ) October 11, 2016 |
| **JOSEPH M. ARPAIO (01)** | ) 10:02 a.m. |
| **GERARD SHERIDAN (02)** | ) |
| **STEVEN R. BAILEY (03)** | ) |
| **MICHELE M. IAFRATE (4)** | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

### BEFORE:  THE HONORABLE SUSAN R. BOLTON, JUDGE

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

### STATUS CONFERENCE

Official Court Reporter:
Elizabeth A. Lemke, RDR, CRR, CPE
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 34
Phoenix, Arizona  85003-2150
(602) 322-7247

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                    **A P P E A R A N C E S**

2    **For the Government:**

3              U.S. DEPARTMENT OF JUSTICE-PUBLIC INTEGRITY
              SECTION
4              By:  **John D. Keller, Esq.**
              10th & Constitution Avenue
5              Washington, DC  20530

6              U.S. DEPARTMENT OF JUSTICE-PUBLIC INTEGRITY
              SECTION
7              By:  **Victor R. Salgado, Esq.**
              1400 New York Avenue NW, 12th Floor
8              WASHINGTON, DC  20005

9    **For the Defendant Joseph M. Arpaio:**

10             JONES SKELTON & HOCHULI, PLC
              By: **Andrew Melvin McDonald, Jr., Esq.**
11                 **Justin M. Ackerman, Esq.**
              40 N. Central Avenue, Suite 2700
12             Phoenix, Arizona  85004

13   **For the Defendants Gerard Sheridan and Steven R. Bailey:**

14             MITCHELL STEIN & CAREY PC
              By:  **Lee D. Stein, Esq.**
15                 **Barry D. Mitchell, Esq.**
                 (appearing telephonically)
16             Two North Central Avenue, Suite 1900
              Phoenix, Arizona  85004

17

18   **For the Defendant Michele M. Iafrate:**

19             LEWIS ROCA ROTHGERBER CHRISTIE LLP-PHOENIX
              By: **Dale A. Danneman, Esq.**
20             201 East Washington Street, Suite 1200
              Phoenix, Arizona  85004

21

22

23

24

25

1          **P R O C E E D I N G S**

2          (Called to the order of court at 10:02 a.m.)

3          THE COURT:  Good morning.  Please sit down.

4          THE CLERK:  Criminal case 16-1012, *United States of*

5  *America v. Joseph Arpaio, Gerard Sheridan, Steven Bailey and*

6  *Michele Iafrate*.  Time set for status conference.

7          Counsel, please announce your presence for the

8  record.

9          MR. KELLER:  Your Honor, John Keller on behalf of the

10  government.

11          MR. SALGADO:  Your Honor, Victor Salgado on behalf of

12  the government as well.

13          MR. McDONALD:  Good morning, Your Honor.  Mel

14  McDonald and Justin Ackerman on behalf of Sheriff Joe Arpaio.

15          MR. STEIN:  Good morning, Your Honor.  Lee Stein and

16  Barry Mitchell on behalf of Chief Deputy Sheridan and Captain

17  Bailey; and Mr. Mitchell is appearing by telephone.

18          MR. MITCHELL:  Good morning, Judge.

19          THE COURT:  Good morning.

20          MR. DANNEMAN:  Dale Danneman of Lewis Roca on behalf

21  of Michele Iafrate who is present and at counsel table with

22  me.

23          THE COURT:  This status hearing was requested by

24  counsel for the government and with the concurrence of counsel

25  for the defendants.

CR16-01012-PHX-SRB      STATUS CONFERENCE      10-11-16

1          I assume that there are a few items that you want to

2    discuss.  There's a few items that have occurred to me to

3    discuss and why don't I bring up the first one?

4          There isn't a lot of rule or statutory guidance with

5    respect to this action for criminal contempt.

6          So procedurally, Mr. Keller, how do you believe that

7    the government will proceed?

8          MR. KELLER:  Yes, Your Honor.

9          Would the Court prefer me to address from the podium

10   or from counsel table?

11         THE COURT:  Why don't you do it from the podium.

12   It's just easier for you to speak at the microphones that are

13   up a little higher.

14         MR. KELLER:  Yes, Your Honor.

15         So this is the primary issue that the government

16   wanted to address today.  There are three categories of

17   conduct that are addressed in the criminal contempt referral;

18   there's the violation of the preliminary injunction, there is

19   concealment of evidence related to Montgomery investigations,

20   a confidential informant working with the Sheriff's Office

21   with the last name "Montgomery;" and then the third category,

22   concealment of 1459 identification documents that were seized

23   by MCSO personnel.

24         So those are the three categories that we have.  The

25   first category, the preliminary injunction violations, only

1    apply to defendant Arpaio.

2            The second category regarding concealment of the

3    Montgomery hard drives relates to defendant Arpaio as well as

4    defendant Sheridan.

5            And then the third category, the identification

6    documents, applies to Chief Deputy Sheridan, Captain Bailey,

7    and Attorney Iafrate.

8            So there are then two statutes that can apply to a

9    criminal contempt referral.  There's 18 U.S.C. 401 and 18

10   U.S.C. 402.

11           Under 401, 401 addresses misconduct in the presence

12   of the court, essentially in the courtroom itself; it

13   addresses misconduct by officers of the court in their

14   official capacity; and it addresses disobedience of court

15   orders.

16           402, in turn, addresses a subset of that conduct in

17   401 that also would arise to -- or would constitute an

18   additional criminal offense other than contempt.

19           So an example would be if a court, in fashioning a

20   pretrial release order, ordered as a condition of release that

21   the defendant not commit any other state, local, or federal

22   crime, and the defendant while on release goes out and commits

23   bank robbery, arguably the defendant has committed contempt

24   for violating the court's order.

25           THE COURT:  Well, I thought that the more apt analogy

1    in this case was specifically addressed in Judge Snow's Order

2    where he found that there was perjury but did not find that

3    the perjury amounted to criminal contempt.

4           And had he determined that the perjury amounted to

5    criminal contempt, that would have been under 402 because it

6    would have been both a contempt and a crime.

7           MR. KELLER:  That's right, Your Honor, so --

8           THE COURT:  But I thought we were dealing with

9    situations here, because of Judge Snow eliminating the perjury

10   as a basis for criminal contempt, that the allegations here

11   relate exclusively to criminal contempt not constituting

12   another -- a federal crime under the criminal statutes.

13          MR. KELLER:  And that was -- that is what I believe

14   is intended by Judge Snow's Order.

