A. Melvin McDonald, Bar #002298
Joseph J. Popolizio, Bar #017434
Justin M. Ackerman, Bar #030726
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1700
Fax: (602) 200-7847
Melmcdonald2@gmail.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com

Attorneys for Defendant Joseph M. Arpaio

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Jospeh M. Arpaio,<br>Steven R. Bailey,<br>Michelle Iafrate, and<br>Gerard Sheridan,<br><br>Defendants. | NO. 2:16-CR-01012-SRB<br><br>**DEFENDANT SHERIFF ARPAIO'S BRIEF RE: THE STATUTE OF LIMITATIONS APPLICABLE TO 18 U.S.C. § 402** |

Pursuant to this Court's October 11, 2016, Minute Entry, Defendant Arpaio submits the following Memorandum of Points and Authorities regarding whether the one year statute of limitations applicable to 18 U.S.C. § 402, found at 18 U.S.C. § 3285, has run on Judge Snow's criminal contempt referral for Sheriff Arpaio regarding the Montgomery documents. It is Sheriff Arpaio's position that the United States is correct; the one year statute of limitations applicable to 18 U.S.C. § 402 has run on any criminal contempt count arising out of Judge Snow's criminal referral involving the Dennis Montgomery documents.

5326697.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND FACTS.

On <u>April 23, 2015</u>, Sheriff Arpaio, took the stand during the underlying civil contempt evidentiary proceedings. After the Plaintiff Class concluded its redirect examination of Sheriff Arpaio, Judge Snow independently began to question the Sheriff on whether MCSO had ever investigated Judge Snow or his wife. In response to this surprise inquiry, which was based upon Phoenix New Times stories never disclosed by the Court to counsel or the Sheriff, Sheriff Arpaio testified that MCSO and an informant, Dennis Montgomery, exchanged communications and materials regarding certain investigations conducted by MCSO. After Judge Snow concluded questioning Sheriff Arpaio on this subject, he ordered Sheriff Arpaio to personally take charge of preserving and disclosing this information. [Doc. 1027[1] at Tr. 659-660; Doc. 1677 ¶ 351]. On April 27, 2015, MCSO provided the Court's Monitor with a hard drive containing information regarding Dennis Montgomery's investigations involving MCSO. [Doc. 1032]

On <u>May 22, 2015</u>, Sheriff Arpaio moved to recuse Judge Snow from this action based on his questioning of Sheriff Arpaio on the stand regarding matters personally related to the Court without any sufficient due process notice that such questioning would occur. [Doc. 1117]. That same day, the Court vacated the status conferences set for June 5 and June 12, 2015 and noted that it "shall issue no further orders until the Motion is fully briefed and/or a ruling has been issued." [Doc. 1120]. The Court further ordered the parties to continue to hold dates in June for continued civil contempt hearings or for discovery. [*Id.*].

On <u>July 10, 2015</u>, Judge Snow denied the Motion for Recusal. [Doc. 1164]. The Court also noted that "any stay on pre-hearing discovery and/or the activities of the Monitor related to the resumption of the show-cause hearings is lifted." [*Id.* at 40:4-5].

On <u>July 14, 2015</u>, Sheriff Arpaio moved to stay the proceedings so the

---

[1] Unless otherwise indicated, references to "Doc." refer to the official record in the underlying civil contempt case before Judge Snow, *See* No. CV-07-2513-PHX-GMS.

1  Ninth Circuit could decide a Writ of Mandamus filed by Sheriff Arpaio regarding Judge
2  Snow's denial of Sheriff Arpaio's Motion for Recusal. [Doc. 1171]

3  On <u>July 20, 2015</u>, Judge Snow denied Sheriff Arpaio's Motion to Stay.
4  [Doc. 1179].

5  On <u>July 24, 2015</u>, the Monitor requested MCSO provide the 50 hard drives
6  that Dennis Montgomery gave MCSO, but were not previously given to the Monitor. [*See*
7  Docs. 1190; 1192; 7/24/15 RT at 7:11-15:17]. This request arose as a result of the
8  Monitor's discovery during its July 2015 site visits that MCSO was in possession of these
9  additional hard drives. Upon receiving the Monitor's request, the Court held a hearing
10 that same day, and then ordered MCSO to provide the requested documentation and sent
11 its Marshalls to collect the 50 hard drives MCSO had in its possession. [*Id.*].

