RAYMOND N. HULSER
Chief
Public Integrity Section, Criminal Division
U.S. Department of Justice

JOHN D. KELLER
Illinois State Bar No. 6293104
VICTOR R. SALGADO
DC Bar No. 975013
SIMON J. CATALDO
Massachusetts Bar No. 690879
Trial Attorneys
Public Integrity Section, Criminal Division
U.S. Department of Justice
1400 New York Ave, NW, 12th floor
Washington, D.C. 20005
Tel: (202) 514-1412
John.Keller2@usdoj.gov
Victor.Salgado@usdoj.gov
Simon.Cataldo@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    v.<br><br>Joseph M. Arpaio,<br><br>    Defendant. | 2:16-CR-01012-SRB<br><br>**RESPONSE TO DEFENDANT'S MOTION TO PRECLUDE VICTIM TESTIMONY** |

The defendant seeks to exclude the testimony of two individuals who suffered immediate and direct harm when the Maricopa County Sheriff's Office ("MCSO") detained and subsequently transferred these victims to federal authorities in clear violation of the preliminary injunction. Immediately after each of these incidents, the defendant chose to issue an MCSO press release publicizing their arrests and detentions and in one instance touted the fact that MCSO turned them over to federal authorities. That these incidents did in fact occur, as these witnesses will testify, and that the defendant chose to knowingly promote and publicize these specific detentions is directly relevant to whether the defendant willfully violated Judge Snow's preliminary injunction. The defendant's request to exclude this probative testimony should be denied.

At trial, the government must prove that (1) Judge Snow issued a clear and definite order, (2) the defendant knew of the order, and (3) the defendant willfully disobeyed the order. *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980). The victims' testimony, coupled with corresponding MCSO news releases, is highly probative of the defendant's awareness of, and involvement in, activities that violated Judge Snow's preliminary injunction. The government anticipates that Witness 1[1] will testify that, on October 8, 2012, an MCSO deputy stopped Witness 1 and his brother in their vehicle. After seeing that neither passenger had a valid visa, the deputy handcuffed them and placed them in his patrol car. When the deputy contacted U.S. Immigration and Customs Enforcement ("ICE") to request that they take custody of Witness 1, ICE refused. The deputy eventually transferred Witness 1 to U.S. Border Patrol. The following day, October 9, 2012, the defendant issued a press release about the incident: "2nd Time ICE Refuses to Accept Illegal Alien From Sheriff's Deputies since September." The defendant is quoted in the press release as saying "I continue to enforce the laws but keep running into road blocks. . . . My back up plan is still in place and we will continue to take these illegal aliens not accepted by ICE to the Border Patrol."

The government anticipates that Witness 2 will testify that, on April 17, 2013, he was riding in a van in northern Maricopa County when the van was pulled over by MCSO deputies. Witness 2 fled, but an MCSO deputy caught up to him, restrained him, handcuffed him, and transferred him to a nearby jail before he was moved to a juvenile immigration detention center. Witness 2 was never suspected of, or charged with, any crimes. The defendant issued a press release the following day and is quoted as saying "We enforce all laws and will continue to crack down on criminal violations related to the border, regardless of politics, threats and intimidations that are routinely tossed in our way."

---

[1] The witnesses are referred to as Witness 1 and Witness 2 to protect their identities from public disclosure.

1  These victims, along with over 165 others, were detained and transferred to federal authorities after the preliminary injunction was issued. Moreover, after Witness 1 was detained, plaintiffs in the *Melendres* case notified the defendant that Witness 1's detention and transfer violated the preliminary injunction. But the defendant persisted by detaining and transferring Witness 2, along with scores of other victims, and then publicizing their detention and transfers to federal authorities in MCSO press releases. The anticipated testimony from these victims, which the government estimates will last no longer than ten to fifteen minutes each on direct examination, is probative of the defendant's willfulness.

Lastly, contrary to the defendant's claims, this testimony would not present any of the dangers against which Rule 403 is intended to protect. There is no jury to confuse, unfairly prejudice, or mislead, and courts have long recognized that Rule 403 concerns are diminished in non-jury trials. *See EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) (noting that "in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial"); *See also Gulf State Util. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519–20 (5th Cir. 1981) (the weighing of probative value against prejudicial effect under Rule 403 "has no logical application to bench trials"). Moreover, that the victims were detained and transported to federal immigration authorities pursuant to the defendant's policies, and with the defendant's knowledge, after he was told that such activities violated the preliminary injunction is evidence of his guilt, but it is not unfairly prejudicial. *See United States v. Blitz*, 151 F.3d 1002, 1009 (9th Cir. 1998) ("[E]ven if that evidence resulted in some prejudice (as all unfavorable evidence about a defendant does), it was not 'unfair prejudice' and did not 'substantially outweigh' the high probative value of the evidence."); *United States v. Akpa*, 120 Fed. App'x 717, 720 (9th Cir. 2005) ("Not everything that hurts is unfairly prejudicial.").

The anticipated victim testimony, and the defendant's actions that are directly linked to these specific incidents, is probative of the defendant's state of mind in the months following the preliminary injunction. The defendant has failed to show that the probative

1  value of the anticipated testimony is outweighed by any danger of unfair prejudice.

2  Accordingly, the defendant's motion should be denied.

3

4  Respectfully Submitted,

5  RAYMOND N. HULSER
   Chief, Public Integrity Section
6

7  By: */s/ Victor R. Salgado*
   Victor R. Salgado
8  John D. Keller
9  Simon J. Cataldo
   Trial Attorneys
10

11  United States Department of Justice
    Public Integrity Section
12  1400 New York Ave. NW
13  Washington, DC  20005
    (202) 514-1412
14  John.Keller2@usdoj.gov
    Victor.Salgado@usdoj.gov
15  Simon.Cataldo@usdoj.gov

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on today's date, I electronically filed the foregoing via the CM/ECF system which will provide notice to counsel of record for the defendant.

/s/ *John D. Keller*
John D. Keller
Trial Attorney