WILENCHIK & BARTNESS
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone:  602-606-2810        Facsimile:  602-606-2811

Dennis I. Wilenchik, #005350
John D. Wilenchik, #029353
admin@wb-law.com

GOLDMAN & ZWILLINGER PLLC
ATTORNEYS AT LAW

Mark Goldman (012156)
Jeff S. Surdakowski (030988)
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Main: (480) 626-8483
Facsimile: (480) 502-7500
E-mail: docket@gzlawoffice.com
*Attorneys for Defendant Joseph M. Arpaio*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America, | Case No.: 2:16-cr-01012-SRB-1 |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANT'S MOTION TO DISMISS,** |
| Joseph M. Arpaio, | **OR IN THE ALTERNATIVE, MOTION FOR TRIAL BY JURY** |
| Defendant. | **(Oral Argument Requested)** |
| | **(Expedited Ruling Requested)** |

Defendant, by and through counsel undersigned, hereby moves to dismiss this proceeding in its entirety on the grounds that it is barred by the one-year statute of limitations contained in 18 U.S.C.A. § 3285. In the event that the one-year statute of limitations does not bar this action, then Defendant, as a matter of law, is entitled to and therefore requests a trial by jury under 18 U.S.C.A. § 3691. Good cause exists under Fed.R.Crim.P.12(c)(3) for the Court to hear this Motion despite the passage of the deadline for filing pretrial Motions,[1] because if Defendant is entitled to a jury trial, then the result of any bench trial may be subject to reversal; and if the case is subject to dismissal on statute-of-limitations grounds, then conducting a trial would be a waste of judicial resources. This Motion is also being brought for the first time after the deadline because undersigned counsel is newly appearing in the case. Undersigned counsel requests to address these issues to the Court at the hearing scheduled in this matter for Wednesday, April 10th at 10:30 A.M.

The Government erroneously[2] brought this criminal contempt prosecution under 18 U.S.C. § 401 without application of the statute of limitations in 18 U.S.C. § 402, exactly two weeks before the general election in which Sheriff Arpaio ran for a seventh term as Maricopa County Sheriff. The applicable law is straightforward, and simple deductive reasoning requires that this criminal proceeding be dismissed. 18 U.S.C. § 401 provides for a five-year limitation of action and does not mandate a trial by jury; but in cases under Section 401 "where the conduct constituting the contempt charged also happens to constitute a federal or state criminal

---

[1] On March 24, 2017 (per Doc. 71).

[2] The Government has already conceded (and the Court has agreed) that 18 U.S.C. § 402 applied to other alleged contumacious conduct by Sheriff Arpaio. The Court ruled that "[b]ecause 18 U.S.C. § 3285 provides a one year statute of limitations for criminal contempt that is also a crime and the contumacious conduct at issue ended more than one year ago, the Court dismisses Defendants Sheridan, Bailey, and Iafrate from the criminal contempt proceedings and will proceed against Defendant Arpaio only for those allegations of criminal contempt in the Order to Show Cause (Doc. 36)." However, the Government failed to advise the Court that "those allegations of criminal contempt in the Order to Show Cause (Doc. 36)" are also separate crimes under state and federal statutory law, and that they are likewise barred by the one-year statute of limitations. The Government was compelled by clear, express, and unambiguous federal statutory law to bring its prosecution under 18 U.S.C. § 402 which has a one year statute of limitations and requires a jury trial.

2

offense,"[3] 18 U.S.C. § 402 provides for a one-year limitation of action and mandates a trial by jury (under 18 U.S.C.A. § 3691). As discussed below, the alleged acts for which Defendant was charged would constitute criminal offenses under federal and Arizona state law, including but not limited to 18 U.S.C.A. § 242 ("Deprivation of rights under color of law"), 18 U.S.C.A. § 241 ("Conspiracy against rights"), 18 U.S.C.A. § 1509 ("Obstruction of court orders"), A.R.S. § 13-2810(A)(2) ("Interference with judicial proceedings"), and A.R.S. § 13-1303 ("Unlawful imprisonment"). 18 U.S.C. § 402 unquestionably applies to this prosecution for criminal contempt, and the one-year limitation of action has expired, so this criminal contempt proceeding must be dismissed with prejudice. In the unlikely event that there is a *bona fide* reason as to why the one-year limitation of action has not expired, then Defendant is entitled, as a matter of federal statutory law (18 U.S.C.A. § 3691), to a trial by jury. Finally, Defendant requests an expedited ruling on this Motion before trial, should the Court deny Defendant's Motion for Continuance (filed herewith). This Motion is supported by the following Memorandum of Points and Authorities.