15          Under analysis that the government has done though, I

16   believe that the concealment of the evidence related to

17   Montgomery and the concealment of the 1459 identification

18   documents, that that conduct constitutes obstruction of

19   justice -- if proven -- would constitute obstruction of

20   justice under the omnibus clause of 18 U.S.C. 1503 and under

21   18 U.S.C 1512(c).

22          1503, the omnibus clause, prohibits obstruction of

23   the due administration of justice and the case law basically

24   requires that you prove an interference, intentional

25   interference, with a court proceeding.

1          The 1512(c) specifically addresses concealment of

2     records or objects to impair their availability for use in an

3     official proceeding.

4          And so here the concealment that's alleged in the

5     criminal contempt referral falls squarely within these

6     obstruction statutes in that the allegations are that the

7     defendants concealed both the Montgomery material and the 1459

8     identification documents and the resulting internal affairs

9     investigation for the purpose of making them unavailable for

10    the court to consider in the underlying civil contempt

11    hearings and the underlying *Melendres* civil litigation in

12    fashioning remedies for the plaintiffs' Class.

13         So because of that, Your Honor, I believe that that

14    conduct is appropriately addressed -- those two categories of

15    conduct, concealing the Montgomery hard drives and concealing

16    the 1459 IDs -- those two categories of conduct are properly

17    addressed under 402.

18         And 402, Section 402 has different procedural

19    requirements than 401, one of which, 402 incorporates by

20    reference 3691 which guarantees any defendant charged under

21    402 with the right to a jury trial.  It's also governed by --

22    it is also governed by 3285 -- 18 U.S.C. 3285 -- which

23    provides a one-year statute of limitations for any conduct

24    charged under 402.

25         Here the Montgomery conduct and the 1459 IDs, that

1   conduct, that occurred in the months leading up to July of

2   2015.

3        July of 2015 is when the Monitor found the Montgomery

4   hard drives and the 1459 IDs independently.  And so at that

5   point, the contempt, the concealment was over.  The contempt

6   referral was made in August of 2016.  So as to that conduct,

7   the statute of limitations has run under 402.

8        Now, the government intends to address that conduct

9   by investigating it under the obstruction statutes, that and

10  related conduct.

11       And if the evidence warrants, the government would

12  seek indictments for that conduct.  But as to the criminal

13  contempt proceedings, it's the government's position that that

14  conduct, those allegations should essentially be dismissed at

15  this point from the contempt proceedings, leaving us with only

16  one charge against one defendant which is the violation of the

17  preliminary injunction as to defendant Arpaio.

18       That conduct does not rise to the level of

19  obstruction, and so that conduct is appropriately addressed

20  under 401.

21       The procedural requirements for 401 are set out in

22  Federal Rule of Criminal Procedure 42 which requires that the

23  Court give notice to the party -- to the defendant in open

24  court of the allegations.  It requires that the court set a

25  trial date and time for trial on the referral.  It requires

1    that the court give the defendant adequate time to prepare for

2    trial.  And it requires that the court advise the defendant

3    essentially of the essential elements -- not the elements --

4    the essential facts that are alleged against him.

5             Under 401, if the court agrees to impose a sentence

6    of six months or less, then the contempt proceeding would

7    proceed in summary fashion by a bench trial.

8             It is the government's position that based on

9    defendant Arpaio's age and based on the circumstances

10   surrounding this contempt, that a sentence of six months would

11   be sufficient.

12            And so the government would request that the Court

13   agree to be bound by a six-month cap on this criminal contempt

14   charge against defendant Arpaio and that we proceed as laid

15   out by the case law under 401 with a trial date to be set by

16   the Court today by bench trial.

17            There's an additional procedural wrinkle that's been

18   recently addressed in the Seventh Circuit regarding the

19   application of the Speedy Trial Act to contempt proceedings.

20            And Mr. Stein alerted me to the fact that this case

21   *Trudeau* which we have identified in our research is actually

22   pending cert before the Supreme Court on this very question as

23   to whether or not the Speedy Trial Act applies to contempt,

24   especially in a case where the contempt order itself where the

25   judge agrees to limit the sentence to six months or less, the

1    argument by the Seventh Circuit or the position of the Seventh

2    Circuit was essentially if it's a six-month penalty or less,

3    it's for purposes of the Speedy Trial Act a Class B

4    misdemeanor and the Speedy Trial Act doesn't apply.

5            But because that issue is -- there does seem to be a

6    circuit split on how you classify criminal contempt.  And the

7    consequence of that is -- there's a circuit split on whether

8    or not Speedy Trial Act applies.

9            Because that is pending before the Supreme Court, the

10   government would ask that the Court apply the rules of the

11   Speedy Trial Act, 3161, to the contempt proceedings here to

12   obviate any problems down the road.

13           THE COURT:  So when would you think it starts to run?

14           When the Court gives notice of the items that would

15   be the subject of the contempt trial?

16           MR. KELLER:  The case law sets out two points that

17   could trigger the running under contempt; either the

18   defendant's first appearance on the contempt referral and/or

19   the government's official acceptance of the case for

20   prosecution because the referral is made by the Court as

21   opposed to being instituted by a charging document from the

22   government.

23           And so for those purposes, it's the government's

24   position that speedy trial clock would start to run today as

25   this is both the defendant's first appearance on the criminal

1  contempt referral and it's the first opportunity the

2  government has had to officially accept prosecution of the

3  case.

4       THE COURT:  Well, typically, an appearance in a

5  criminal matter is a personal appearance, not an appearance

6  through counsel.  And other than Ms. Iafrate, the defendants

7  are not present.

8       MR. KELLER:  That's accurate, Your Honor.

9       THE COURT:  Nor were they required to be or asked to

10  be present because this was a status hearing, not what I would

11  consider a criminal appearance.

12       MR. KELLER:  That is understandable and correct.

13       And I guess from the government's position, we are

14  trying to create a record that would withstand the broadest

15  level of scrutiny on appeal, especially given the uncertainty

16  of the Supreme Court's decision as to how the Speedy Trial Act

17  would apply.

18       And so this would be the earliest date under which --

19  it's the government's position today would be the earliest

20  date under which the Speedy Trial Act would begin to run.

21       Analogizing to the arraignment context in the more

22  classic situation, certainly, the defendants would be present

23  and would be advised by the court at that point and that would

24  trigger running of the statute of limitations.

25       So if there is another hearing to be set under --

1    during which the Court would advise defendant Arpaio as to the

2    procedural requirements laid out in Rule 42, the date of that

3    hearing could serve as the beginning of the running of the

4    Speedy Trial Act.

5         THE COURT:  I'm going to go back to the statute of

6    limitations issue.