12 On <u>August 19, 2016</u>, Judge Snow referred Sheriff Arpaio for criminal
13 contempt involving, among other things, his alleged concealment of the 50 Montgomery
14 hard drives. [*See* Doc. 1792 at 1-2].

15 On <u>October 11, 2016,</u> Sheriff Arpaio filed a tolling agreement regarding the
16 statute of limitations under 18 U.S.C. § 402 and Sheriff Arpaio's conduct involving the
17 non-disclosure of the Montgomery hard drives. [*See* No. 2:16-CR-01012-SRB, Doc. 21].

18 **II.  THE STATUTE OF LIMITATIONS HAS RUN ON ANY 18 U.S.C. § 402 CHARGE AGAINST SHERIFF ARPAIO FOR CRIMINAL CONTEMPT INVOLVING THE 50 MONTGOMERY HARD DRIVES.**
19

20 An action for contempt under 18 U.S.C. § 402 has a one-year statute of
21 limitations and begins to run "from the date of the act complained of:"

22 > No proceeding for criminal contempt ***within section 402*** of this title shall be instituted against any person, corporation or association ***unless begun within one year from the date of the act complained of***; nor shall any such proceeding be a bar to any criminal prosecution for the same act.
23
24

25 18 U.S.C. § 3285 (Emphasis added).

26 Generally, a statute of limitations begin to run when the crime is complete.
27 *Pendergast v. United States*, 317 U.S. 412, 418 (1943); *United States ex rel. Louisville*
28 *Cement Co. v. Interstate Commerce Comm'n,* 246 U.S. 638, 644 (1918); *see also U.S. v.*

1  *Irvine,* 98 U.S. 450 (1879).  The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions.  *Toussie v. United States*, 397 U.S. 112, 114–15 (1970).  Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.  *Id.*  Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.  *Id.*  Concluding, the Supreme Court in *Toussie* recognized the long standing tradition that "criminal limitations statutes are 'to be liberally interpreted in favor of repose.'"  *Id.* (quoting *United States v. Scharton*, 285 U.S. 518, 522 (1932)).

Accordingly, as a general rule, exceptions will not be implied to statutes of limitations for criminal offenses unless it contains an express exception or condition that will toll its operation.  *See e.g., Toussie ,* 397 U.S. at 115 ("Congress has declared a policy that the statute of limitations should not be extended '(e)xcept as otherwise expressly provided by law.'") (quoting 18 U.S.C. § 3282(a) (statute of limitations should not be extended "[e]xcept as otherwise ***expressly*** provided by law")) (emphasis added); *see also State v. Bragg,* 774 S.E.2d 182, 185 (2015); *Morgan v. People,* 158 N.E.2d 182 (1959).  Some examples of express exceptions to a statute of limitations are as follows:

> (1) when the person committing the crime is unknown or the crime is unknown.
>
> (2) when the defendant is "continuously absent from the State,"
>
> (3) when the defendant "has no reasonably ascertainable place of abode or work within the state," or
>
> (4) when a State prosecution is pending against the defendant.

*See e.g.,* Model Penal Code § 1.06(6).  Here, however, 18 U.S.C. § 3285 and § 402 contain no explicit exception to the one year statute of limitation.

5326697.1                               4

**A.    Sheriff Arpaio's alleged failure to disclose the 50 Montgomery hard drives falls under the one year statute of limitations for 18 U.S.C. § 402.**

For Sheriff Arpaio, the "act complained of" under § 402 is his alleged concealment of the 50 Montgomery hard drives. [*See* Case 2:07-cv-02513-GMS, Order re Criminal Contempt (Dkt. 1792) at 5:13-6:14]. Importantly, the one year statute of limitations under 18 U.S.C. § 402 began to run, at the latest, on **July 24, 2015**, because that is when the Monitor definitively knew of the 50 hard drives in possession of MCSO, brought the issue to the Court's attention, and the Court actually took possession of the 50 Montgomery hard drives through its Marshalls.[2] The Statute of limitations, therefore, ran one year from this date, on **July 24, 2016**. This occurred well before Judge Snow's **August 19, 2016**, criminal referral and the tolling agreement filed by Sheriff Arpaio in this Court on **October 11, 2016**.