**RESPECTFULLY SUBMITTED** April 10, 2017.

**WILENCHIK & BARTNESS, P.C.**                    **GOLDMAN & ZWILLINGER PLLC**

*/s/ Dennis I. Wilenchik*                                        */s/ Mark D. Goldman*
Dennis I. Wilenchik, Esq.                                     Mark D. Goldman, Esq.
John D. Wilenchik, Esq.                                       Jeff S. Surdakowski, Esq.
The Wilenchik & Bartness Building                    17851 North 85th Street, Suite 175
2810 North Third Street                                       Scottsdale, AZ 85255
Phoenix, Arizona 85004                                      E-mail: docket@gzlawoffice.com
admin@wb-law.com

*Attorneys for Defendant Joseph M. Arpaio*

…

…

---
[3] *United States v. Pyle*, 518 F. Supp. 139, 146 (E.D. Pa. 1981), *aff'd*, 722 F.2d 736 (3d Cir. 1983).

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

A one year statute of limitations is provided for criminal contempt under 18 U.S.C. § 402 (see 18 U.S.C. § 3285). A fair summary of the interplay between 18 U.S.C. § 401, under which the Government purports to bring this case, and 18 U.S.C. § 402, to which a one-year statute of limitations applies, is contained within the Department of Justice Manual[4]:

> Section 3282 of Title 18 applies a five-year statute of limitations to all criminal contempt actions encompassed by 18 U.S.C. § 401. **If, however, the contemptuous act also constitutes a criminal offense under any statute of the United States or under the laws of any state in which the act was committed, then the contempt must be prosecuted under 18 U.S.C. § 402.[5] Under 18 U.S.C. § 3285, a one-year statute of limitations applies to contempt actions brought under 18 U.S.C. § 402.** It should be noted, however, that 18 U.S.C. § 402 is inapplicable to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States.

U.S. Dep't of Justice, United States Attorneys' Manual 9-39.770 (2017)(emphasis added).[6]

The plain meaning of Section 402 is clear, and "in §§ 402 and 3691 [guaranteeing the right to a jury trial under § 402], Congress meant what it said." *United States v. Pyle*, 518 F. Supp. 139, 156 (E.D. Pa. 1981), *aff'd*, 722 F.2d 736 (3d Cir. 1983).

For the reasons given below, Defendant's charged act of criminal contempt would also constitute a criminal offense under several Arizona state and federal statutes. Further, the Defendant's charged contempt was not committed in disobedience of an order entered in a "suit or action brought or prosecuted in the name of, or on behalf of, the United States." Section 402 therefore applies, along with its one-year statute of limitations, and the right to a trial by jury.

---

[4] "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)(finding that federal agency, BIA, must comply with its own manual). The Government's statements in its own manual, arguably, are binding on it in this proceeding.

[5] *See also* "Prosecution-on-Notice Contempt—Trial by Jury," 3A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 711 (4th ed.)("If disobedience to a court order also is a federal or state criminal offense," then Section 402 applies); *Pyle*, 518 F. Supp. at 146 (cited by *Wright & Miller*, and discussed *infra*)(holding that section 402 applies "where the conduct constituting the contempt charged also happens to constitute a federal or state criminal offense").

[6] Available at https://www.justice.gov/usam/criminal-resource-manual-770-defenses-statute-limitations.

4

Finally, because the Order to Show Cause ("OSC") is not supported by any facts which demonstrate that Defendant committed a contemptuous act within one year before this proceeding was brought, the OSC must be dismissed with prejudice.