7         Have you considered whether there is an argument for

8    tolling?

9         MR. KELLER:  Your Honor, I have considered that and

10   the consideration has been that the -- certainly, the referral

11   would toll, but anything short of the referral itself, it's

12   the government's position that the statute has not been tolled

13   for that conduct.

14        THE COURT:  And I don't know how much you're aware

15   of, but everybody that follows the news in this county is

16   aware that the actual hearings with respect to whether or not

17   there were grounds for either civil or criminal contempt

18   commenced a long time ago and they were adjourned for a

19   substantial period of time because of a motion to disqualify

20   the judge.

21        And, therefore, they could not continue while that

22   was pending.  And I wondered if that was considered by the

23   government when -- as a possible grounds for tolling of the

24   statute of limitations with respect to those -- that conduct

25   that you believe may arguably fall within that one-year

1    statute of limitations.

2         MR. KELLER:  Your Honor, we did consider the civil

3    contempt hearings and the fact that the Judge gave notice to

4    the parties that they would be considered for criminal

5    contempt as a possible basis for tolling the statute of

6    limitations, but I don't believe that it -- that it

7    constitutes a basis for tolling the statute.

8         THE COURT:  Let me move on to my next question which

9    has to do with the requirements -- I think they are set out in

10   Rule 42 -- that the court give the person notice in open court

11   in an Order to Show Cause or an arrest order, the essential

12   facts constituting the charged criminal contempt and describe

13   it as such.

14        What do you believe that requires me to do in light

15   of Judge Snow's very specific order?

16        MR. KELLER:  I believe it's similar to the exercise

17   required that is often waived as a formality of reading the

18   indictment in open court at arraignment.

19        And so here, the Court could read the section of the

20   criminal contempt referral that addresses the defendant

21   Arpaio's violation of the -- alleged violation of the

22   preliminary injunction -- and that would satisfy Rule 42's

23   requirement.

24        THE COURT:  So you don't believe that it requires the

25   drafting of a new, written document that would be somewhat

 1    comparable to a criminal complaint or indictment?

 2              MR. KELLER:  I do not, Your Honor, and the law -- the

 3    case law on that seems fairly clear that courts may proceed --

 4    because of the unusual posture of a contempt proceeding and

 5    contempt referral, the point of the contempt power of the

 6    court is to be able to proceed on the court's referral alone.

 7              And so I don't believe that any additional charging

 8    document is necessary.

 9              THE COURT:  But it would seem that I have to give

10    that notice to the person, as is usually done in criminal

11    matters, as opposed to just their lawyers, absent some type of

12    valid waiver.

13              MR. KELLER:  I agree a hundred percent, Your Honor.

14    I didn't realize that the defendants would not be present in

15    court today.

16              THE COURT:  Well, we did not order -- because it was

17    specified as a request for a status hearing, which kind of

18    signals that we're just going to be having a conversation

19    about how we're going to be proceeding in the future.

20              MR. KELLER:  Understood, Your Honor.  And so in order

21    to satisfy Rule 42, we would need to have another hearing

22    where the defendants were present in person unless they were

23    going to waive that notice.

24              THE COURT:  Okay.  And I know you had things that you

25    wanted to discuss with me.  I have interrupted you with some

 1   questions that I had.

 2          Are there any other issues that you wanted to

 3   address?

 4          MR. KELLER:  No, Your Honor.  Those are primarily

 5   what I wanted to bring to the Court's attention and propose

 6   that we proceed in that manner under 401 as to the charge

 7   against Sheriff Arpaio concerning the violations of the

 8   preliminary injunction.  And that the other defendants -- the

 9   charges against the other defendants be essentially dismissed

10   from the contempt proceeding.

11          THE COURT:  Thank you.

12          Mr. McDonald, did you want to address any of the

13   issues that Mr. Keller raised?

14          MR. McDONALD:  Yes.  Thank you, Your Honor.

15          I would indicate to the Court that this is the first

16   time I have had any notification whatsoever of the

17   government's intentions and plans.

18          Many of these issues we would obviously want to

19   research.  One of the first points would be the question of

20   whether or not we would be entitled to a jury trial.

21          They have indicated that because of the Sheriff's age

22   and other factors that they would not ask for a potential

23   sentence exceeding six months and it should be a trial to the

24   court.

25          It's our belief and we would need to do some research

1    on that issue whether or not we would be entitled to a jury

2    trial.

3          Secondly --

4          THE COURT:  I tried to look at that myself and the

5    only thing I could find was Rule 42, 18 U.S.C. 401, 3285, and

6    3691.  And they were clear that if it was criminal conduct in

7    addition to contemptuous conduct, a right to a jury trial

8    existed.

9          But not explicitly clear with respect to a right to a

10   jury trial except as we know what the Constitution requires

11   with a potential imprisonment.

12         MR. McDONALD:  Yes.  And we have done some

13   preliminary research in the area.  I'm simply not sure.  We

14   would like the opportunity, obviously, of briefing that issue

15   before it came about.

16         Secondly, I further agree with the Court's position

17   that rather -- I think there needs to be some type of a

18   charging document.  I think the Department of Justice and

19   their investigation of the record from the many days of the

20   *Melendes* hearings, the Judge made certain findings.

21         I think if -- but the judge made it clear that it's

22   the Department of Justice to make the ultimate call.  That's

23   why I think there needs to be a charging document.  Because

24   the fact that the Department of Justice disagreed or felt

25   there was insufficient evidence on some of the findings, I

1    think it would be unfair to the Sheriff to have him go to

2    trial, whether a jury or the Court, on issues which they

3    themselves didn't think were substantiated by the evidence,

4    so.

5              THE COURT:  Well, I think it would -- whether it's

6    required or not required, I think that it would be a cleaner

7    way to proceed to actually have -- I'll call it an Order to

8    Show Cause -- because Rule 42 has three options.

9              And the "in open court" one is probably not the best

10   one and we'll just eliminate the possibility of the arrest

11   warrant but to have an Order to Show Cause that may, in fact,

12   just lift wholesale out of Judge Snow's Order the findings of

13   contempt with respect to Sheriff Arpaio, vis-a-vis the

14   preliminary injunction.  But then we would at least have a

15   starting document from which -- that we're all used to from

16   which the criminal contempt would then be tried.

17             MR. McDONALD:  Judge, I absolutely agree that that is

18   the best and most efficient way to go.  I would like to see

19   specifically what the government is maintaining.