Accordingly, the Government is correct that any 18 U.S.C. § 402 claim involving any potential claim that Sheriff Arpaio concealed the materials from Dennis Montgomery has run.

**B.    Section 402's one year statute of limitations has not been tolled.**

There is no tolling of the statute of limitations involving § 402 in this matter. As stated above, the latest the "date of the act complained of" could have occurred under the applicable statute of limitations was on July 24, 2015, fourteen days after the stay imposed by the Court regarding Sheriff Arpaio's recusal motion was vacated. [*See* Doc. 1164 at 40:4-5 (Noting that as of July 10, 2015, "any stay on pre-hearing discovery and/or the activities of the Monitor related to the resumption of the

---

[2] While the "continuing offense" concept may be applicable to criminal contempt actions, *see United States v. J. Myer Schine*, 260 F.2d 552, 555-56, (2nd Cir. 1958), cert. denied, 358 U.S. 934 (1959), to the extent there is any argument that the Sheriff's failure to disclose the 50 Montgomery hard drives was a "continuing offense", case law is clear that any statute of limitations began to run from the date the offense concluded, which occurred on July 24, 2015, when the Court's marshals took possession of the 50 Montgomery hard drives. *See e.g., United States v. Krstic*, 558 F.3d 1010, 1017 (9th Cir. 2009) ("[P]ossessory offenses have long been described as 'continuing offenses' that are not complete upon receipt of the prohibited item. Rather, the statute of limitations does not begin to run until the possessor parts with the item."); *see also U.S. v. Smith*, 373 F.3d 561, 568 (4th Cir. 2004).

show-cause hearings is lifted.")]. Moreover, 18 U.S.C. § 402 and § 3285 contain no express exceptions or circumstances that toll the one year statute of limitations, nor do any of the common exceptions identified in other statutes above apply to toll the statute of limitations applicable to § 402.[3] Thus, there is absolutely no tolling issue at play in this action for any 18 USC § 402 claim asserted against Sheriff Arpaio.

### III.     CONCLUSION.

Based on the foregoing, Sheriff Arpaio agrees with the United States in this matter, the statute of limitations on any 18 U.S.C. § 402 charge by the United States has run on both the second and third counts of Judge Snow's criminal referral regarding Sheriff Arpaio's non-disclosure of the communications and documents in his possession related to Dennis Montgomery.[4]

---

[3] While other jurisdictions have recognized, under very limited circumstances, that equitable tolling may apply in the criminal context, *see e.g., United States v. Atiyeh*, 402 F.3d 354, 367 (3d Cir. 2005), undersigned counsel has not found **any** reported case (in the Ninth Circuit or otherwise) in which a court applied equitable tolling to a violation under Title 18.  In any event, federal courts invoke the doctrine of equitable tolling "only sparingly", *United States v. Midgley,* 142 F.3d 174, 179 (3d Cir. 1998), and "absent a showing of intentional inducement or trickery by the defendant, a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interest of justice." *Atiyeh*, 402 F.3d at 367 (internal quotations omitted).  As stated above, no such rare circumstances exists in the underlying civil contempt proceeding to justify invoking the doctrine of equitable tolling in this action.

[4] Importantly, Judge Snow's criminal referral for Sheriff Arpaio does not involve MCSO's failure to disclose the existence of approximately 1500 IDs in its possession to the Monitor – the referral for that non-disclosure was solely directed at Chief Deputy Sheridan, Captain Bailey, and Michele Iafrate. [*See* Doc. 1792 at 1-3].  In any event, the statute of limitations for a § 402 claim has equally run on any non-disclosure of the 1500 IDs because the Monitor raised the non-disclosure of the 1500 IDs on the same day (July 24, 2015) that it raised the issue of non-disclosure regarding the 50 Montgomery hard drives. [*See* Doc. 1190; 1192; 7/24/15 RT at 7:11-15:17].

RESPECTFULLY SUBMITTED this 25th day of October 2016.

JONES, SKELTON & HOCHULI, P.L.C.


By: /s/A. Melvin McDonald
A. Melvin McDonald
Joseph J. Popolizio
Justin M. Ackerman
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Defendant Joseph M. Arpaio

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of October, 2016, I electronically filed the foregoing filing with the Clerk of Court through the CM/ECF System which will send notification of such filing to the attorneys of record for the defendants.

/s/Karen Gawel