## RELEVANT PROCEDURAL HISTORY

Judge Snow first raised the possibility of criminal contempt charges against Defendant in the *Melendres* litigation[7] at a November 20, 2014 status conference.[8] In response to a question from counsel for the MCSO about whether the Court was contemplating criminal or civil proceedings, the Court stated: "Well, I mean, that is one of the interesting things I'm looking at….There is civil contempt and there is criminal contempt….and it may be that matters are appropriate subjects both of criminal and civil contempt."[9] It was at the following hearing[10] on December 4, 2014 that Judge Snow then laid out his "charges" against Defendant, or in the Judge's words, why he felt that criminal contempt was "at issue."[11] That hearing occurred a full one year, eight months, and fifteen days before the Court's Order of referral for criminal contempt (which led to the OSC in this proceeding).[12] At the December 4, 2014 hearing, Elizabeth Strange of the United States Attorneys' Office was present on behalf of the Government, as well as Defendant's former criminal defense counsel, Mel McDonald.[13] Judge Snow stated: "I have asked the United States Attorney to be here and she is – or the chief assistant is here. And the reason I've asked her to be here…I want you to be aware of what's going on from the beginning and keep you apprised."[14] At the hearing, the Court displayed a copy of 18 U.S.C.A. § 401 on the courtroom monitors, and proceeded to identify exactly the

---

[7] *Melendres, et al. v. Arpaio, et al.*, No. CV-07-02513-PHX-GMS (Doc. 494).
[8] *See* Doc. 803, transcript.
[9] Doc. 803, page 39, lines 12-23.
[10] See Doc. 817, transcript of hearing.
[11] Doc. 817, page 5, lines 5-6.
[12] On August 19, 2016 (Doc. 1792).
[13] Doc. 817, page 5, lines 2-9; page 29, line 1-9.
[14] Doc. 817, page 29, line 1-9.

same issues that appear in the Order to Show Cause in this matter: first, whether Defendant violated the December 23, 2011 preliminary injunction's prohibition on detaining persons "based only on knowledge or reasonable belief, without more, that the person is unlawfully present within the United States" by continuing to conduct traffic stops in violation of that Order. (Compare with the OSC in this proceeding: "In December 2011, prior to trial in the *Melendres* case, Judge Snow entered a preliminary injunction prohibiting Sheriff Arpaio and the Maricopa County Sheriff's Office ('MCSO') from enforcing federal civil immigration law or from detaining persons they believed to be in the country without authorization but against whom they had no state charges..."[15]) Second, Judge Snow stated: "...Sheriff Arpaio's position was that he could continue to detain immigrants who he didn't have a cause to hold on any state charges and turn them over to ICE...."[16] (Compare again with the OSC: "[t]he MCSO continued to stop and detain persons based on factors including their race, and frequently arrested and delivered such persons to ICE when there were no state charges to bring against them..."[17]) At the December 4, 2014 hearing, Judge Snow continued: "Those two things indicate to me...a serious violation in direct contradiction to this Court's authority that apparently lasted for months and months, more than a year at the minimum, it appears."[18] Judge Snow then specifically noted—again, for the benefit of the Government, which was present—that "the contempt statute which we put up [18 U.S.C.A. § 401] authorizes both civil and criminal contemptual matters, *and they can arise from the same underlying facts. And, in fact, based on the same facts, you can prosecute somebody for criminal contempt and at the same time have a proceeding for civil contempt for the very same matters.*"[19] Around two months later, or on February 12, 2015, the Court proceeded to enter an Order to Show Cause regarding civil

---

[15] Doc. 36 at page 1, line 28 to page 2, line 5.
[16] Doc. 817, page 17, lines 5-9.
[17] Doc. 36 at page 3, lines 7 – 10.
[18] Doc. 817 at page 17, lines 10-16.
[19] Doc. 817, page 17 at lines 17-22.

contempt on these matters. However, despite the Court effectively *telling the Government in open court that is had a cause of action* as of December 4, 2014, the Government did not file charges—or even indicate an intent to prosecute Defendant—for nearly another two years after that date (until October 25 and October 11, 2016, respectively[20]). Judge Snow even showed the Government a copy of Rule 42 (regarding the procedure for initiating criminal contempt prosecutions) at the December 4, 2014 hearing, and stated that the Rule "gives your office, your own office, an opportunity to evaluate…whether or not you wish to pursue [this]…."[21]

Finally, also of note at the December 4, 2014 hearing, is that Judge Snow discussed with the Plaintiffs whether the provision for fines under 18 U.S.C.A. § 402 could be used to compensate the Plaintiffs.[22] This seems to imply that he believed that Section 402 would apply.