20             I viewed the referral process with the government

21   making the ultimate prosecution decision to be basically a

22   check and balance on Judge Snow.

23             Judge Snow may have made findings which the

24   government in reviewing the record believes that was an

25   erroneous finding and we don't want to pursue it on that case.

1          That is resolved by an order-to-show-cause-specific

2     document that sets forth what they believe to be the

3     contemptuous act of the Sheriff.

4          THE COURT:  So assuming at the end of our session

5     today I ask the government to draft that Order to Show Cause

6     document, it also has to state the time and place of the trial

7     and allow the defendant a reasonable time to prepare.

8          And so in addition to whatever else you want to

9     address with me this morning, we have to talk about the fact

10    that before I sign that Order to Show Cause, it has to include

11    those two items.

12         MR. McDONALD:  Judge, my request on that point if, in

13    fact, the show cause was going to issue, I would like that

14    time table to be decided after we have had a chance to review

15    whatever their charging document is so we can --

16         THE COURT:  So you would be amenable to -- I would

17    say the way in which criminal cases proceed is that at the

18    time of the arraignment, a trial date is set within the speedy

19    trial guidelines, and then the defendant may say that's not

20    enough time for me to prepare and we would then extend the

21    date and exclude the time.

22         MR. McDONALD:  Exactly.  I think that is exactly how

23    I would prefer and feel that it should go.

24         THE COURT:  And then we won't have to decide whether

25    the speedy trial guidelines apply or not.

1          MR. McDONALD:  Correct.

2          THE COURT:  Okay.  What else do we want to talk

3     about?

4          MR. McDONALD:  Nothing further.

5          Thank you, Judge.

6          THE COURT:  So with respect to Mr. Danneman and

7     Mr. Stein, your clients -- I think I'm going to find myself in

8     the unusual position of you're going to agree with the

9     government, because clearly, this is to the advantage of your

10    clients that the statute of limitations has run and that I

11    cannot proceed on criminal contempt as it has been referred.

12         And I feel a separate obligation to at least

13    investigate the issue of tolling because of my awareness that

14    there was a substantial adjournment of the contempt

15    proceedings because of the Motion to Disqualify that was filed

16    and rendering it possibly impossible for those proceedings to

17    have been resolved within a one-year period.

18         And so I am not intending to do what the government

19    has asked me to do today.  But I think that I need to satisfy

20    myself that they are correct about that.  And so I would

21    invite you to tell me what, if any, assistance you would like

22    to provide to me to convince me that the government is

23    correct.

24         Mr. Stein.

25         MR. STEIN:  Sure, Your Honor.  And we would be

1   pleased to brief the issue for the Court.  You just tell us

2   when you would like the brief and that's when we will have it

3   for you.

4          THE COURT:  And I guess the next question is:  Should

5   we put this contempt proceeding then on two different tracks?

6          Because we know that we are proceeding with respect

7   to Sheriff Arpaio's violations of the preliminary injunction

8   as a criminal contempt.

9          We do not know whether we are proceeding against

10  Sheriff Arpaio and the others, your clients and Mr. Danneman's

11  client, with respect to criminal contempt arising out of the

12  Montgomery discovery and the identification documents that are

13  discussed by Judge Snow.

14         MR. STEIN:  I think it makes sense to separate the

15  two and to proceed on separate tracks as the Court has

16  suggested.

17         THE COURT:  And with respect to your clients, at

18  least in the few statutes and rules that I have been able to

19  find that address the issue of criminal contempt, since this

20  is not an issue -- or this is only -- either the statute's run

21  or it hasn't run.

22         And so if it's been tolled, the government takes the

23  position that the referral for criminal contempt is the date

24  from which one measures back a year; that we don't have an

25  ongoing statute of limitations problem, a time within which I

CR16-01012-PHX-SRB       STATUS CONFERENCE       10-11-16

1    need to resolve the issue that we're going to have briefed.

2              Do you agree with that?

3              MR. STEIN:  I don't think I quite follow the Court.

4              THE COURT:  Okay.  So, the filing of the lawsuit ends

5    the statute of limitations.  It was either filed timely or

6    not.  And the time it takes within which the Court decides

7    whether the filing date was within the statute of limitations

8    or not is not affected by how long it takes me to figure that

9    out.

10             The government has suggested that the issuance of

11   Judge Snow's Order on August 19th is essentially the filing

12   date of the criminal contempt action.  And therefore, the

13   filing either was within the statute of limitations tolled

14   or --

15             We know it's not within a one-year period and that

16   there's no time limit that I have to respect within which I

17   decide whether the statute is tolled or not.

18             Does that make it clearer?

19             MR. STEIN:  It does.  And I actually don't agree with

20   the Court.

21             I think that the statute of limitation period ends

22   upon the filing of a Rule 42 Notice and I don't think that

23   Rule 42 Notice has been filed.

24             MR. DANNEMAN:  And, Your Honor, Dale Danneman on

25   behalf of Ms. Iafrate.

1          I agree with Mr. Stein's position.  As the Court has

2     noted, Rule 42(a)(1) has the specific mechanisms for

3     initiating a criminal contempt proceeding.  None of the three

4     mechanisms exists.

5          Judge Snow's Order on August 19 is described as a

6     "referral."  That is not a procedure recognized by Rule 42 or

7     any of the case law that I have been able to identify.

8          THE COURT:  Well, then -- and I'm not disputing that

9     your position is valid and this is why I have raised this

10    matter for discussion, because in the absence of a tolling

11    agreement, I would feel compelled to issue an Order to Show

12    Cause and to set a date and time for trial so that there

13    wasn't any additional erosion of the statute of limitations.

14         I knew that this issue was coming up today because I

15    looked at the statute but I did not look back at the time line

16    for the hearings, the conclusion of the hearings, Judge Snow's

17    Order to even try to make a calculation if tolling was

18    available, what the period would be.

19         MR. DANNEMAN:  So Judge Snow denied the Motion to

20    Recuse on July 10, 2015, a motion which was filed in mid-May

21    of 2015.  I do not recall off the top of my head the date the

22    motion was --

23         THE COURT:  Okay.  So the recusal was filed just --

24         MR. DANNEMAN:  Mid-May of 2015.

25         THE COURT:  I won't hold you to a specific date.

1          MR. DANNEMAN:  But he definitely denied it on

2     July 10, 2015.

3          THE COURT:  And then it was a one -- we'll call it 13

4     months from that date until the Order was issued.