## STATEMENT OF FACTUAL ALLEGATIONS

The essential facts constituting the charged criminal contempt in this matter are contained in this Court's OSC entered on October 25, 2016 (Doc. 36). To encapsulate even that concise summary, at issue is whether the Defendant willfully disobeyed Judge Snow's preliminary injunction of December 23, 2011. "In December 2011, prior to trial in the *Melendres* case, Judge Snow entered a preliminary injunction prohibiting Sheriff Arpaio and the Maricopa County Sheriff's Office ('MCSO') from enforcing federal civil immigration law or from detaining persons they believed to be in the country without authorization but against whom they had no state charges."[23] The OSC alleges that "[t]he MCSO continued to stop and detain persons based on factors including their race, and frequently arrested and delivered such persons to ICE when there were no state charges to bring against them. Judge Snow concluded that Sheriff Arpaio did so based on the notoriety he received for, and the campaign donations he received because of,

---

[20] *See* Doc. 36 in this matter, the Order to Show Cause.
[21] Doc. 817, page 29, lines 10-11; page 29, line 23 through page 30, line 3.
[22] Doc. 817, page 21, line 12 to page 22, line 6.
[23] Doc. 36 at page 1, line 28 to page 2, line 5 (citing Doc. 494 in *Melendres*, the preliminary injunction).

his immigration enforcement activity." (Internal citations omitted.)[24] The OSC continues: "[a]lthough Sheriff Arpaio told counsel on multiple occasions either that the MCSO was operating in compliance with the Order, or that he would revise his practices so that the MCSO was operating in compliance with the Order, he continued to direct his deputies to arrest and deliver unauthorized persons to ICE or the Border Patrol."[25] The OSC alleges no other conduct specific to Defendant and relative to violations of the original December 23, 2011 injunction; and this is precisely the same conduct that Judge Snow raised during the December 4, 2014 hearing (*supra*). Therefore, the conduct for which Defendant was charged clearly occurred prior to that December 4, 2014 hearing, which was more than one year before the OSC (and to be precise, one year, ten months, and twenty-one days before).

Further, if these allegations in the OSC are actually broken down, and "sourced" back to the original *Melendres* proceedings: the allegation that the "MCSO continued to stop and detain persons based on factors including their race, and frequently arrested and delivered such persons to ICE when there were no state charges to bring against them" references Judge Snow's Findings of Fact after the civil contempt proceeding,[26] in which he found that "*during the period that the preliminary injunction was in place*, the MCSO used pre-textual stops to examine a person's citizenship and enforce federal civil immigration law."[27] (Emphasis added. The permanent injunction was entered on October 2, 2013.) This, in turn, referenced testimony and exhibits admitted at the civil contempt hearing, which show that the MCSO turned persons over to ICE in between January 4, 2012 and December 28, 2013.[28] The allegation that "Sheriff

---

[24] Doc. 36 at page 3, lines 7 – 14 (citing Doc. 1677 in *Melendres*, Judge Snow's civil contempt findings, at ¶¶ 157-161, 58-60).

[25] Doc. 36 at page 3, line 25 to page 4, line 3 (citing Doc. 1677 in *Melendres*, at ¶¶ 55-57)(Judge Snow's Findings of Fact after the civil contempt hearing).

[26] Doc. 1677 at ¶¶ 157-161.

[27] Doc. 1677 at ¶ 161.

[28] Plaintiff's Exhibits 208 and 209, which Lt. Jakowinicz testified about on the second day of the evidentiary hearing in the civil contempt matter, Doc. 1051 at Tr. 384:4–14, 386:16–22.

Arpaio…continued to direct his deputies to arrest and deliver unauthorized persons to ICE or the Border Patrol" references a finding by Judge Snow that "*during the latter part of 2012*," "Arpaio directed [Lieutenant] Jakowinicz to call the Border Patrol if ICE refused to take custody of an individual for whom the MCSO did not have state charges justifying detention." (Emphasis added.)[29] Again, all of these events occurred well more than one year before the instant proceedings began. This is regardless of whether the word "began" (as used within 8 U.S.C.A. § 3285) means the date on which the OSC was entered (October 25, 2016), or the date that this case number was opened (August 19, 2016)—i.e., regardless of whether October 25, 2015 or August 19, 2015 is used as the "cutoff" for the one-year statute of limitations.