5          So your position would also be that even if there

6     were a grounds for tolling, more than one year passed after

7     that?

8          MR. DANNEMAN:  That is correct, Your Honor.

9          And when the Motion to Recuse was filed, there were

10    lots of other things that kept happening in that case.  It

11    wasn't just put into the -- it wasn't put in an absolute stay.

12    There were still procedures that were going on with respect to

13    the Monitor.  It's not a -- the Monitor was still doing

14    things.  The Order was -- the injunction was still in effect.

15         And the other point here is that with respect to

16    these IDs, I guess I agree with Mr. Stein.  At the Court's

17    pleasure, we need to provide you with some briefing on this so

18    you can have an opportunity to consider the totality of the

19    circumstances and the implications.

20         But with respect to the IDs that are issued here --

21    or at issue here, the Knapp IDs, the 1459, Sergeant Knapp, a

22    court security officer, said to the officials in the Sheriff's

23    Department on -- sometime on July 7th:

24         I've got these IDs.  They have been in my garage for

25    five-and-a-half years.  I collected them to provide a training

1    session on false IDs.  I never got around to doing it.

2           And he brings that to the attention of the Sheriff's

3    Office on July 7th, three days before Judge Snow denied the

4    Motion to Recuse.

5           And then the alleged conduct that Judge Snow made

6    findings about then occurs over a period of basically two

7    weeks, between July 7 and July 24, a little more than two

8    weeks perhaps.  And so the tolling issue you're raising is one

9    that really requires some consideration of the evidence and

10   the law.  And we need to give you an adequate briefing for you

11   to be able to make a decision with respect to that.

12          THE COURT:  Which leads me to the question of:

13          Would you agree to a tolling agreement on the statute

14   of limitations starting today?  So that I don't have to

15   proceed with the requirements of Rule 42(a)(1) --

16          MR. DANNEMAN:  So the last --

17          THE COURT:  -- because we need some time.  And

18   clearly, I don't want to let more time go by if the government

19   is wrong about the date of the filing.

20          Their position is 8/19/16 is the date this case was

21   filed.

22          And your position is that the date of filing isn't

23   until I comply with Rule 42(a)(1).

24          And if you're correct -- well, I wouldn't want to

25   even test that by saying, well, the government is right, so

1    I'll just wait however long you want to brief this and however

2    long I want to decide it and assume that they are correct and

3    that I have all the time in the world.

4          MR. DANNEMAN:  So, Your Honor, my position is just

5    the lawyer is that's an issue I need to consult my client

6    about who is present while Mr. Stein and Mr. Mitchell's

7    clients are not present.  And I would ask that the Court put

8    this in the context of you're asking for what may be an

9    important decision that requires some consideration as opposed

10   to doing it today.

11         I think what the government is telling you is:  We're

12   going to investigate the issues that are covered by the

13   statute of the one-year statute of limitations.  We are going

14   to look at it.  We're going to decide what the evidence is and

15   how to proceed.

16         And Mr. Stein, Mr. Mitchell and I are all very

17   interested in the government examining that evidence.  And I

18   think the conclusion they reach will be, one, that they cannot

19   proceed to a grand jury because they don't have proof beyond a

20   reasonable doubt.

21         With respect to the tolling request that you have

22   made, I would point out the following:

23         At the end of Judge Snow's -- under Rule 42,

24   specifically Rule 42(a)(2), if there had been an Order to Show

25   Cause here and the government said "We are not going to

 1    proceed to prosecute this contempt," then Rule 42(a)(2) says

 2    if the government declines the request, the Court must appoint

 3    another attorney to prosecute the contempt.

 4            But that's when there's been an Order to Show Cause.

 5    There has been no Order to Show Cause.

 6            Judge Snow's Order on August 19th merely says:

 7            I'm referring this to another judge.  I would ask the

 8    government to consider it.  And if you go to one of his last

 9    paragraphs, he says:

10            If the government decides not to prosecute this as a

11    criminal contempt, then it should go back to the assigned

12    judge.  And the assigned judge, I can -- I didn't bring --

13            THE COURT:  I have it.

14            MR. DANNEMAN:  Okay.  Then the assigned judge can

15    consider what to do.  So we have --

16            THE COURT:  I don't think that's what it says.

17            MR. DANNEMAN:  Well, maybe I'm misreading it then,

18    Your Honor.

19            THE COURT:  It says that if the United States

20    Attorney declines the appointment, he should so inform the

21    judge to whom the criminal contempt matters arising from this

22    case are referred -- that's me -- so that an additional

23    assignment to a prosecuting attorney may be made if that

24    judge -- that's me -- deems it appropriate.

25            MR. DANNEMAN:  May.  May.

1          And your determination as to what --

2          THE COURT:  No.  It doesn't go back to Judge Snow.

3          MR. DANNEMAN:  No.  No.  I wasn't suggesting that.

4    I'm sorry.

5          THE COURT:  Oh.  I thought that's what you were

6    suggesting.

7          MR. DANNEMAN:  If the government declines under Rule

8    42, if you had an Order to Show Cause in front of you, then

9    you must appoint another attorney.

10         There is no Rule 42 proceeding.  There's actually

11   been no criminal charge instituted.

12         Instead, what Judge Snows's Order does giving this to

13   you as the random-assignment judge that received it, says if

14   the government declines, then it's for you to consider -- and

15   you may, which also means which is not mandatory -- then

16   decide to proceed otherwise with maybe a different lawyer.

17         And so all I'm suggesting to the Court is that we

18   need to give you some briefing.  I would ask for something

19   more than making a decision on -- at the podium about tolling

20   immediately and give us at least 24 hours to consult with our

21   clients to report to you as to whether we can agree to a

22   tolling.

23         MR. STEIN:  I can certainly respond within 24 hours,

24   if not sooner.

25         THE COURT:  So based -- it's a practical concern for

 1   me.

 2        I feel an obligation to attempt to preserve the

 3   criminal contempt proceeding against your clients if the

 4   statute of limitations does not preclude that.  And so I feel

 5   an obligation to comply with Rule 42(1)(a), (b) and (c) -- and

 6   it's mostly (c) that we're concerned about -- as soon as

 7   possible.

 8        And if I give you 24 hours, I will not be able to do

 9   that tomorrow just based on my schedule and so I can't give

10   you 24 hours.

11        MR. DANNEMAN:  May I confer with my client, Your

12   Honor?

13        THE COURT:  Yes.

14        MR. STEIN:  And, Your Honor, we can certainly give

15   you a response today.  And you can tell me what time today you

16   need it and that's the time that I'll give it to you.