While the OSC states on its face that it constitutes a "notice to show cause as to whether Joseph M. Arpaio should be held in criminal contempt for willful disobedience of Judge Snow's *preliminary injunction of December 23, 2011*," the OSC also includes a series of other (apparently collateral) allegations pertaining to alleged violations of the permanent injunction entered on October 2, 2013. While these alleged violations do not appear to be the subject of the OSC, they are noted as follows: that "the Sheriff refused to comply in good faith with the [permanent injunction's] requirement that he engage in community outreach"; "that the Sheriff and his command staff were mischaracterizing the content of the [permanent injunction] order to MCSO deputies and to the general public"; and that "the Sheriff was not investigating the allegations of misconduct in good faith—especially those that pertained to him or to members of his command staff."[30] These allegations almost entirely reference acts in 2014 (and to the extent that they reference any acts in 2015 whatsoever, there are none before August 19, 2015, i.e. the more "liberal" one-year cutoff date). The OSC states on its face that "Judge Snow had to amend

---

[29] Paragraph 57 of Doc. 1677 in *Melendres*, which in turn cites the testimony of Mr. Jakowinicz at an evidentiary hearing before Judge Snow (and in particular, a comment played from Mr. Jakowinicz's video-recorded deposition); as well as the testimony of Defendant during the same evidentiary hearing (in which Defendant was asked about the same segment of Mr. Jakowinicz's deposition).

[30] Doc. 36 at page 2, line 19 to page 3, line 6.

and supplement the order and enter further orders" because of the foregoing alleged violations—referring to his amendments which were entered on April 4, 2014, which indicates that the violations occurred before that date.[31] Judge Snow's finding that "the Sheriff refused to comply in good faith with the [permanent injunction's] requirement that he engage in community outreach" references incidents in October and December of 2013.[32] His finding "that the Sheriff and his command staff were mischaracterizing the content of the [permanent injunction] order to MCSO deputies and to the general public" references an incident on October 18, 2013.[33] Finally, his finding that "the Sheriff was not investigating the allegations of misconduct in good faith" (which clearly does not constitute a violation of the preliminary injunction, and therefore is not the subject of this OSC) references various alleged acts in 2014, and January through March 2015 at the latest.[34]

Finally, while the OSC states that Judge Snow referred Defendant's "intentional and *continuing* non-compliance with the court's preliminary injunction to another judge to determine whether he should be held in criminal contempt" (emphasis added), neither the OSC nor Judge Snow's Order of referral for criminal contempt references any specific act occurring within one year of when this proceeding began. In fact, Judge Snow's Order referring Defendant for criminal contempt, when discussing "the violation of this Court's preliminary injunction of December 23, 2011," refers to the alleged contempt as "Sheriff Arpaio's violation of [the preliminary injunction] Order over the ensuing 17-months that it was ignored,"[35] meaning that the act ended in 2013. During the initial December 4, 2014 hearing to raise the possibility of criminal contempt (discussed at length *supra*), the Judge also made reference to "Sheriff

---

[31]  Doc. 670 in *Melendres*.
[32] Doc. 1677 ¶¶ 368, 368 n.13.
[33] Doc. 1677 ¶ 367.
[34] *See* Doc. 1792, page 9, lines 11-19 (citing Doc. 1677 at ¶¶ 609-647, ¶¶ 424-434, ¶¶ 574-83, ¶¶ 648-54, ¶¶ 509-14).
[35] Doc. 1792 in *Melendres* at page 5, lines 10-12.

Arpaio's conduct…during the *18 months* in which he was apparently in violation of my preliminary injunction," and that "the Sheriff's Office, *for 18 months*, assumed authority that it did not have…" (emphasis added).[36] Finally, Judge Snow's civil findings[37] reveal that he did not find, nor did the Plaintiffs in *Melendres* even allege, that Defendants "continued to enforce federal civil immigration law after this Court issued its findings of fact and conclusions of law on May 24, 2013" (Doc. 1677 at ¶ 164).