17        THE COURT:  That's where I was going with this.

18        And what I -- what I would do is that I would issue

19   the Order to Show Cause.  It would state a time and place of

20   the trial within the speedy trial time.  It would --

21        My contemplation is it would essentially attach Judge

22   Snow's Order as the essential facts constituting the charged

23   contempt and it would leave it to counsel to request

24   additional time if this time that I set within the speedy

25   trial limits was not a sufficient time to prepare a defense.

1           And then I would ask that you accept service on

2     behalf of your clients of the Order to Show Cause.

3           MR. STEIN:  And that's if we don't toll the statute?

4           THE COURT:  Correct.

5           MR. STEIN:  Right.  Understood.

6           THE COURT:  If you don't toll the statute --

7           MR. STEIN:  Understood.

8           THE COURT:  -- that's what I feel that I have to do.

9           MR. STEIN:  Understood.

10           MR. DANNEMAN:  Your Honor, so are you inclined to

11     give us a couple more hours at least?

12           THE COURT:  Yes.  Yes.

13           MR. DANNEMAN:  But not 24?

14           THE COURT:  Yes.  Not 24.

15           MR. DANNEMAN:  Okay.  And we would provide you some

16     sort of written notice filed with you in which we say we agree

17     to tolling commencing today.

18           THE COURT:  Correct.  So that it's -- it cannot

19     possibly be interpreted -- and I would not interpret it as

20     tolling anything other than starting today -- and then we

21     don't have to decide if the government is correct about August

22     19th or if you are correct about the date I issue the Order to

23     Show Cause.

24           MR. DANNEMAN:  Or waiving anything else then?

25           THE COURT:  Correct.

```
 1              MR. DANNEMAN:  And so we will confer and get
 2    something filed with you early this afternoon so that you can
 3    proceed.
 4              THE COURT:  How about two o'clock?
 5              MR. DANNEMAN:  Two o'clock is plenty early, Your
 6    Honor.
 7              THE COURT:  Agreeable, Mr. Stein?
 8              MR. STEIN:  Of course.
 9              THE COURT:  Okay.  But you are agreeable that this
10    would be proceeding on a separate track as opposed to the
11    contempt proceeding that is going to go forward with an Order
12    to Show Cause on -- that's solely against Sheriff Arpaio on
13    the issues of the preliminary injunction?
14              MR. DANNEMAN:  Absolutely, Your Honor.
15              THE COURT:  Okay.
16              MR. STEIN:  And does the Court want to address when
17    you would like to receive our briefing on the statute of
18    limitations?
19              THE COURT:  Yes.  You tell me.  When would you like
20    to do it?
21              MR. DANNEMAN:  Well, Your Honor, I'm kind of old and
22    slow, so can we have two weeks?
23              THE COURT:  Certainly.
24              MR. DANNEMAN:  Thank you.
25              MR. STEIN:  That's fine.
```

1          Anything else for me, Your Honor?

2          THE COURT:  Not unless you have something.

3          So let me just address Mr. McDonald for a minute and

4     then I will get back to you, Mr. Keller.

5          So, Mr. McDonald, these issues do affect your client

6     because with respect to the Montgomery information, he is also

7     named by Judge Snow in the contempt with respect to that

8     section of his Order.

9          Are you agreeable to the things that I have just

10    discussed with Mr. Stein and Mr. Danneman and can you advise

11    me by two o'clock this afternoon if your client will agree to

12    a tolling?

13         MR. McDONALD:  I will do that, Judge.

14         For the record, I'm going to recommend that the

15    tolling -- I see absolutely no harm and it makes eminently

16    good sense.  So what I will do is if you don't hear from me by

17    two o'clock, the answer is:  Yes, I agree with the tolling.

18         THE COURT:  And you also agree that we can have that

19    matter proceed -- that part of the contempt proceed on a

20    separate track from the preliminary injunction?

21         MR. McDONALD:  Yes.

22         THE COURT:  Okay.  So that's what we will do.

23         MR. McDONALD:  Thank you.

24         THE COURT:  Mr. Keller.

25         So what I want you to do is to issue -- is to prepare

1    for my signature an Order to Show Cause that's only on the

2    preliminary injunction matter that states the essential facts

3    constituting the charged criminal contempt and describe it as

4    such and that states a time and place of the trial that's

5    within the speedy trial limits.

6           And while I still believe that we should have a

7    proceeding in the nature of an arraignment, I think that

8    perhaps we could get -- we could have a waiver of that.

9           Mr. McDonald, if that's agreeable to you and your

10   client?

11          MR. McDONALD:  I would agree, Judge.  I could file

12   something of record waiving his appearance and entering a plea

13   of not guilty.

14          THE COURT:  And accepting --

15          Okay.  That would work.  And so we will -- if you

16   want to pick a trial date that will take something that's

17   within about 60 days of today.

18          MR. KELLER:  Yes, Your Honor.

19          THE COURT:  Okay.  So let's just take a quick look at

20   what that is.

21          How about if we choose Tuesday, December 6th, as the

22   trial date?

23          MR. KELLER:  Understood, Your Honor.  We will include

24   that in the Order to Show Cause.

25          THE COURT:  And when can you get that to me to sign?

1              MR. KELLER:  I should be able to provide that to the

2      Court today or tomorrow.

3              THE COURT:  Okay.  That would be fine as long as it's

4      by tomorrow.  I can sign things from afar.

5              MR. KELLER:  Understood, Your Honor.

6              Just with regard to the Rule 42 issue and the statute

7      of limitations, I understand exactly the Court's point.

8              And I understand the Court wanting to avoid any

9      further running of the statute of limitations if, in fact, it

10     is still currently running.

11             But it seems to me that this is analogous to arguing

12     that a sealed indictment doesn't stop the statute of

13     limitations, that the statute of limitations isn't stopped

14     until arraignment.

15             THE COURT:  I know.  The problem is is that if I take

16     the time to decide whether you're right or whether defense

17     counsel are right, so much more time will go by.  And if

18     they're right, then we're either -- then even if there was a

19     possibility that the statute hadn't run by today, we're

20     several more months down the road.

21             And so it seems to me better to avoid that question.

22     Because if your position is correct, the statute had run by

23     8/19/2016, and what happened subsequently is irrelevant to the

24     statute of limitations.

25             If they are correct and if there is an argument for

 1    tolling and the statute hasn't run as of today, then every

 2    other day makes -- adds more time onto that one-year statute

 3    of limitations.