The bottom line here is that there is no factual allegation contained either in the OSC in this case (Doc. 36), in the criminal referral order in *Melendres* (Doc. 1792), or even in the underlying civil contempt findings or proceedings in *Melendres* (Doc. 1677), which supports that Defendant committed any contemptuous act in between August 19, 2015 and October 25, 2016. In fact, by August 19, 2015, four days of evidentiary hearings had already occurred in the civil contempt matter, and the Court had already implemented and enforced numerous orders, for years, regarding monitoring the MCSO and preventing violations of the Court's preliminary and permanent injunctions.

Pursuant to Fed.R.Cim.P. 42, the OSC in a prosecution for criminal contempt must "state the essential *facts* constituting the charged criminal contempt" (emphasis added). This is analogous to a criminal Complaint filed under Fed.R.Crim.P. 3, which must also contain "a written statement of the essential facts constituting the offense charged"; and so the Court should apply the same pleading standards to an OSC that it applies to a criminal Complaint. A criminal Complaint "must not only set forth facts establishing the commission of an offense under federal law, it must also present facts evidencing probable cause"; and a criminal Complaint is defective if it fails to set forth a factual basis for the allegations, or if it contains merely general conclusory statements in support of the crime. *United States v. Beasley*, 485 F.2d

---

[36] Doc. 817, page 18 at lines 13-16, 22-23.
[37] I.e., his findings at Doc. 1677 at ¶¶ 157-163, which he references at page 4, line 21, and again at p. 5, line 12 of his criminal referral, Doc. 1792.

60, 62 (10th Cir. 1973); *Giordenello v. United States*, 357 U.S. 480, 486 (1958). The Court "should not accept without question the complainant's mere conclusion" that the person charged "has committed a crime." *Id*. Because the OSC is devoid of facts supporting that the Defendant committed a contemptuous act in between August 19, 2015 and October 25, 2016, and because the acts of contempt for which Defendant has been charged are time-barred, the OSC must be dismissed with prejudice.

I.   ***Defendant's charged act of criminal contempt would also constitute a criminal offense under several Arizona state and federal statutes***

The Defendant's charged criminal contempt falls within 18 U.S.C. § 402, and therefore a one-year statute of limitations applies under 18 U.S.C. § 3285, because the Defendant's alleged act of criminal contempt would constitute a crime under 18 U.S.C.A. § 242 ("Deprivation of rights under color of law"),[38] 18 U.S.C.A. § 241 ("Conspiracy against rights"),[39] 18 U.S.C.A. § 1509 ("Obstruction of court orders"),[40] A.R.S. § 13-2810(A)(2)("Interference

---

[38] "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death."

[39] "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

"If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured--

"They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death."

[40] "Whoever, by threats or force, willfully prevents, obstructs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with, the due exercise of rights or the performance of duties under any order, judgment, or decree of a court of the United States, shall be fined under this title or imprisoned not more than one year, or both.

with judicial proceedings"),[41] and/or A.R.S. § 13-1303 ("Unlawful imprisonment"),[42] *inter alia*. If such charges had been (or were ever) brought, Defendant would be entitled to a trial by jury; and therefore in fairness, 18 U.S.C.A. § 3691 also guarantees the Defendant a trial by jury under Section 402 (discussed below).

In *Clark v. Boynton*, 362 F.2d 992 (5th Cir. 1966), contempt proceedings were instituted against a sheriff for "failure to comply with [a] private suit injunction restraining interference with voting registration efforts and demonstrations." Unlike the proceeding *sub judice*, the lower court in *Boynton* did not clearly designate its proceedings as either criminal or civil contempt; and because the lower court failed to follow the correct rules for either civil or criminal contempt, proceedings the Fifth Circuit vacated its finding of contempt. *Id.* at 999. In reviewing whether the trial court followed the rules for criminal contempt, the Fifth Circuit discussed whether there should have been a jury trial: "the District Court was from the beginning inescapably faced with the problem arising under §§402 and 3691, the effect of which is to grant a jury trial for criminal contempt in non-government actions where the actions alleged to have transgressed the order constitute a violation of Federal or State law." *Id.* at 997. "On this point we agree with the candid statement by the Government as amicus that if this were a criminal contempt proceeding, the conduct asserted to be contemptuous was, at least arguably, a violation of 18 U.S.C.A. § 242, or of 18 U.S.C.A. § 241, if not of 18 U.S.C.A. § 1509. In either situation, §§ 402 and 3691 assured a jury trial unless it were waived." *Id.* Therefore, conduct that is, at least arguably, chargeable under any of those statutes will implicate section 402. In