 4            MR. KELLER:  Agreed, Your Honor.  Agreed.

 5            THE COURT:  All right.  So, did you want to weigh in

 6    in a brief on the statute of limitations issue?

 7            MR. KELLER:  I would like the opportunity to respond

 8    to whatever the defense files on that issue, Your Honor.

 9            THE COURT:  Okay.  And I think that that's a good way

10    to proceed that you can respond --

11            What I would like you to do is respond as to whether

12    or not -- because clearly, you are in agreement with this

13    position -- but to respond as to whether or not you have

14    uncovered any authorities that would suggest something

15    different.  Okay?

16            MR. KELLER:  Understood.

17            THE COURT:  How much time do you need for that?

18            MR. KELLER:  To respond, Your Honor?  I'm not sure

19    what the local rules provide.  Ten days, I think, would be

20    sufficient.

21            THE COURT:  Okay.  So the brief on the statute of

22    limitations is going to be filed two weeks from today.  That

23    would be October 25th.  And then you would have ten calendar

24    days thereafter to respond.

25            And I think that's going to be enough rounds of -- I

1   don't think we'll need a reply unless somebody feels compelled

2   to file one since I'm guessing the government isn't going to

3   be providing me with anything to dispute by the defense since

4   you seem to be in agreement on this.

5            MR. KELLER:  Unless there is some new authority or

6   information discovered, Your Honor.

7            THE COURT:  Could be.

8            MR. DANNEMAN:  Your Honor, I'm sorry.

9            In addressing Mr. Keller, I thought I understood you

10  to say that the defendants had argued to you that the statute

11  of limitations had been tolled.  And maybe I was just

12  misunderstanding.  That's not our argument.  We are not

13  arguing that there has been some tolling of the statute of

14  limitations.

15           THE COURT:  No.  I understand that.  You and the

16  government are in agreement on that.

17           But I feel that I need to inquire myself in order to

18  attempt, as best I can, to effectuate Judge Snow's Order, to

19  be satisfied other than on the say-so of four well-respected

20  attorneys and whoever else has been doing the research behind

21  the scenes that you are correct.

22           I just feel that I have to satisfy myself.

23           MR. DANNEMAN:  Sounds good, Your Honor.

24           MR. KELLER:  Thank you.

25           And I know I noted this earlier, Your Honor.  Just so

1   it's clear, it's not the government's intention to abandon

2   that additional referred conduct.  As I know, the government

3   intends to investigate that conduct.  It's just that

4   procedurally it's the government's position that it is not

5   appropriate to do so under a contempt.

6        THE COURT:  And I understand that.  And whether or

7   not the government proceeds with criminal charges with respect

8   to any alleged obstruction of justice is a matter that isn't

9   going to be before me, and certainly, is not before me in this

10  proceeding.

11       Okay.  So just in terms of what I think we have

12  decided today, we have decided that before the close of

13  business tomorrow, the government will provide a document for

14  my signature that complies with the requirements of Rule

15  42(a).

16       Defense -- Mr. McDonald, counsel for Sheriff Arpaio,

17  will provide a written notice of acceptance of service and

18  waiver of whatever appearance would be required by Sheriff

19  Arpaio that would be akin to an arraignment by two o'clock

20  this afternoon.

21       Counsel for the remaining parties will advise the

22  Court in writing whether or not they agree to a tolling of any

23  statute of limitations effective today and without waiving any

24  potential argument with respect to the -- having the statute

25  already run.

1          This would only affect tolling from today until such

2     time as the Court issued an order in compliance with Rule

3     42(a).

4          If there is no agreement on tolling, I will issue

5     only with respect to the contempt findings concerning the

6     Montgomery information and the identification documents an

7     Order to Show Cause setting a time and place for trial with

8     respect to those two aspects of the contempt order and they

9     will not necessarily --

10          That date and time will not necessarily be the same

11     date and time that we have just established, which is December

12     6th, for the preliminary injunction contempt trial for Sheriff

13     Arpaio because of the agreement of the parties that these

14     contempt proceedings can proceed on two tracks.

15          Regardless of the agreement with respect to tolling

16     or lack thereof, counsel will brief the issue of the statute

17     of limitations with respect to proceeding on criminal contempt

18     with respect to the Montgomery documents and the

19     identification documents by October 25th.

20          The government will have ten days thereafter to file

21     any response in opposition or in concurrence or just to advise

22     the Court of whatever other information it could find that

23     bears on this issue.

24          The Court is not -- at the present time I do not

25     believe any reply is appropriate.  If the government finds

 1    some new case and changes its position that it expressed today

 2    and there is a desire to file a reply, you can file a request

 3    and then I will set a deadline for reply.

 4            Have I forgotten something?

 5            Mr. Salgado?  Mr. Keller?

 6            MR. KELLER:  Your Honor, it may not be -- need not be

 7    resolved today, but because we are now proceeding on parallel

 8    tracks, with respect to the violation of the preliminary

 9    injunction, the charges that relate to that, as to the

10    defendant Arpaio and the proposed December 6th, 2016, trial

11    date, is the Court at this point in a position --

12            And maybe we need to order briefing for this as

13    well --

14            But it's clear that the Supreme Court and the Ninth

15    Circuit have both held that if a sentence of six months or

16    less is imposed in a contempt proceeding, the right to a jury

17    trial does not attach, the constitutional right to a jury

18    trial does not attach.

19            THE COURT:  I am not prepared today to decide that

20    question that you addressed and I'm not sure if we need to set

21    a briefing schedule on that specific issue today because I'm

22    fairly confident that Mr. McDonald will be filing a motion

23    saying that -- that he doesn't have a reasonable time to

24    prepare his defense between now and December 6th and so we'll

25    have additional time for motions.

1          And I will also, perhaps, have had time to think

2     about what the government requested today that I was -- that

3     certainly was not one of the things that I had made as a

4     mental note of issues that would be brought up.

5          I knew that we would discuss the issue of jury --

6     right to a jury trial versus whether this proceeded before the

7     Court without a jury.  But the idea of making a final decision

8     today that the contempt proceedings will proceed without a

9     jury because the Court is committing that there will be no

10    more than a potential six-month sentence of imprisonment, I'm

11    not ready to do that today.

12         Plus, Mr. McDonald wants to brief whether he is

13    entitled -- whether Sheriff Arpaio is entitled to a jury trial

14    even if the Court agrees that that would be the maximum

15    potential sentence if the criminal contempt trial is held.