"No injunctive or other civil relief against the conduct made criminal by this section shall be denied on the ground that such conduct is a crime."
[41] "A person commits interfering with judicial proceedings if such person knowingly…[d]isobeys or resists the lawful order, process or other mandate of a court."
[42] "A person commits unlawful imprisonment by knowingly restraining another person," unless "[t]he restraint was accomplished by a peace officer or detention officer acting in good faith in the lawful performance of his duty…"

13

turn, section 402 guarantees not only the right to a jury trial, but it also carries a one-year statute of limitations in 18 U.S.C.A. § 3285 (which provides, "[n]o proceeding for criminal contempt within section 402 of this title shall be instituted against any person…unless begun within one year from the date of the act complained of…")

In particular, it is undeniable that the alleged criminal acts for which Defendant was charged would constitute a crime under A.R.S. § 13-2810(A)(2) ("Interference with judicial proceedings"), which occurs when the defendant "knowingly…[d]isobeys or resists the lawful order…of a court." Because the contemptuous acts with which Defendant was charged would constitute crimes under federal or state law, section 402 applies.

## II. *__The Defendant's charged criminal contempt was not committed in disobedience of an order entered in a "suit or action brought or prosecuted in the name of, or on behalf of, the United States"__*

The December 23, 2011 preliminary injunction was entered in an action brought and prosecuted by private parties, namely Manuel de Jesus Ortega-Melendres (who filed the action on December 12, 2007); Jessica and David Rodriguez; Velia Meraz; Manuel Nieto, Jr.; and "Somos America" (all of whom filed the Motion for Partial Summary Judgment[43] on April 29, 2011 that resulted in the preliminary injunction being issued). The United States did not move to intervene in that action until much later, on July 20, 2015 [44] (with its intervention being granted on August 13, 2015).[45] Further, in the Government's Motion to Intervene, it expressly argued that "the other parties will not be prejudiced" because "the United States seeks only to intervene in future proceedings…"[46] The Government acknowledged that it sought intervention "well after the disposition of the lawsuit" and "shortly after the Defendants' recently admitted contumacious conduct";[47] and it stated that it did "not seek to reopen litigation concerning the

---

[43] Doc. 421.
[44] Doc. 1221.
[45] Doc. 1239.
[46] Doc. 1177, page 12 at lines 11-12.
[47] Doc. 1177, page 8 at 13, page 10 at lines 22-23.

14

scope of defendants' unconstitutional conduct, but only to participate in proceedings concerning defendants' compliance with the remedial orders in this case going forward."[48] It is clear that Government did not "bring or prosecute" the action in which the December 23, 2011 preliminary injunction was entered, and that the action was brought and prosecuted by private parties.

In *United States v. Pyle*, the District Court for the Eastern District of Pennsylvania considered whether a criminal contempt proceeding brought by private parties, to which the Government was joined as a party, was subject to the exception in Section 402 for suits "brought or prosecuted in the name of, or on behalf of, the United States." 518 F. Supp. at 146. The facts in *Melendres* are even more compelling than those in *Pyle*, where the Court nevertheless held that the matter was not brought or prosecuted by the Government. In *Pyle*, as in *Melendres*, the suit was originally brought by private parties, and the alleged criminal contempt arose out of the violation of a preliminary injunction order; however, in *Pyle*, the private plaintiffs named the Government in the original Complaint (as a defendant, amongst other party defendants), and the Government joined in the plaintiffs' motion for preliminary injunction that resulted in the order out of which the criminal contempt arose (after it had taken a position in support of the plaintiffs, and otherwise given them "moral support"). *Id.* at 157. In contrast, the Government did not join[49] *Melendres* until four years, three months, and fifteen days after the plaintiffs filed their motion[50] which resulted in entry of the preliminary injunction (or three years, seven months, and twenty-one days after entry of the preliminary injunction itself).[51] Nevertheless, the district court in *Pyle* concluded that the exception to 402 did not apply even under those circumstances, because the Government "was not charged with the prosecution of the case" and

[48] Doc. 1177, page 7 at line 24-26.
[49] See Order granting intervention by the USA (Doc. 1239).
[50] Plaintiffs' Motion for Partial Summary Judgment on April 29, 2011 (Doc. 421).
[51] December 23, 2011 (Doc. 494).

"that responsibility remained, in principle and in fact, in the hands of the plaintiff class [who filed the case]." *Id.* at 150. The Government "did not even initiate the motion for a preliminary injunction in response to which the order allegedly violated by defendants was issued; it merely joined the motion which had previously been raised by [the private plaintiffs]." *Id.* "[T]he litigation was brought and prosecuted throughout by the plaintiffs alone." *Id.* at 157–58. Following a lengthy and erudite discussion of the historical background, legislative history, intent, and case law surrounding section 402, the district court therefore concluded that section 402 applied, and that the defendants were entitled to a jury trial. *Id.* Clearly, if the facts in *Pyle*—where the United States was a party to the case at its commencement (unlike here), and it even joined in the motion for preliminary injunction (unlike here)—were insufficient to make the case subject to the exception in Section 402, then the facts of this case are also insufficient. Finally, the court in *Pyle* noted that in *Clark v. Boynton* (discussed *supra*), a case in which the United States also intervened long "after the fact" (i.e. long after the order out of which the contempt arose was entered), "it was clear that [the Government] had not" "brought or prosecuted" the action within the meaning of 18 U.S.C.A. § 402. *Id.* at 148.

### *There is no tolling of 18 U.S.C.A. § 3285*

As has been previously argued to the Court, 18 U.S.C.A. § 3285 does not allow for any tolling. *See* Doc. 37 at pages 3-6 (incorporated herein by reference); Doc. 34 and Doc. 35 at pages 3-6; Doc. 38 at pages 2-3. *See also Toussie v. United States,* 397 U.S. 112, 115 (1970): "criminal limitations statutes are 'to be liberally interpreted in favor of repose'" (quoting *United States v. Scharton*, 285 U.S. 518, 522 (1932)).

### *Alternative Motion for Jury Trial*

If for any reason the Court declines to rule that this matter is time-barred, then Defendant specifically re-urges his request for a jury trial, on the grounds that this matter is subject to 18 U.S.C.A. § 402 and 18 U.S.C.A. § 3691, which guarantee him that right. "A person being

16

prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides…" Fed. R. Crim. P. 42(a)(3). The Defendant's right to a jury trial is fundamental and clearly guaranteed here, and any denial of that right is reversible error. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). Should the Court decline to grant Defendant's request for a jury trial, then Defendant requests a stay in order to proceed by appeal for a Writ of Mandamus, as Defendant has no other adequate means by which guarantee this right before trial.

<u>**CONCLUSION**</u>

For the foregoing reasons, this matter must be dismissed in its entirety, with prejudice. Should the Court decline to do so, it must grant Defendant's request for a trial by jury.

**RESPECTFULLY SUBMITTED** April 10, 2017.

**WILENCHIK & BARTNESS, P.C.**          **GOLDMAN & ZWILLINGER PLLC**

*/s/ Dennis I. Wilenchik*                         */s/ Mark D. Goldman*
Dennis I. Wilenchik, Esq.                        Mark D. Goldman, Esq.
John D. Wilenchik, Esq.                          Jeff S. Surdakowski, Esq.
The Wilenchik & Bartness Building          17851 North 85th Street, Suite 175
2810 North Third Street                          Scottsdale, AZ 85255
Phoenix, Arizona 85004                          docket@gzlawoffice.com
admin@wb-law.com

*Attorneys for Defendant Joseph M. Arpaio*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2017, I electronically transmitted the foregoing Notice to the Clerk of the Court through the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF registrants for this matter.

*/s/ Christine M. Ferreira*

17