16         MR. McDONALD:  Judge, to an absolute certainty, you

17    can know that December 6th will not be a day that will work

18    for us.  You can take it to the bank that we will ask for a

19    considerable delay beyond that day.

20         There is a massive record that we have got to work on

21    so --

22         THE COURT:  And I take it -- did I understand your

23    position as well that you still want to research and perhaps

24    urge to the Court that even if I did agree with the government

25    to a potential penalty that would not exceed six months'

1   imprisonment, that there may be still entitlement to a jury

2   trial?

3           MR. McDONALD:  Yes.  We very strongly believe that

4   and we will put together arguments and briefing on that issue

5   as to the Sheriff's entitlement to a jury trial.

6           THE COURT:  Mr. Salgado.

7           MR. SALGADO:  Very briefly, Your Honor.

8           THE COURT:  Very briefly, but directly into a

9   microphone, please --

10          MR. SALGADO:  I apologize.

11          THE COURT:  -- because I can't hear you well and

12  probably the people behind you can't hear you well either.

13          MR. SALGADO:  Mr. Mitchell and Mr. Stein filed a

14  motion relating to a conflict issue, a potential conflict,

15  related to the joint representation.

16          We -- in light of today's proceedings, that motion

17  may not be ripe for action but we want to preserve an

18  opportunity to respond in due time.

19          THE COURT:  Okay.  Yes.  I am aware of -- I don't

20  know if I would characterize it as a motion -- it basically

21  said -- it's a Notice of Joint Representation.  And at the end

22  it says "but if the court wants to inquire further, it can."

23          But I think we can all agree today in light of the

24  government's position on the statute of limitations that that

25  is a matter that can be addressed, if at all, sometime in the

1    future.

2            Agreed, Mr. Stein?

3            MR. STEIN:  Yes, Your Honor.

4            THE COURT:  And, Mr. Danneman, you agree as well?

5            Oh, you don't have to --

6            MR. DANNEMAN:  But I still agree, Your Honor.

7            THE COURT:  Well, you don't -- you agree without

8    really having a position on it.

9            MR. SALGADO:  I just wanted to preserve -- lay that

10   out for the record and note that the government does have some

11   preliminary thoughts on the joint representation and we do

12   anticipate a conflict, whether it's because of a contempt

13   proceeding that's forthcoming or in the normal course of our

14   investigation to the extent that there are any charges or an

15   indictment filed.

16           But I wanted to get that on the record and ask

17   that -- for an opportunity when the time comes for the

18   government to respond.  And to the extent that briefs are

19   necessary, of course, we would be asking that as well.

20           THE COURT:  Thank you.

21           Mr. Danneman, do you have another -- did I omit

22   something or something new?

23           MR. DANNEMAN:  Well, a point of clarification, Your

24   Honor.  We are going to file something with you before 2:00

25   p.m. with respect to our client's stipulation to a tolling

```
 1    agreement starting to run today.

 2              In your summary order you said that the stipulation

 3    would agree to tolling effective today as to any statute of

 4    limitations.

 5              My understanding was --

 6              THE COURT:  If I said "any statute of limitations," I

 7    meant the statute of limitations set out in --

 8              MR. DANNEMAN:  The one applicable to 18 U.S. Code,

 9    Section 402.

10              THE COURT:  Oh.  Is that where it is?  I have my

11    three statutes here -- or my three books.

12              MR. DANNEMAN:  So I understood it was not "any

13    statute of limitations" but the "statute of limitations

14    applicable to 18 U.S. Code, Section 402."

15              THE COURT:  That is correct.

16              MR. DANNEMAN:  Thank you, Your Honor.

17              THE COURT:  Mr. Stein, anything else?

18              MR. STEIN:  No, Your Honor.

19              THE COURT:  Mr. McDonald?

20              MR. McDONALD:  No, Your Honor.  Thank you.

21              THE COURT:  Okay.  I will be looking forward to

22    hearing from Mr. Stein and Mr. Danneman by 2:00 p.m.

23              Not hearing from Mr. McDonald by 2:00 p.m.

24              And getting a proposed Order to Show Cause from the

25    government before the close of business tomorrow.
```

 1          And then I will await your briefing.

 2          And obviously, the government doesn't have to present

 3     that to me if by 2:00 p.m. today you receive notice, along

 4     with me, of an agreement to tolling; and hear nothing from Mr.

 5     McDonald that is an agreement for tolling.

 6          Okay?  Is that agreeable?  Do you want to go over

 7     that again?

 8          MR. KELLER:  I'm sorry, Your Honor.  The last part

 9     threw me.

10          THE COURT:  So you want -- maybe we should have

11     something affirmative from Mr. McDonald on tolling in the

12     written record.

13          MR. McDONALD:  I will file something either way, Your

14     Honor.

15          THE COURT:  That's probably better.

16          MR. McDONALD:  Thank you.

17          THE COURT:  So if all three counsel on behalf of

18     their four clients file something today agreeing to toll the

19     statute of limitations set out in 18 U.S.C., Section 402, then

20     I don't need the Order to Show Cause from you tomorrow.

21          MR. KELLER:  So then I think I misunderstood.  I

22     thought the Court wanted the Order to Show Cause as to the

23     violations of the preliminary injunction --

24          THE COURT:  Oh, you're right, I do.  I'm sorry.  I

25     was confused, not you.

1        MR. KELLER:  You need it regardless.

2        THE COURT:  I need that one regardless.

3        I said I would do the other one, so there better be a

4   tolling agreement, because otherwise, I'm going to have to do

5   the other one.

6        MR. KELLER:  Thank you, Your Honor.

7        THE COURT:  You're right, Mr. Keller.  I was wrong.

8        Okay.  I think that will do it.

9        Court is in recess.  Thank you all very much.

10      (Proceedings adjourned at 11:06 a.m.)

11                          *  *  *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T E

3

4         I, ELIZABETH A. LEMKE, do hereby certify that I am

5    duly appointed and qualified to act as Official Court Reporter

6    for the United States District Court for the District of

7    Arizona.

8         I FURTHER CERTIFY that the foregoing pages constitute

9    a full, true, and accurate transcript of all of that portion

10   of the proceedings contained herein, had in the above-entitled

11   cause on the date specified therein, and that said transcript

12   was prepared under my direction and control.

13        DATED at Phoenix, Arizona, this 11th day of October,

14   2016.

15

16

17

18                    s/Elizabeth A. Lemke
                      ELIZABETH A. LEMKE, RDR, CRR, CPE
19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT