# EXHIBIT A



**Case No. _____**

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE: JOSEPH M. ARPAIO,

*Petitioner/Defendant,*

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA,

*Respondent*,

and

UNITED STATES OF AMERICA,

*Real Party in Interest/Plaintiff.*

On Petition for a Writ of Mandamus to the Arizona District Court
Case No. 2:16-cr-01012-SRB-1, Hon. Judge Susan R. Bolton, Presiding

### PETITION FOR WRIT OF MANDAMUS

Dennis I. Wilenchik, #005350
John D. Wilenchik, #029353
Wilenchik & Bartness, P.C.
2810 North Third Street
Phoenix, AZ 85004
Tel.: (602) 606-2810
E-mail: admin@wb-law.com

Mark Goldman, #012156
Jeff S. Surdakowski, #030988
Goldman & Zwillinger, PLLC
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Main: (480) 626-8483
E-mail: docket@gzlawoffice.com

*Attorneys for Petitioner/Defendant Joseph M. Arpaio*

April 14, 2017

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION..................................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW................................1

RELIEF SOUGHT................................................................................2

LEGAL STANDARD ............................................................................2

ARGUMENT .....................................................................................5

   I.   By generally demanding a jury trial in December 2016, Defendant properly invoked his right to a trial by jury pursuant to 18 U.S.C.A. § 3691 .........8

   II.  The timeliness *vel non* of a demand for jury trial does not provide a constitutionally sufficient ground on which to deny the demand in any event, so long Defendant is entitled to one ..................................................................9

   III. Even if a trial court could in its discretion deny a demand for jury trial on grounds of untimeliness, the trial court abused its discretion in this instance by denying the demand when trial is scheduled more than two months away .11

   IV.  18 U.S.C.A. §§ 402, 3691 guarantee a jury trial in this matter ...............12

         A.    Other criminal statutes would also apply .......................................20

         B.    The alleged contempt arises out of a nongovernmental action.....24

CONCLUSION...................................................................................27

STATEMENT OF RELATED CASES.......................................................29

CERTIFICATE OF COMPLIANCE .......................................................30

CERTIFICATE OF SERVICE ...............................................................31

EXHIBITS  ......................................................................................32

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Bauman v. U.S. Dist. Court*, 557 F.2d 650 (9th Cir. 1977) ...................................2, 5

*Brown v. United States*, 204 F.2d 247 (6th Cir. 1953) ...........................................18

*Clark v. Boynton*, 362 F.2d 992 (5th Cir. 1966) ............................................. *passim*

*Douglass v. First Nat. Realty Corp.*, 543 F.2d 894 (D.C. Cir. 1976)........... 9, 10, 11

*Duncan v. State of La.*, 391 U.S. 145 (1968)........................................................11

*In re Cty. of Orange*, (9th Cir. 2015) ...............................................................3, 21

*Mondor v. U.S. Dist. Court for Cent. Dist. of California*, 910 F.2d 585 (9th Cir. 1990)..........................................................................................................................3

*Patton v. United States*, 281 U.S. 276 (1930)...........................................................11

*Tushner v. U.S. Dist. Court*, 829 F.2d 853, 855 (9th Cir.1987) ...............................3

*United States v. Classic*, 313 U.S. 299 (1941)................................................. 18, 19

*United States v. Pyle*, 518 F. Supp. 139 (E.D. Pa. 1981)................................ *passim*

*United States v. Renzi*, 769 F.3d 731 (9th Cir. 2014)........................................12

*United States v. Trierweiler*, 52 F. Supp. 4 (E.D. Ill. 1943)....................................18

*United States v. U.S. Dist. Court for E. Dist. of Cal.*, 464 F.3d 1065 (9th Cir. 2006) ......................................................................................................................................4

*Williams v. Florida*, 399 U.S. 78 (1970) ...............................................................11

*Wilmington Trust v. U.S. Dist. Court*, 934 F.2d 1026 (9th Cir.1991) ......................3


**Statutes**

18 U.S.C. § 52 .........................................................................................................18

18 U.S.C.A. § 1509.......................................................................... 15, 21, 23

18 U.S.C.A. § 241 ........................................................................... 15, 21, 22

18 U.S.C.A. § 242 ........................................................................... 15, 18, 19

18 U.S.C.A. § 3691 ........................................................................... *passim*

18 U.S.C.A. § 402 ............................................................................. *passim*

A.R.S. § 13-1303........................................................................... 21, 23, 24

A.R.S. § 13-2810 ................................................................................. 21, 24


**Other Authorities**

16 Charles Alan Wright et al., *Fed. Prac. & Proc. Juris. § 3935.1* (3d ed.2014).....3

U.S.C.A. Const. amend. VI.................................................................................12

**<u>Rules</u>**

Fed. R. Crim. P 23 ........................................................................... 5, 9, 10

Fed. R. Crim. P 42 ........................................................................... 5, 9, 10

## INTRODUCTION

Defendant petitions this Court for a writ of mandamus to the district court granting Defendant's demand for a jury trial in his criminal contempt trial scheduled to begin on June 26th, 2017. Defendant has twice demanded a jury, and twice been denied one, in error. The lower court has also stated that it will not entertain any further demands. Defendant is clearly entitled to a jury trial pursuant to 18 U.S.C.A. §§ 402, 3691, because Defendant was charged with contemptuous acts that are "of such character as to constitute also"[1] criminal offenses under federal and Arizona statutory law. Defendant requests an expedited ruling on these issues by this Court, or in the alternative that the Court grant a stay of trial pending a decision on this Petition.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether Defendant is entitled to a trial by jury.

---

[1] 18 U.S.C.A. §§ 402

1

## RELIEF SOUGHT

Defendant seeks a writ of mandamus to the lower Court granting his demand for a trial by jury pursuant to 18 U.S.C.A. §§ 402, 3691. Defendant requests an expedited ruling as his trial is scheduled to begin on June 26th, 2017. In the alternative, Defendant requests a stay of trial pending a decision on this Petition.

## LEGAL STANDARD

"…[W]here, as here, the mandamus petition alleges the erroneous deprivation of a jury trial, the *Bauman* factors [which this Court ordinarily applies to determine whether petitioner has carried his burden of establishing the right to issuance of a writ of mandamus][2] are inapplicable and **the only question presented is whether the district court erred in denying petitioner's request for a jury trial**." *In re Cty. of Orange*, 784 F.3d 520,

---

[2] The *Bauman* factors are: that "(1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression." *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654 (9th Cir. 1977)(internal citations omitted).

526 (9th Cir. 2015), *cert. denied sub nom. Tata Consultancy Servs. Ltd. v. Cty. of Orange, Cal.*, 136 S. Ct. 808 (2016)(internal quotations and ellipses omitted)(emphasis added). "The right to a jury trial ... has occupied an exceptional place in the history of the law of federal mandamus...." *Id.*[3] For that reason, the Ninth Circuit will "grant mandamus where necessary to protect the constitutional right to trial by jury. If the plaintiffs are entitled to a jury trial, their right to the writ is clear." *Id.*;[4] *see also Mondor v. U.S. Dist. Court for Cent. Dist. of California*, 910 F.2d 585-86 (9th Cir. 1990)("While mandamus relief is extraordinary and is available only in very limited circumstances, the wrongful denial of a jury trial is an appropriate basis for such relief"). "Furthermore, [the Court] may issue the writ even if the petitioner is unable to show a clear and indisputable right to it." *In re Cty. of Orange*, 784 F.3d at 526  (*citing Wilmington Trust v. U.S. Dist. Court*, 934 F.2d 1026, 1028 (9th Cir.1991)). The right to a trial by jury is of even greater importance in a criminal matter, where the Constitution and federal law unreservedly guarantee it (under 18 U.S.C.A. §§ 402, 3691, as argued below).

---

[3] *Quoting Wilmington Trust v. U.S. Dist. Court,* 934 F.2d 1026, 1028 (9th Cir.1991); *and citing* 16 Charles Alan Wright et al., *Fed. Prac. & Proc. Juris.* § 3935.1 (3d ed.2014).

[4] *Quoting Tushner v. U.S. Dist. Court*, 829 F.2d 853, 855 (9th Cir.1987) (Kennedy, J.)(citations omitted).

Even if the *Bauman* factors (for determining whether a writ should be granted) applied, mandamus would still be proper. *See e.g. United States v. U.S. Dist. Court for E. Dist. of Cal.*, 464 F.3d 1065, 1069 (9th Cir. 2006)(granting writ of mandamus where Government petitioned for wrongful deprivation of a jury trial). The trial court's refusal to grant a jury trial in this case is clearly erroneous, for the reasons given in the brief below, satisfying the "third" of the *Bauman* factors ("whether the district court's order is clearly erroneous as a matter of law"). The petitioner also has no other adequate means to attain relief (the first factor), because he has no other mechanism by which to force his case to be tried to a jury. If the case is instead tried to the judge, then he will be "damaged or prejudiced in a way that is not correctable on appeal" (the second factor), because his inviolable right to a trial by jury will have been violated, the precise damage of which is hard to quantify and impossible to fully correct on appeal. If the judge convicts where a jury would acquit, then the defendant will be subjected to the pains of a sentence that would otherwise have been avoided; and even if he successfully appeals, he will have been unnecessarily subjected to two public trials, instead of just a single jury trial from the start. With respect to the fourth factor ("whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules"), the district court's

4

refusal to grant a trial by jury—twice—evidences a "persistent disregard" of Rules 23, 42, which provide that a criminal defendant who is entitled to a jury trial shall have one. Finally, the district court's order raises "new and important problems, or issues of law of first impression" (the fifth *Bauman* factor), to the extent that it raises the legal issue of whether a district court may deny a (renewed) demand for jury trial simply because it believes that the demand is "untimely" (despite being made months before trial).

## ARGUMENT

Defendant has twice demanded a trial by jury, and twice been denied one, in plain error. On December 27, 2016, Defendant (by and through former counsel) demanded a trial by jury generally, but did not specifically raise 18 U.S.C.A. §§ 402, 3691.[5] The Court denied that request on March 1, 2017.[6] On April 10, 2017 Defendant (by and through counsel undersigned) filed a 17-page Motion that specifically requested a trial by jury pursuant to the aforementioned statutes.[7] On April 11, 2017, the district court denied the Motion on the grounds that 1) the deadline for pretrial motions had passed

---

[5] Doc. 62, Exhibit 1 hereto.
[6] Doc. 83, Exhibit 2 hereto.
[7] Doc. 130, Exhibit 3 hereto.

(on March 24, 2017),[8] and 2) the district court stated that it had already "considered" the issue of whether Defendant is entitled to a jury trial, even though it has never specifically considered whether 18 U.S.C.A. §§ 402, 3691 guarantee a jury trial, nor has Defendant been offered any opportunity to be heard on that issue.[9] Further, there is no prejudice to Defendant, the Government, or the public at large if the court were to hear the issue of whether the aforementioned statutes guarantee a jury trial, where trial is scheduled more than two months away. (The deadline for pre-trial motions was originally set in anticipation of trial occurring in April. However, a demand for jury trial in a criminal case is of such constitutional dimension that it must be considered at any time, and granted if the Defendant is in fact entitled to one. See *infra* at Section II.) Finally, the district court indicated during a hearing conducted on April 13, 2017 that it would not entertain any

---

[8] The deadline was set by Doc. 71, an order that was entered on January 25, 2017.

[9] Doc. 132 (Exhibit 4). The Order references the Court's prior Orders denying a jury trial (Doc. 83, Exhibit 2), and prior Order denying a motion to dismiss on statute of limitations grounds (since the Defendant's Motion also asked to dismiss the case on statute of limitations grounds. Order at Doc. 60, Exhibit 6.) Perhaps of note: while the Court's prior Order regarding the statute of limitations (Doc. 60) addressed the applicability of 18 U.S.C.A. § 402 to other (former) defendants in this matter, and to other (former) charges—and concluded that Section 402 applied to them—the Order did not address the applicability of 18 U.S.C.A. § 402 to any of the charges against Defendant in the Order to Show Cause, which remain the subject of this proceeding.

further demands by Defendant for a trial by jury, at this or any other time. The district court erred by twice denying Defendant's demand for a jury trial, because: (1) by generally demanding a jury trial in December 2016, Defendant properly invoked his right to a trial by jury pursuant to 18 U.S.C.A. § 3691. This was done well in advance of the deadline for pretrial Motions, rendering the timeliness of his renewed request moot. Defendant need not have elaborated upon the exact legal basis for his demand in order for it to be effective, nor does he need to "renew" his demand at this or any other time, because in federal court the right to a jury trial persists unless and until the defendant waives it. (2) The timeliness of a demand for a jury trial in a criminal case does not provide a constitutionally sufficient ground on which to deny the demand in any event, so long as the Defendant is entitled to one. (3) Even if the trial court had the discretion to deny a demand for jury trial on grounds of untimeliness—and even where the Defendant is entitled to one—the trial court abused its discretion in this instance, where trial is scheduled more than two months away. Finally, (4) federal law, namely 18 U.S.C.A. §§ 402, 3691, plainly guarantee a jury trial in this matter.

## I. By generally demanding a jury trial in December 2016, Defendant properly invoked his right to a trial by jury pursuant to 18 U.S.C.A. § 3691

The particular statute that guarantees Defendant a jury trial in this matter, 18 U.S.C.A. § 3691, provides that "the accused, *upon demand therefor*, shall be entitled to trial by a jury…" On December 27, 2016, Defendant made a demand for jury trial, which properly invoked his right to a trial by jury under 18 U.S.C.A. § 3691. Defendant filed a "Cross-Motion for Jury Trial" which stated: "Defendant Arpaio requests that this Court deny the Government's request for bench trial and asks that this case be decided by a jury of his peers."[10] The plain text of 18 U.S.C.A. § 3691 does not require that the Defendant invoke the name of the statute, or that he elaborate in depth upon the legal basis for his demand, in order to be entitled to a trial by jury. Rather, he must simply demand a "trial by jury." And in § 3691, "Congress meant what it said." *United States v. Pyle*, 518 F. Supp. 139, 156 (E.D. Pa. 1981), *aff'd*, 722 F.2d 736 (3d Cir. 1983). Defendant properly demanded a jury well in advance of the deadline for pretrial motions even being set, and therefore he is guaranteed a trial by jury under

---

[10] Doc. 62, "Defendant Joseph Arpaio's Response to Government's Motion Requesting a Bench Trial and Defendant Joseph Arpaio's Cross Motion Requesting Jury Trial," page 1, lines 19-21 (Exhibit 1 hereto).

18 U.S.C.A. § 3691, even assuming *arguendo* that the timeliness of his demand were of any importance.

For an explanation as to why 18 U.S.C.A. § 3691 applies, please see *infra* at Section IV. For alternative or supplemental arguments regarding the "timeliness" issue, please see *infra* at Sections II and III.

## II. <u>The timeliness *vel non* of a demand for jury trial does not provide a constitutionally sufficient ground on which to deny the demand in any event, so long Defendant is entitled to one</u>

In a criminal case, a defendant's demand for a jury trial may not be denied on mere grounds of untimeliness, so long as he is entitled to one. Nor does his demand need to be "renewed," much less renewed on a timely basis. Rather, the defendant's right to a jury trial is automatically guaranteed if he is entitled to it, per Fed.R.Crim.P 23(a), 42(a)(3), unless and until he knowingly and voluntarily waives it. "In the federal courts, the right to a jury trial persists unless and until the defendant appropriately waives it." *Douglass v. First Nat. Realty Corp*., 543 F.2d 894, 899 at n.37 (D.C. Cir. 1976)(citing Fed.R.Crim.P. 23(a)). In the *Douglass* case, the United States Court of Appeals for the District of Columbia Circuit considered whether the district court's imposition of criminal contempt without a jury trial was proper, where the defendant did not "expressly demand" a jury trial. *Id.* The

Court of Appeals found that "the record reflects no such demand in the instant case, but that, we think does not alter the problem," because "[i]n the federal courts, the right to a jury trial persists unless and until the defendant appropriately waives it," citing Fed.R.Crim.P. 23(a). *Id.*[11] Fed.R.Crim.P. 23 provides that "[i]f the Defendant is entitled to a jury trial, the trial *must* be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." (Emphasis added.) Rule 42(a)(3) also provides that "[a] person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides…" Neither Rule 23 nor Rule 42 provides that the defendant must demand a jury trial, much less that his demand must be timely.[12] Nor does either Rule provide that the request must be made with specificity as to its

---

[11] *Douglass* was a criminal contempt case where Section 3691, discussed *infra*, did not apply. (It dealt with the defendant's failure to execute and record a real property deed in violation of a court order in a civil case, which was not alleged to constitute a crime under federal or state law.) After finding that the defendant had the right to a trial by jury if the verdict could exceed $500 (per former 18 U.S.C. § 1), and that the trial court violated that right because it did not grant a jury trial and its verdict exceeded $500, the Circuit Court reduced the verdict to $500. In contrast, Section 3691 (which applies to the case at bar) requires a jury trial irrespective of the nature, or amount, of the verdict.

[12] There is also no Arizona District Court Local Rule that addresses the "timeliness" of a request for jury trial in a criminal case, no doubt in recognition of its constitutional dimension, and that there is no need to even make the demand (much less renew it) in most criminal cases.

legal grounds, or that the request must be "renewed," much less on a timely basis. The right to a jury in a criminal case is simply such a fundamental right,[13] and of such constitutional dimension,[14] that it need not be raised or demanded at all, much less on a timely basis, in order to be violated (*see Douglass*, *supra*). By denying the Defendant his right to a trial by jury on grounds of untimeliness, the district Court has plainly violated this right.

### III. Even if a trial court could in its discretion deny a demand for jury trial on grounds of untimeliness, the trial court abused its discretion in this instance by denying the demand when trial is scheduled more than two months away

Even if the district court had the discretion to deny the Defendant's demand for a jury trial on grounds of untimeliness, such discretion would be abused in this instance, where trial is scheduled more than two months away, and re-scheduling the matter for a jury trial would not unduly interfere with

---

[13] "…[W]e believe that trial by jury in criminal cases is fundamental to the American scheme of justice…" *Duncan v. State of La.*, 391 U.S. 145, 149 (1968). "[T]he maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant." *Patton v. United States*, 281 U.S. 276, 312 (1930)[13]; *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78 (1970); cited with approval on the issue of waiver by *Serfass v. United States*, 420 U.S. 377, 389 (1975).

[14] U.S. Const. amend. VI: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed…"

or delay proceedings. This is not a situation where the defendant waited until he was in the midst of trial, for example, or until after trial to make his demand. (Although, given the authorities above—and the sacred constitutional nature of this right—the Court would be obligated even under those circumstances to grant a jury trial, if the defendant were entitled to one.) Rather, Defendant first made his demand back in December of last year, and he is making it again now, over two months before trial. Therefore, even if the district court had the discretion to deny his demand, it would be an abuse of its discretion to do so. Further, the Defendant has a due process right to be heard on whether 18 U.S.C.A. §§ 402, 3691 guarantee him the right to a trial by jury in this case, which they plainly do (which is addressed in the following section), and on which the district court has never specifically taken argument from him and has never explicitly ruled. ("As a general principle, under the Fifth and Sixth Amendments, a criminal defendant is guaranteed a meaningful opportunity to present a complete defense." *United States v. Renzi*, 769 F.3d 731, 749 (9th Cir. 2014)(internal quotation marks omitted)).

IV. **18 U.S.C.A. §§ 402, 3691 guarantee a jury trial in this matter**

Defendant is guaranteed a trial by jury pursuant to 18 U.S.C.A. §§ 402, 3691 because his alleged acts of contempt constitute criminal offenses under federal and/or state law. "…[T]he effect of [18 U.S.C. §§ 402 [15] and 3691 [16]] is to grant a jury trial for criminal contempt in non-government actions where the actions alleged to have transgressed the order constitute a violation of Federal or State law." *Clark v. Boynton*, 362 F.2d 992, 997 (5th Cir. 1966). "…[I]n §§ 402 and 3691, Congress meant what it said." *Pyle*, 518 F. Supp. at 156 (containing an in-depth analysis of the background, history, legislative intent, and application of §§ 402 and 3691).

---

[15] 18 U.S.C.A. § 402:

"Any person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia, by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title and shall be punished by fine or imprisonment, or both."

[16] 18 U.S.C.A. § 3691:

"Whenever a contempt charged shall consist in willful disobedience of any lawful writ, process, or order, rule, decree, or command of any district court of the United States by doing or omitting any act or thing in violation thereof, and the act or thing done or omitted also constitutes a criminal offense under any Act of Congress, or under the laws of any state in which it was done or omitted, the accused, upon demand therefor, shall be entitled to trial by a jury, which shall conform as near as may be to the practice in other criminal cases."

In *Clark v. Boynton,* contempt proceedings were instituted against a county sheriff for "failure to comply with [a] private suit injunction restraining interference with voting registration efforts and demonstrations." 362 F.2d at 997. While the proceeding *sub judice* is clearly a criminal contempt proceeding, the proceeding in *Clark* was not clearly designated as either civil or criminal contempt, and so the Fifth Circuit undertook to determine whether the district court had followed the correct procedures for either. In order to review whether the district court had followed the correct procedure for criminal contempt, the Fifth Circuit first looked at whether the appropriate burden of proof had been applied ("beyond a reasonable doubt"), and then "even more important," whether the defendant had been afforded a trial by jury:

> But even more important…the record shows absolutely no consideration of the serious question of jury trial for criminal contempt.…[T]he District Court was from the beginning inescapably faced with the problem arising under §§ 402 and 3691, the effect of which is to grant a jury trial for criminal contempt in non-government actions where the actions alleged to have transgressed the order constitute a violation of Federal or State law. On this point we agree with the candid statement by the Government as amicus that if this were a criminal contempt proceeding, the conduct asserted to be contemptuous was, at least arguably, a violation of 18 U.S.C.A. § 242,[17] or of

---

[17] Currently, 18 U.S.C.A. § 242 reads:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth,

18 U.S.C.A. § 241,[18] if not of 18 U.S.C.A. § 1509.[19] In either situation, §§ 402 and 3691 assured a jury trial unless it were waived.

---

Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

[18] Currently, 18 U.S.C.A. § 241 reads:

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured--

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

[19] Currently, 18 U.S.C.A. § 1509 reads:

Whoever, by threats or force, willfully prevents, obstructs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with, the due exercise of rights or the performance of duties under any order, judgment, or decree of a court of the United States, shall be fined under this title or imprisoned not more than one year, or both.

*Id*. at 996-997.

Because the district court had conducted a bench trial "without ever expressly ruling on Sheriff Clark's demand for a jury trial," and it subsequently "overruled motions by Sheriff Clark for new trial [which] specifically included his renewed demand for a jury trial," the Fifth Circuit found that the district court had failed to grant the defendant the jury trial that he was entitled to have under §§ 402 and 3691. *Id.* at 995. Finally, after reviewing whether the proceedings qualified as civil contempt, and deciding that "[t]he result is really no better if we assume it was intended as a civil contempt proceeding," the Fifth Circuit vacated the finding of contempt and remanded. *Id.* at 997.

In the case at bar, the Defendant is charged with "willful disobedience"[20] of a preliminary injunction entered in a private (non-government) action,[21] which prohibited him "and the Maricopa County Sheriff's Office ('MCSO') from enforcing federal civil immigration law or from detaining persons they believed to be in the country without

---

No injunctive or other civil relief against the conduct made criminal by this section shall be denied on the ground that such conduct is a crime.

[20] Doc. 36 (Order to Show Cause, Exhibit 5 hereto) at page 1, in between lines 23 and 24; page 4, line 10.

[21] *Melendres, et al. v. Arpaio, et al*., No. CV-07-02513-PHX-GMS in Arizona District Court.

authorization but against whom they had no state charges."[22] The Order to Show Cause that formally initiated this criminal contempt proceeding ("OSC," Doc. 36, Exhibit 5 hereto) accuses Defendant of willfully violating the preliminary injunction because "[t]he MCSO continued to stop and detain persons based on factors including their race, and frequently arrested and delivered such persons to ICE when there were no state charges to bring against them….Sheriff Arpaio did so based on the notoriety he received for, and the campaign donations he received because of, his immigration enforcement activity." (Internal citations omitted.)[23] The OSC continues: "[a]lthough Sheriff Arpaio told counsel on multiple occasions either that the MCSO was operating in compliance with the Order, or that he would revise his practices so that the MCSO was operating in compliance with the Order, he continued to direct his deputies to arrest and deliver unauthorized persons to ICE or the Border Patrol."[24]

It is apparent from this description of the criminal contempt charge that these acts, if proven, would constitute a crime under 18 U.S.C.A. § 242. Section 242 "authorizes the punishment of two different offenses. The one is willfully subjecting [under color of law] any inhabitant to the deprivation of

---

[22] Doc. 36 at page 1, line 28 to page 2, line 5 (Exhibit 5 hereto).
[23] Doc. 36 at page 3, lines 7 – 14 (Exhibit 5 hereto).
[24] Doc. 36 at page 3, line 25 to page 4, line 3 (Exhibit 5 hereto).

rights secured by the Constitution; the other is willfully subjecting [under color of law] any inhabitant to different punishments on account of his color or race, than are prescribed for the punishment of citizens." *United States v. Classic*, 313 U.S. 299, 327 (1941)(referring to section 20 of former 18 U.S.C. § 52, now 18 U.S.C.A. § 242). "Any state enforcement officer who, under color of state law, willfully, without cause, arrests or imprisons an inhabitant or injures one who is legally free, thereby commits an offense under Section 52 [now 18 U.S.C.A. § 242]." *United States v. Trierweiler*, 52 F. Supp. 4, 6 (E.D. Ill. 1943); *see also Brown v. United States*, 204 F.2d 247, 250 (6th Cir. 1953)("A state law enforcement officer who, under color of state law, willfully and without cause arrests and imprisons an inhabitant of the United States for the purpose of extortion [compare with, 'based on the notoriety he received for, and the campaign donations he received'] deprives him of a right, privilege and immunity secured and protected by the Constitution of the United States and commits an offense defined under 18 U.S.C. Section 242"). The OSC accuses Defendant, a county Sheriff, of "willfully" disobeying a court order not to detain persons without criminal charges, and it alleges that he (along with his office) continued to detain such persons without charges and to arrest and deliver them to ICE or Border Patrol. If true, this would clearly constitute a crime under 18

U.S.C.A. § 242. Subjecting persons to such detention without criminal charges is clearly a deprivation of their Fourth Amendment right to be free from unreasonable seizure. Defendant, and his office, would therefore have willfully subjected them, under color of law, to the deprivation of "rights, privileges, or immunities secured or protected by the Constitution or laws of the United States," constituting a crime under 18 U.S.C.A. § 242.

As the Supreme Court held in *United States v. Classic*, it is also separately a crime under 18 U.S.C.A. § 242 for the defendant to, under color of law, "subject[] any person in any State, Territory, Commonwealth, Possession, or District…to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens"— regardless of whether the act strictly constitutes the deprivation of a federal or constitutional right. The OSC expressly accuses Defendant and his office of "continu[ing] to stop and detain persons *based on factors including their race*, frequently arrest[ing] and deliver[ing] such persons to ICE when there were no state charges to bring against them" (emphasis added). It therefore accuses Defendant of, under color of law, subjecting persons to different "punishments, pains or penalties"—i.e. arrest and detention—on account of "such person being an alien, or by reason of his color, or race, than are prescribed for the

punishment of citizens"—i.e., "based on factors including their race." The OSC also clearly implies that Defendant illegally detained persons because they were aliens. (It accuses him and his office of violating an injunction not to "detain[] persons they believed to be in the country without authorization," i.e. aliens;[25] and of course ICE and Border Patrol, which the OSC expressly references, are involved in immigration enforcement).

All of this is plain, clear and indisputable. The "act or thing" for which Defendant was charged "constitute[s] also a criminal offense under [a] statute of the United States," and so following 18 U.S.C.A. § 402, the Defendant's criminal contempt proceeding must be prosecuted as provided for in 18 U.S.C.A. § 3691, which guarantees that "the accused, upon demand therefor, shall be entitled to a trial by a jury, which shall conform as near as may be to the practice in other criminal cases." The district court has erred by repeatedly denying petitioner's demand for a jury trial, and Defendant's right to a writ of mandamus is clear. *See In re Cty. of Orange*, 784 F.3d at 526, *supra*.

## A. Other criminal statutes would also apply

---

[25] *See* Doc. 36 at page 1, line 28 to page 2, line 5 (Exhibit 5 hereto); *see also* Doc. 494 in *Melendres*, page 39 at lines 26-27.

As Defendant argued to the district court in his recent Motion demanding a jury trial[26]—and without requiring that the Defendant needlessly detail all of the various other crimes with which he could have been charged, and why—his alleged acts would also constitute criminal offenses under 18 U.S.C.A. § 241 ("Conspiracy against rights"), 18 U.S.C.A. § 1509 ("Obstruction of court orders"), A.R.S. § 13-2810(A)(2)("Interference with judicial proceedings"),[27] and/or A.R.S. § 13-1303 ("Unlawful imprisonment"),[28] *inter alia*. Each would apply, as follows:

---

[26] Doc. 130 (Exhibit 3 hereto).

[27] A.R.S. § 13-2810(A) provides, in relevant part: "A person commits interfering with judicial proceedings if such person knowingly… [d]isobeys or resists the lawful order, process or other mandate of a court."

[28] A.R.S. § 13-1303 reads:
**A.** A person commits unlawful imprisonment by knowingly restraining another person.
**B.** In any prosecution for unlawful imprisonment, it is a defense that:
1. The restraint was accomplished by a peace officer or detention officer acting in good faith in the lawful performance of his duty; or
2. The defendant is a relative of the person restrained and the defendant's sole intent is to assume lawful custody of that person and the restraint was accomplished without physical injury.
**C.** Unlawful imprisonment is a class 6 felony unless the victim is released voluntarily by the defendant without physical injury in a safe place before arrest in which case it is a class 1 misdemeanor.
**D.** For the purposes of this section, "detention officer" means a person other than an elected official who is employed by a county, city or town and who is responsible for the supervision, protection, care, custody or

18 U.S.C.A. § 241 ("Conspiracy against rights"). The OSC accuses Defendant of acting in concert with his entire office (the MCSO), putting him within the ambit of 18 U.S.C.A. § 241, which provides that it is a crime when "two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same." Defendant and his office would be "two or more persons," and the allegation is that they conspired to "oppress" persons in their exercise of their Fourth Amendment right to be free from unreasonable seizures.

18 U.S.C.A. § 1509 ("Obstruction of court orders"). Not unlike *Clark v. Boynton*, the Defendant's alleged conduct is at least arguably violative of 18 U.S.C.A. § 1509, which makes it a crime when a defendant "willfully prevents, obstructs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with, the due exercise of rights or the performance of duties under any order, judgment, or decree of a court of the United States…." Here, Defendant is accused of willfully interfering with

---

control of inmates in a county or municipal correctional institution. Detention officer does not include counselors or secretarial, clerical or professionally trained personnel.

the rights of all persons who were detained without charges by him and the MCSO, to be free from such detention under the preliminary injunction. He is also accused, implicitly, of willfully preventing or obstructing his own office from performing its duties not to detain persons without charges under the preliminary injunction.

A.R.S. § 13-1303("Unlawful imprisonment"). A person commits unlawful imprisonment by knowingly restraining another person," unless "[t]he restraint was accomplished by a peace officer or detention officer acting in good faith in the lawful performance of his duty…" The detentions of which Defendant is accused would not be "in good faith in the lawful performance of [a peace officer's] duty," if they were willful and in violation of a court order (which the criminal contempt charge alleges they were). This implicates the crime of unlawful imprisonment under Arizona law, A.R.S. § 13-1303.

A.R.S. § 13-2810(A)(2)("Interference with judicial proceedings"). Also, Arizona law generally prohibits any person from "knowingly…[d]isobey[ing] or resist[ing] the lawful order, process or other mandate of a court." The text of this statute is not limited to state court orders, and it would appear to encompass orders of a federal court. The OSC explicitly charges Defendant with "willful disobedience" of a lawful court

order, which would clearly constitute "knowingly…[d]isobey[ing]" a lawful order under A.R.S. § 13-2810(A)(2). If nothing else, this crime clearly operates to make this proceeding subject to 18 U.S.C.A. §§ 402, 3691.

## B. The alleged contempt arises out of a nongovernmental action

Finally, and for the sake of discussion, this case is not subject to the exception in 18 U.S.C.A. § 402 for "contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States," because the preliminary injunction out of which this criminal contempt proceeding arises was entered in an action brought and prosecuted by private parties (*Melendres, et al. v. Arpaio, et al*., No. CV-07-02513-PHX-GMS in Arizona District Court). The plaintiffs were Manuel de Jesus Ortega-Melendres (who filed the action on December 12, 2007); Jessica and David Rodriguez; Velia Meraz; Manuel Nieto, Jr.; and "Somos America"— all of whom filed the Motion for Partial Summary Judgment[29] on April 29, 2011 that resulted in entry of the preliminary injunction that Defendant is accused of willfully violating. While the United States did intervene in the

---

[29] Doc. 421 in the *Melendres* matter, No. CV-07-02513-PHX-GMS ("*Melendres*").

action, it did not do so until three and a half years after entry of the preliminary injunction (and after a permanent injunction had been entered), i.e. on July 20, 2015 [30] (with its intervention being granted on August 13, 2015).[31]   Further, in the Government's Motion to Intervene, it expressly argued that "the other parties will not be prejudiced" because "the United States seeks only to intervene in future proceedings…"[32] It is clear that Government did not "bring or prosecute" the action in which the December 23, 2011 preliminary injunction was entered, and that the action was brought and prosecuted by private parties.

In *United States v. Pyle*, the District Court for the Eastern District of Pennsylvania considered whether a criminal contempt proceeding brought by private parties, to which the Government was joined as a party, was subject to the exception in Section 402 for suits "brought or prosecuted in the name of, or on behalf of, the United States." 518 F. Supp. at 146. The facts in *Melendres* are even more compelling than those in *Pyle*, where the Court nevertheless held that the matter was not brought or prosecuted by the Government. In *Pyle*, as in *Melendres*, the suit was originally brought by private parties, and the criminal contempt proceeding also arose out of the

---

[30] Doc. 1221 in *Melendres*.
[31]  Doc. 1239 in *Melendres*.
[32] Doc. 1177 in *Melendres*, page 12 at lines 11-12.

alleged violation of a preliminary injunction order; however, in *Pyle*, the private plaintiffs named the Government in the original Complaint (as a defendant, along with others), and the Government actually joined in the plaintiffs' motion for preliminary injunction out of which the criminal contempt arose (after the Government took a position in support of the plaintiffs, and had otherwise been giving given them "moral support," to quote the district court). *Id.* at 157. In contrast, the Government did not join *Melendres* until four years, three months, and fifteen days after the plaintiffs filed their motion[33] which resulted in entry of the preliminary injunction (or three years, seven months, and twenty-one days after entry of the preliminary injunction itself).[34] But even under the circumstances in *Pyle*, the district court concluded that the exception to 402 did not apply, because the Government "was not charged with the prosecution of the case" and "that responsibility remained, in principle and in fact, in the hands of the plaintiff class [who filed the case]." *Id.* at 150. The Government "did not even initiate the motion for a preliminary injunction in response to which the order allegedly violated by defendants was issued; it merely joined the

---

[33] Doc. 421 in *Melendres*, Plaintiffs' Motion for Partial Summary Judgment on April 29, 2011.

[34] Doc. 494 in *Melendres*, preliminary injunction entered on December 23, 2011.

motion which had previously been raised by [the private plaintiffs]." *Id.* "[T]he litigation was brought and prosecuted throughout by the plaintiffs alone." *Id.* at 157–58. Following a lengthy and erudite discussion of the historical background, legislative history, intent, and case law surrounding section 402, the district court therefore concluded that section 402 applied, and that the defendants were entitled to a jury trial in their criminal contempt proceeding. *Id.* Clearly, if the facts in *Pyle*—where the United States was a party to the case at its commencement (unlike here), and it even joined in the motion for preliminary injunction (unlike here)—were insufficient to make the case subject to this exception in Section 402, then the facts of this case are also insufficient. Finally, the court in *Pyle* noted that in *Clark v. Boynton* (discussed *supra*), a case in which the United States also intervened long "after the fact" (i.e. long after the order was entered, out of which the contempt arose), "it was clear that [the Government] had not" "brought or prosecuted" the action within the meaning of 18 U.S.C.A. § 402. *Id.* at 148.

## CONCLUSION

Defendant has the clear right to a writ of mandamus granting his request for a trial by jury under 18 U.S.C.A. §§ 402, 3691. Defendant asks

the Court to grant this request with all haste, or grant a stay of trial pending

the disposition of this Petition.

**RESPECTFULLY SUBMITTED** this 14th day of April, 2017.

*/s/ Dennis and Jack Wilenchik*
Dennis I. Wilenchik, #005350
John D. Wilenchik, #029353
Wilenchik & Bartness, P.C.
2810 North Third Street
Phoenix, AZ  85004
Tel.: (602) 606-2810
E-mail: admin@wb-law.com

*/s/ Mark Goldman*
Mark Goldman, #012156
Jeff S. Surdakowski, #030988
Goldman & Zwillinger, PLLC
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Main: (480) 626-8483
E-mail: docket@gzlawoffice.com

*Attorneys for Petitioner/Defendant*

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, the following is a list of "any known related case pending in this Court":

There are no other pending appeals in this case (2:16-cr-01012-SRB). However, the following appeals are pending, and generally concern the "same transaction or event" (per 28-2.6(d)), since they arise out of the underlying civil (and civil contempt) case from which this case also arises (2:07-cv-02513-GMS):

1) Case No. 16-16663 - *Manuel De Jesus Ortega Melendres, et al. v. Paul Penzone, et al.*

2) Case No. 16-16659 - *Manuel De Jesus Ortega Melendr, et al v. Brian Sands, et al.*

3) 16-16661 - *Manuel De Jesus Ortega Melendres, et al v. Maricopa County, et al.*

**DATED** this 14th day of April, 2017.


*/s/ Dennis and Jack Wilenchik*          */s/ Mark Goldman*
Dennis I. Wilenchik, #005350          Mark Goldman, #012156
John D. Wilenchik, #029353          Jeff S. Surdakowski, #030988
Wilenchik & Bartness, P.C.          Goldman & Zwillinger, PLLC
2810 North Third Street          17851 North 85th Street, Suite 175
Phoenix, AZ  85004          Scottsdale, AZ 85255
Tel.: (602) 606-2810          Main: (480) 626-8483
E-mail: admin@wb-law.com          E-mail: docket@gzlawoffice.com

*Attorneys for Petitioner/Defendant*

29

# CERTIFICATE OF COMPLIANCE

1.This document complies with the word limit of Fed. R. App. P. 21(d) because, excluding the parts of the document exempted by Fed.R.App.P. 21(d), this (entire) document contains (fewer than) **6,853** words and was produced using a computer.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

**RESPECTFULLY SUBMITTED** this 14th day of April, 2017.

*/s/ Dennis and Jack Wilenchik*          */s/ Mark Goldman*
Dennis I. Wilenchik, #005350          Mark Goldman, #012156
John D. Wilenchik, #029353          Jeff S. Surdakowski, #030988
Wilenchik & Bartness, P.C.          Goldman & Zwillinger, PLLC
2810 North Third Street          17851 North 85th Street, Suite 175
Phoenix, AZ  85004          Scottsdale, AZ 85255
Tel.: (602) 606-2810          Main: (480) 626-8483
E-mail: admin@wb-law.com          E-mail: docket@gzlawoffice.com

*Attorneys for Petitioner/Defendant*

## CERTIFICATE OF SERVICE

This certificate certifies that this Petition for Writ of Mandamus, Statement of Related Cases, Certificate of Compliance, and Certificate of Service have been served this date on all parties to the proceeding in the trial court, as well as the trial court judge via a Notice of Service which was electronically transmitted through the United States District Court CM/ECF system.

**RESPECTFULLY SUBMITTED** this 14th day of April, 2017.

/s/ Dennis and Jack Wilenchik          /s/ Mark Goldman
Dennis I. Wilenchik, #005350          Mark Goldman, #012156
John D. Wilenchik, #029353            Jeff S. Surdakowski, #030988
Wilenchik & Bartness, P.C.            Goldman & Zwillinger, PLLC
2810 North Third Street               17851 North 85th Street, Suite 175
Phoenix, AZ  85004                    Scottsdale, AZ 85255
Tel.: (602) 606-2810                  Main: (480) 626-8483
E-mail: admin@wb-law.com             E-mail: docket@gzlawoffice.com

*Attorneys for Petitioner/Defendant*

**Case No. _____**

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE: JOSEPH M. ARPAIO,

*Petitioner/Defendant,*

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA,

*Respondent*,

and

UNITED STATES OF AMERICA,

*Real Party in Interest/Plaintiff.*

On Petition for a Writ of Mandamus to the Arizona District Court
Case No. 2:16-cr-01012-SRB-1, Hon. Judge Susan R. Bolton, Presiding

### PETITIONER/DEFENDANT'S EXHIBITS FOR WRIT OF MANDAMUS

Dennis I. Wilenchik, #005350
John D. Wilenchik, #029353
Wilenchik & Bartness, P.C.
2810 North Third Street
Phoenix, AZ  85004
Tel.: (602) 606-2810
E-mail: admin@wb-law.com

Mark Goldman, #012156
Jeff S. Surdakowski, #030988
Goldman & Zwillinger, PLLC
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Main: (480) 626-8483
E-mail: docket@gzlawoffice.com

*Attorneys for Petitioner/Defendant Joseph M. Arpaio*

April 14, 2017

# TABLE OF CONTENTS

**EXHIBIT 1** Defendant Joseph Arpaio's Response to Government's Motion Requesting a Bench Trial and Defendant Joseph Arpaio's Cross Motion Requesting Jury Trial filed 12/27/16 (Doc. 62).....…………………………..………34

**EXHIBIT 2** Order re: Defendant's Cross-Motion Requesting Jury Trial filed 03/01/17 (Doc. 83) .…………………………………………………..………39

**EXHIBIT 3** Defendant's Motion to Dismiss, Or in the Alternative, Motion for Trial By Jury filed 04/10/17(Doc. 130)…..…………………………….………43

**EXHIBIT 4** Order Re: Defendant's Motion to Dismiss, Or in the Alternative, Motion for Trial By Jury filed 04/11/17 (Doc. 132) .……………………..………61

**EXHIBIT 5** Order to Show Cause filed 10/25/16 (Doc. 36).……………..………63

**EXHIBIT 6** Order re: Defendants' Memoranda re Statutes of Limitations filed 12/13/16 (Doc 60)………………………………………..….…………..………68

# EXHIBIT 1



1     A. Melvin McDonald, Bar #002298
     Joseph J. Popolizio, Bar #017434
2     Justin M. Ackerman, Bar #030726
     JONES, SKELTON & HOCHULI, P.L.C.
3     40 North Central Avenue, Suite 2700
     Phoenix, Arizona 85004
4     Telephone: (602) 263-1700
     Fax: (602) 200-7847
5     Melmcdonald2@gmail.com
     jpopolizio@jshfirm.com
6     jackerman@jshfirm.com

7     Attorneys for Defendant Joseph M. Arpaio

8

                  **UNITED STATES DISTRICT COURT**
9
                     **DISTRICT OF ARIZONA**
10

11    United States of America,          NO. 2:16-CR-01012-SRB

12                  Plaintiff,    **DEFENDANT JOSEPH ARPAIO'S**
                                       **RESPONSE TO GOVERNMENT'S**
13            v.                   **MOTION REQUESTING A**
                                       **BENCH TRIAL**
14    Joseph M. Arpaio,
     Steven R. Bailey,                    **AND**
15    Michelle Iafrate, and
     Gerard Sheridan,                   **DEFENDANT JOSEPH ARPAIO'S**
                                       **CROSS MOTION REQUESTING**
16                  Defendants.    **JURY TRIAL**

17

18          Defendant Joseph M. Arpaio hereby responds to the Government's Brief in

19    Support of Request for Bench Trial. [Doc. 61]. Defendant Arpaio requests that this Court

20    deny the Government's request for bench trial and asks that this case be decided by a jury

21    of his peers.

22          While Defendant Arpaio acknowledges that there is no constitutional right

23    to a jury trial for defendants charged with "petty" offenses where the maximum sentence

24    does not exceed six months imprisonment, "[t]he right to a trial by jury is a great

25    constitutional right," and is "only in exceptional cases and for specified causes [should] a

26    party…be deprived of it." *Town of Grand Chute v. Winegar*, 82 U.S. 373, 375 (1872).

27    Until *Schick* was decided in 1904, a jury trial was the exclusive method in determining

28

    5482159.1

guilt in all federal criminal court cases. *Singer v. U.S.*, 380 U.S. 24, 32, 85 S.Ct. 783 (1965). This is a case that justifies a jury trial. Put simply, this is a case that requires a jury of Defendant Arpaio's peers, a cross-section of the community, to decide whether he was right or wrong because there is a premise that "laymen" not "specialists" are better in determining right or wrong, or guilt or innocence in federal courts. *See U.S. ex rel. Toth v. Quarles*, 350 U.S. 11, 18, 76 S.Ct. 1, 6 (1955).

The Government argues that Defendant Arpaio does not have a constitutional right to a jury trial if the Court agrees to a punishment of no more than six months in prison; in other words, a "petty offense." *See Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886 (1970). However, whether an offense is "petty" can also depend on the nature of the crime itself, not just the potential punishment. *District of Columbia v. Colts*, 282 U.S. 63, 73, 51 S.Ct. 52 (1930). Moreover, even the authority cited by the Government, including *Muniz v. Hoffman* and *United States v. Rylander*, specifically acknowledge that the federal district court has full discretion to grant a jury trial notwithstanding the fact that the punishment may be no more than six months in prison.

In addition, while the Government asks the Court to agree to a maximum sentence of six months in prison and proceed with a bench trial, there are other significant factors and equities that favor a jury trial. First, Defendant Arpaio was the Sheriff of Maricopa County for 24 years. He served his country as a federal agent for 31 years, retiring from federal service as the special agent in charge of the DEA for the District of Arizona. He is an elected official. He serves the people of Maricopa County, and this year, became the longest serving Sheriff in Maricopa County history. His alleged actions and decisions had an impact on the County, and to a significant degree, the State. What he chose to do as an elected official while serving as the Sheriff of Maricopa County was frequently made public. He was elected by the citizens of Maricopa County to an unprecedented six terms. His office has been subject to public scrutiny, just like his actions. Now, he is facing allegations that his actions, or the actions he made as Sheriff of Maricopa County, violated the Court's Preliminary Injunctive Order. Whether these

2

actions were intentional or justified, should also be decided by a jury of his peers, not this Court. Many of the actions of the referring judge will become an issue in the case, calling into question the objectives and motives of Judge Snow. A public official's actions and motives should and must be decided by an impartial jury of the elected official's peers.

Second, this case has been pending in United States District Court since October 11, 2016, and the referral to file criminal charges was made by a distinguished colleague of this Court, Judge Murray Snow. Prior to, and now currently, there are several pleadings and arguments made in favor of, or against, Judge Snow's recusal. These pleadings are public and have been extensively reported on by the media. Because this case is well known to the public, media, and subsequently, all the judges in the United States District Court in the District of Arizona, including the Phoenix division of the court, a trial by jury avoids any appearance of bias or impropriety. Stated another way, in a case of this magnitude, with allegations of a publicly elected official intentionally defying a Court's order, it is better to have a group of people—a jury of Defendant Arpaio's peers—decide the case, rather than a single judicial officer. This would eliminate *any* appearance of impropriety, the parties making arguments against impropriety, or even the allegation of impropriety.

For the reasons set forth above, Defendant Arpaio respectfully asks that the Court not only deny the Government's request to proceed with bench trial, but also grant Defendant Arpaio's counter- request for a jury trial.

RESPECTFULLY SUBMITTED this 27th day of December 2016.

JONES, SKELTON & HOCHULI, P.L.C.


By: /s/ A. Melvin McDonald
    A. Melvin McDonald
    Joseph J. Popolizio
    Justin M. Ackerman
    40 North Central Avenue, Suite 2700
    Phoenix, Arizona 85004
    Attorneys for Defendant Joseph M. Arpaio

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of December 2016, I electronically filed the foregoing filing with the Clerk of Court through the CM/ECF System which will send notification of such filing to the attorneys of record for the defendants.

/s/ Diana Weeks

5482159.1

4

# EXHIBIT 2



1

2

3

4                          **IN THE UNITED STATES DISTRICT COURT**

5                              **FOR THE DISTRICT OF ARIZONA**

6

7   United States of America,                    No. CR-16-01012-001-PHX-SRB

8                    Plaintiff,                   **ORDER**

9   v.

10  Joseph M. Arpaio,

11                   Defendant.

12

13          At issue are the Government's Brief in Support of Request for Bench Trial

14  ("Gov.'s Mot.") (Doc. 61) and Defendant's Cross-Motion Requesting Jury Trial ("Def.'s

15  Mot.") (Doc. 62).

16  **I.      BACKGROUND**

17          This case comes to the Court by way of a criminal contempt referral from Judge

18  Snow. (Doc. 1, Order Re Criminal Contempt.) On October 11, 2016, the Court held a

19  Status Conference where the Government asked the Court to limit Defendant's potential

20  penalty to no more than six months in prison and requested a bench trial. (Doc. 27, Rep.'s

21  Tr. of Proceedings Status Conference 9:5-16.) Defendant indicated that he wanted time to

22  research the question of whether he was entitled to a jury trial. (*Id.* 15:19-16:2.) The

23  Court declined to resolve the issue at the Status Conference. (*Id.* 38:19-39:15.) On

24  October 25, 2016 the Court issued an Order to Show Cause setting forth the essential

25  facts constituting the charged criminal contempt. (Doc. 36.) The Government submitted

26  its Brief in Support of Request for Bench Trial on December 15, 2016, Defendant

27  submitted a Cross-Motion Requesting Jury Trial on December 27, 2016, and briefing

28  concluded on January 9, 2017. (*See* Docs. 61, 62, 63, 66, 69.) The Court heard argument

on January 25, 2017. (*See* Doc. 71, Minute Entry.) The Court now rules on the Government's Request for Bench Trial and Defendant's Cross-Motion Requesting Jury Trial.

## II.    LEGAL STANDARD AND ANALYSIS

The Government argues that there is no constitutional right to a jury trial for criminal contempt charges if the possible sentence of imprisonment is no greater than six months. (Gov.'s Mot. at 1.) Defendant concedes that there is no constitutional right to a jury trial when the maximum sentence of imprisonment cannot exceed six months, but argues that the Court should, in its discretion, grant a jury trial. (Def.'s Mot. at 1.)[1] Defendant argues that the Court should grant a jury trial because "the objectives and motives of Judge Snow" will be called into question and "a trial by jury avoids any appearance of bias or impropriety" on the part of any of the judges in the District of Arizona. (*Id.* at 2-3.) A defendant charged with criminal contempt does not have a constitutional right to a jury trial where the conviction can result in a sentence of imprisonment not longer than six months. *See Muniz v. Hoffman*, 422 U.S. 454, 475-76 (1975); *United States v. Rylander*, 714 F.2d 996, 1005 (9th Cir. 1983).

At the January 25, 2017 argument, Defendant, through his counsel, stated "Judge, if the question you posed to me was if it goes jury, all bets are off, if it goes court, it's capped, I would vote court." (Doc. 74, Rep.'s Tr. of Proceedings Pretrial Conference 19:19-21.) The case law is clear, if the Court limits Defendant's potential sentence to six months or less, there is no right to a jury trial. *See Muniz*, 422 U.S. at 475-76. Furthermore, the Court has found no precedent for granting a jury trial for a charge of criminal contempt when the possible sentence was limited to a maximum of six months

---

[1] Defendant also argues that a jury trial is statutorily required under 18 U.S.C. § 3691. (Doc. 69, Def. Joseph M. Arpaio's Supp. to Reply to Gov. Resp. in Supp. of Def.'s Mot.) Section 3691, however, confers a statutory right when the contumacious conduct also constitutes a separate criminal offense. 18 U.S.C. § 3691. As the Court explained in its December 13, 2016 Order, Defendant's conduct arising out of his disobedience of Judge Snow's preliminary injunction does not constitute a separate criminal offense, and therefore, § 3691 does not apply. (*See* Doc. 60, Dec. 13, 2016 Order at 2-3.)

in prison. *See e.g.*, *Taylor v. Hayes*, 418 U.S. 488, 496 (1974) ("[A] State may choose to try any contempt without a jury if it determines not to impose a sentence longer than six months"); *United States v. Aldridge*, 995 F.2d 233 (9th Cir. 1993) (Table) (concluding that Defendant had no right to a jury trial because the district court did not sentence him to more than six months' imprisonment or fine him more than $500); *United States v. Berry*, 232 F.3d 897 (9th Cir. 2000) (Table) (concluding that when the trial court stipulates that it will not impose a sentence longer than six months, Defendant was not entitled to a jury trial).

The Court finds that this case is appropriate for a bench trial. This case focuses on the application of facts to the law to determine if Defendant intentionally violated a court order. It does not necessitate an inquiry into the "motives of the referring judge". At oral argument, Defendant further explained that he thought there was "anger" on the referring judge's part in making the referral. (*Id.* at 17:2-7.) As the Court pointed out at oral argument, the referring judge's motives are not relevant in determining if Defendant's violations were in fact willful. (*Id.* at 17:11-16.) While Defendant argues that a jury trial will prevent any appearance of impropriety, this Court does not believe there is any such appearance. Therefore, the Court grants Government's Request for a Bench Trial and denies Defendant's Cross-Motion Requesting Jury Trial.

**IT IS ORDERED** granting the Government's Brief in Support of Request for Bench Trial (Doc. 61).

**IT IS FURTHER ORDERED** denying Defendant's Cross-Motion Requesting Jury Trial (Doc. 62).

Dated this 1st day of March, 2017.

Susan R. Bolton
United States District Judge

# EXHIBIT 3



WILENCHIK & BARTNESS
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone:  602-606-2810          Facsimile:  602-606-2811

Dennis I. Wilenchik, #005350
John D. Wilenchik, #029353
admin@wb-law.com



GOLDMAN & ZWILLINGER
PLLC
ATTORNEYS AT LAW

Mark Goldman (012156)
Jeff S. Surdakowski (030988)
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Main: (480) 626-8483
Facsimile: (480) 502-7500
E-mail: docket@gzlawoffice.com
*Attorneys for Defendant Joseph M. Arpaio*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No.: 2:16-cr-01012-SRB-1 |
| Plaintiff, | |
| v. | **DEFENDANT'S MOTION TO DISMISS,** |
| Joseph M. Arpaio, | **OR IN THE ALTERNATIVE, MOTION FOR TRIAL BY JURY** |
| Defendant. | **(Oral Argument Requested)** |
| | **(Expedited Ruling Requested)** |

Defendant, by and through counsel undersigned, hereby moves to dismiss this proceeding in its entirety on the grounds that it is barred by the one-year statute of limitations contained in 18 U.S.C.A. § 3285. In the event that the one-year statute of limitations does not bar this action, then Defendant, as a matter of law, is entitled to and therefore requests a trial by jury under 18 U.S.C.A. § 3691. Good cause exists under Fed.R.Crim.P.12(c)(3) for the Court to hear this Motion despite the passage of the deadline for filing pretrial Motions,[1] because if Defendant is entitled to a jury trial, then the result of any bench trial may be subject to reversal; and if the case is subject to dismissal on statute-of-limitations grounds, then conducting a trial would be a waste of judicial resources. This Motion is also being brought for the first time after the deadline because undersigned counsel is newly appearing in the case. Undersigned counsel requests to address these issues to the Court at the hearing scheduled in this matter for Wednesday, April 10th at 10:30 A.M.

The Government erroneously[2] brought this criminal contempt prosecution under 18 U.S.C. § 401 without application of the statute of limitations in 18 U.S.C. § 402, exactly two weeks before the general election in which Sheriff Arpaio ran for a seventh term as Maricopa County Sheriff. The applicable law is straightforward, and simple deductive reasoning requires that this criminal proceeding be dismissed. 18 U.S.C. § 401 provides for a five-year limitation of action and does not mandate a trial by jury; but in cases under Section 401 "where the conduct constituting the contempt charged also happens to constitute a federal or state criminal

---

[1] On March 24, 2017 (per Doc. 71).

[2] The Government has already conceded (and the Court has agreed) that 18 U.S.C. § 402 applied to other alleged contumacious conduct by Sheriff Arpaio. The Court ruled that "[b]ecause 18 U.S.C. § 3285 provides a one year statute of limitations for criminal contempt that is also a crime and the contumacious conduct at issue ended more than one year ago, the Court dismisses Defendants Sheridan, Bailey, and Iafrate from the criminal contempt proceedings and will proceed against Defendant Arpaio only for those allegations of criminal contempt in the Order to Show Cause (Doc. 36)." However, the Government failed to advise the Court that "those allegations of criminal contempt in the Order to Show Cause (Doc. 36)" are also separate crimes under state and federal statutory law, and that they are likewise barred by the one-year statute of limitations. The Government was compelled by clear, express, and unambiguous federal statutory law to bring its prosecution under 18 U.S.C. § 402 which has a one year statute of limitations and requires a jury trial.

offense,"[3] 18 U.S.C. § 402 provides for a one-year limitation of action and mandates a trial by jury (under 18 U.S.C.A. § 3691). As discussed below, the alleged acts for which Defendant was charged would constitute criminal offenses under federal and Arizona state law, including but not limited to 18 U.S.C.A. § 242 ("Deprivation of rights under color of law"), 18 U.S.C.A. § 241 ("Conspiracy against rights"), 18 U.S.C.A. § 1509 ("Obstruction of court orders"), A.R.S. § 13-2810(A)(2) ("Interference with judicial proceedings"), and A.R.S. § 13-1303 ("Unlawful imprisonment"). 18 U.S.C. § 402 unquestionably applies to this prosecution for criminal contempt, and the one-year limitation of action has expired, so this criminal contempt proceeding must be dismissed with prejudice. In the unlikely event that there is a *bona fide* reason as to why the one-year limitation of action has not expired, then Defendant is entitled, as a matter of federal statutory law (18 U.S.C.A. § 3691), to a trial by jury. Finally, Defendant requests an expedited ruling on this Motion before trial, should the Court deny Defendant's Motion for Continuance (filed herewith). This Motion is supported by the following Memorandum of Points and Authorities.

**RESPECTFULLY SUBMITTED** April 10, 2017.

**WILENCHIK & BARTNESS, P.C.**

**GOLDMAN & ZWILLINGER PLLC**

*/s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

*/s/ Mark D. Goldman*
Mark D. Goldman, Esq.
Jeff S. Surdakowski, Esq.
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
E-mail: docket@gzlawoffice.com

*Attorneys for Defendant Joseph M. Arpaio*

…

…

---

[3] *United States v. Pyle*, 518 F. Supp. 139, 146 (E.D. Pa. 1981), *aff'd*, 722 F.2d 736 (3d Cir. 1983).

## **MEMORANDUM OF POINTS AND AUTHORITIES**

A one year statute of limitations is provided for criminal contempt under 18 U.S.C. § 402 (see 18 U.S.C. § 3285). A fair summary of the interplay between 18 U.S.C. § 401, under which the Government purports to bring this case, and 18 U.S.C. § 402, to which a one-year statute of limitations applies, is contained within the Department of Justice Manual[4]:

> Section 3282 of Title 18 applies a five-year statute of limitations to all criminal contempt actions encompassed by 18 U.S.C. § 401. **If, however, the contemptuous act also constitutes a criminal offense under any statute of the United States or under the laws of any state in which the act was committed, then the contempt must be prosecuted under 18 U.S.C. § 402.[5] Under 18 U.S.C. § 3285, a one-year statute of limitations applies to contempt actions brought under 18 U.S.C. § 402.** It should be noted, however, that 18 U.S.C. § 402 is inapplicable to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States.

U.S. Dep't of Justice, United States Attorneys' Manual 9-39.770 (2017)(emphasis added).[6]

The plain meaning of Section 402 is clear, and "in §§ 402 and 3691 [guaranteeing the right to a jury trial under § 402], Congress meant what it said." *United States v. Pyle*, 518 F. Supp. 139, 156 (E.D. Pa. 1981), *aff'd*, 722 F.2d 736 (3d Cir. 1983).

For the reasons given below, Defendant's charged act of criminal contempt would also constitute a criminal offense under several Arizona state and federal statutes. Further, the Defendant's charged contempt was not committed in disobedience of an order entered in a "suit or action brought or prosecuted in the name of, or on behalf of, the United States." Section 402 therefore applies, along with its one-year statute of limitations, and the right to a trial by jury.

---

[4] "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)(finding that federal agency, BIA, must comply with its own manual). The Government's statements in its own manual, arguably, are binding on it in this proceeding.

[5] *See also* "Prosecution-on-Notice Contempt—Trial by Jury," 3A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 711 (4th ed.)("If disobedience to a court order also is a federal or state criminal offense," then Section 402 applies); *Pyle*, 518 F. Supp. at 146 (cited by *Wright & Miller*, and discussed *infra*)(holding that section 402 applies "where the conduct constituting the contempt charged also happens to constitute a federal or state criminal offense").

[6] Available at https://www.justice.gov/usam/criminal-resource-manual-770-defenses-statute-limitations.

Finally, because the Order to Show Cause ("OSC") is not supported by any facts which demonstrate that Defendant committed a contemptuous act within one year before this proceeding was brought, the OSC must be dismissed with prejudice.

## RELEVANT PROCEDURAL HISTORY

Judge Snow first raised the possibility of criminal contempt charges against Defendant in the *Melendres* litigation[7] at a November 20, 2014 status conference.[8] In response to a question from counsel for the MCSO about whether the Court was contemplating criminal or civil proceedings, the Court stated: "Well, I mean, that is one of the interesting things I'm looking at….There is civil contempt and there is criminal contempt….and it may be that matters are appropriate subjects both of criminal and civil contempt."[9] It was at the following hearing[10] on December 4, 2014 that Judge Snow then laid out his "charges" against Defendant, or in the Judge's words, why he felt that criminal contempt was "at issue."[11] That hearing occurred a full one year, eight months, and fifteen days before the Court's Order of referral for criminal contempt (which led to the OSC in this proceeding).[12] At the December 4, 2014 hearing, Elizabeth Strange of the United States Attorneys' Office was present on behalf of the Government, as well as Defendant's former criminal defense counsel, Mel McDonald.[13] Judge Snow stated: "I have asked the United States Attorney to be here and she is – or the chief assistant is here. And the reason I've asked her to be here…I want you to be aware of what's going on from the beginning and keep you apprised."[14] At the hearing, the Court displayed a copy of 18 U.S.C.A. § 401 on the courtroom monitors, and proceeded to identify exactly the

---

[7] *Melendres, et al. v. Arpaio, et al.*, No. CV-07-02513-PHX-GMS (Doc. 494).
[8] *See* Doc. 803, transcript.
[9] Doc. 803, page 39, lines 12-23.
[10] See Doc. 817, transcript of hearing.
[11] Doc. 817, page 5, lines 5-6.
[12] On August 19, 2016 (Doc. 1792).
[13] Doc. 817, page 5, lines 2-9; page 29, line 1-9.
[14] Doc. 817, page 29, line 1-9.

same issues that appear in the Order to Show Cause in this matter: first, whether Defendant violated the December 23, 2011 preliminary injunction's prohibition on detaining persons "based only on knowledge or reasonable belief, without more, that the person is unlawfully present within the United States" by continuing to conduct traffic stops in violation of that Order. (Compare with the OSC in this proceeding: "In December 2011, prior to trial in the *Melendres* case, Judge Snow entered a preliminary injunction prohibiting Sheriff Arpaio and the Maricopa County Sheriff's Office ('MCSO') from enforcing federal civil immigration law or from detaining persons they believed to be in the country without authorization but against whom they had no state charges..."[15]) Second, Judge Snow stated: "…Sheriff Arpaio's position was that he could continue to detain immigrants who he didn't have a cause to hold on any state charges and turn them over to ICE...."[16] (Compare again with the OSC: "[t]he MCSO continued to stop and detain persons based on factors including their race, and frequently arrested and delivered such persons to ICE when there were no state charges to bring against them…"[17]) At the December 4, 2014 hearing, Judge Snow continued: "Those two things indicate to me…a serious violation in direct contradiction to this Court's authority that apparently lasted for months and months, more than a year at the minimum, it appears."[18] Judge Snow then specifically noted—again, for the benefit of the Government, which was present—that "the contempt statute which we put up [18 U.S.C.A. § 401] authorizes both civil and criminal contemptual matters, *and they can arise from the same underlying facts. And, in fact, based on the same facts, you can prosecute somebody for criminal contempt and at the same time have a proceeding for civil contempt for the very same matters.*"[19] Around two months later, or on February 12, 2015, the Court proceeded to enter an Order to Show Cause regarding civil

---

[15] Doc. 36 at page 1, line 28 to page 2, line 5.
[16] Doc. 817, page 17, lines 5-9.
[17] Doc. 36 at page 3, lines 7 – 10.
[18] Doc. 817 at page 17, lines 10-16.
[19] Doc. 817, page 17 at lines 17-22.

contempt on these matters. However, despite the Court effectively *telling the Government in open court that is had a cause of action* as of December 4, 2014, the Government did not file charges—or even indicate an intent to prosecute Defendant—for nearly another two years after that date (until October 25 and October 11, 2016, respectively[20]). Judge Snow even showed the Government a copy of Rule 42 (regarding the procedure for initiating criminal contempt prosecutions) at the December 4, 2014 hearing, and stated that the Rule "gives your office, your own office, an opportunity to evaluate…whether or not you wish to pursue [this]…."[21]

Finally, also of note at the December 4, 2014 hearing, is that Judge Snow discussed with the Plaintiffs whether the provision for fines under 18 U.S.C.A. § 402 could be used to compensate the Plaintiffs.[22] This seems to imply that he believed that Section 402 would apply.

## STATEMENT OF FACTUAL ALLEGATIONS

The essential facts constituting the charged criminal contempt in this matter are contained in this Court's OSC entered on October 25, 2016 (Doc. 36). To encapsulate even that concise summary, at issue is whether the Defendant willfully disobeyed Judge Snow's preliminary injunction of December 23, 2011. "In December 2011, prior to trial in the *Melendres* case, Judge Snow entered a preliminary injunction prohibiting Sheriff Arpaio and the Maricopa County Sheriff's Office ('MCSO') from enforcing federal civil immigration law or from detaining persons they believed to be in the country without authorization but against whom they had no state charges."[23] The OSC alleges that "[t]he MCSO continued to stop and detain persons based on factors including their race, and frequently arrested and delivered such persons to ICE when there were no state charges to bring against them. Judge Snow concluded that Sheriff Arpaio did so based on the notoriety he received for, and the campaign donations he received because of,

---

[20] *See* Doc. 36 in this matter, the Order to Show Cause.
[21] Doc. 817, page 29, lines 10-11; page 29, line 23 through page 30, line 3.
[22] Doc. 817, page 21, line 12 to page 22, line 6.
[23] Doc. 36 at page 1, line 28 to page 2, line 5 (citing Doc. 494 in *Melendres*, the preliminary injunction).

1    his immigration enforcement activity." (Internal citations omitted.)[24] The OSC continues:

2    "[a]lthough Sheriff Arpaio told counsel on multiple occasions either that the MCSO was

3    operating in compliance with the Order, or that he would revise his practices so that the MCSO

4    was operating in compliance with the Order, he continued to direct his deputies to arrest and

5    deliver unauthorized persons to ICE or the Border Patrol."[25] The OSC alleges no other conduct

6    specific to Defendant and relative to violations of the original December 23, 2011 injunction;

7    and this is precisely the same conduct that Judge Snow raised during the December 4, 2014

8    hearing (*supra*). Therefore, the conduct for which Defendant was charged clearly occurred prior

9    to that December 4, 2014 hearing, which was more than one year before the OSC (and to be

10   precise, one year, ten months, and twenty-one days before).

11          Further, if these allegations in the OSC are actually broken down, and "sourced" back to

12   the original *Melendres* proceedings: the allegation that the "MCSO continued to stop and detain

13   persons based on factors including their race, and frequently arrested and delivered such persons

14   to ICE when there were no state charges to bring against them" references Judge Snow's

15   Findings of Fact after the civil contempt proceeding,[26] in which he found that "*during the period*

16   *that the preliminary injunction was in place*, the MCSO used pre-textual stops to examine a

17   person's citizenship and enforce federal civil immigration law."[27] (Emphasis added. The

18   permanent injunction was entered on October 2, 2013.) This, in turn, referenced testimony and

19   exhibits admitted at the civil contempt hearing, which show that the MCSO turned persons over

20   to ICE in between January 4, 2012 and December 28, 2013.[28] The allegation that "Sheriff

21

22   ---

[24] Doc. 36 at page 3, lines 7 – 14 (citing Doc. 1677 in *Melendres*, Judge Snow's civil contempt findings, at ¶¶ 157-161, 58-60).

23   [25] Doc. 36 at page 3, line 25 to page 4, line 3 (citing Doc. 1677 in *Melendres*, at ¶¶ 55-57)(Judge Snow's Findings of Fact after the civil contempt hearing).

24   [26] Doc. 1677 at ¶¶ 157-161.
     [27] Doc. 1677 at ¶ 161.

25   [28] Plaintiff's Exhibits 208 and 209, which Lt. Jakowinicz testified about on the second day of the evidentiary hearing in the civil contempt matter, Doc. 1051 at Tr. 384:4–14, 386:16–22.

26

1   Arpaio…continued to direct his deputies to arrest and deliver unauthorized persons to ICE or the

2   Border Patrol" references a finding by Judge Snow that "*during the latter part of 2012*," "Arpaio

3   directed [Lieutenant] Jakowinicz to call the Border Patrol if ICE refused to take custody of an

4   individual for whom the MCSO did not have state charges justifying detention." (Emphasis

5   added.)[29] Again, all of these events occurred well more than one year before the instant

6   proceedings began. This is regardless of whether the word "began" (as used within 8 U.S.C.A. §

7   3285) means the date on which the OSC was entered (October 25, 2016), or the date that this

8   case number was opened (August 19, 2016)—i.e., regardless of whether October 25, 2015 or

9   August 19, 2015 is used as the "cutoff" for the one-year statute of limitations.

10      While the OSC states on its face that it constitutes a "notice to show cause as to whether

11  Joseph M. Arpaio should be held in criminal contempt for willful disobedience of Judge Snow's

12  *preliminary injunction of December 23, 2011*," the OSC also includes a series of other

13  (apparently collateral) allegations pertaining to alleged violations of the permanent injunction

14  entered on October 2, 2013. While these alleged violations do not appear to be the subject of the

15  OSC, they are noted as follows: that "the Sheriff refused to comply in good faith with the

16  [permanent injunction's] requirement that he engage in community outreach"; "that the Sheriff

17  and his command staff were mischaracterizing the content of the [permanent injunction] order to

18  MCSO deputies and to the general public"; and that "the Sheriff was not investigating the

19  allegations of misconduct in good faith—especially those that pertained to him or to members of

20  his command staff."[30] These allegations almost entirely reference acts in 2014 (and to the extent

21  that they reference any acts in 2015 whatsoever, there are none before August 19, 2015, i.e. the

22  more "liberal" one-year cutoff date). The OSC states on its face that "Judge Snow had to amend

23  

---

24  [29] Paragraph 57 of Doc. 1677 in *Melendres*, which in turn cites the testimony of Mr. Jakowinicz at an evidentiary
        hearing before Judge Snow (and in particular, a comment played from Mr. Jakowinicz's video-recorded

25      deposition); as well as the testimony of Defendant during the same evidentiary hearing (in which Defendant
        was asked about the same segment of Mr. Jakowinicz's deposition).

26  [30] Doc. 36 at page 2, line 19 to page 3, line 6.

1    and supplement the order and enter further orders" because of the foregoing alleged violations—

2    referring to his amendments which were entered on April 4, 2014, which indicates that the

3    violations occurred before that date.[31] Judge Snow's finding that "the Sheriff refused to comply

4    in good faith with the [permanent injunction's] requirement that he engage in community

5    outreach" references incidents in October and December of 2013.[32] His finding "that the Sheriff

6    and his command staff were mischaracterizing the content of the [permanent injunction] order to

7    MCSO deputies and to the general public" references an incident on October 18, 2013.[33] Finally,

8    his finding that "the Sheriff was not investigating the allegations of misconduct in good faith"

9    (which clearly does not constitute a violation of the preliminary injunction, and therefore is not

10   the subject of this OSC) references various alleged acts in 2014, and January through March

11   2015 at the latest.[34]

12        Finally, while the OSC states that Judge Snow referred Defendant's "intentional and

13   *continuing* non-compliance with the court's preliminary injunction to another judge to determine

14   whether he should be held in criminal contempt" (emphasis added), neither the OSC nor Judge

15   Snow's Order of referral for criminal contempt references any specific act occurring within one

16   year of when this proceeding began. In fact, Judge Snow's Order referring Defendant for

17   criminal contempt, when discussing "the violation of this Court's preliminary injunction of

18   December 23, 2011," refers to the alleged contempt as "Sheriff Arpaio's violation of [the

19   preliminary injunction] Order over the ensuing 17-months that it was ignored,"[35] meaning that

20   the act ended in 2013. During the initial December 4, 2014 hearing to raise the possibility of

21   criminal contempt (discussed at length *supra*), the Judge also made reference to "Sheriff

---

[31]  Doc. 670 in *Melendres*.

[32] Doc. 1677 ¶¶ 368, 368 n.13.

[33] Doc. 1677 ¶ 367.

[34] *See* Doc. 1792, page 9, lines 11-19 (citing Doc. 1677 at ¶¶ 609-647, ¶¶ 424-434, ¶¶ 574-83, ¶¶ 648-54, ¶¶ 509-14).

[35] Doc. 1792 in *Melendres* at page 5, lines 10-12.

Arpaio's conduct…during the *18 months* in which he was apparently in violation of my preliminary injunction," and that "the Sheriff's Office, *for 18 months*, assumed authority that it did not have…" (emphasis added).[36] Finally, Judge Snow's civil findings[37] reveal that he did not find, nor did the Plaintiffs in *Melendres* even allege, that Defendants "continued to enforce federal civil immigration law after this Court issued its findings of fact and conclusions of law on May 24, 2013" (Doc. 1677 at ¶ 164).

The bottom line here is that there is no factual allegation contained either in the OSC in this case (Doc. 36), in the criminal referral order in *Melendres* (Doc. 1792), or even in the underlying civil contempt findings or proceedings in *Melendres* (Doc. 1677), which supports that Defendant committed any contemptuous act in between August 19, 2015 and October 25, 2016. In fact, by August 19, 2015, four days of evidentiary hearings had already occurred in the civil contempt matter, and the Court had already implemented and enforced numerous orders, for years, regarding monitoring the MCSO and preventing violations of the Court's preliminary and permanent injunctions.

Pursuant to Fed.R.Cim.P. 42, the OSC in a prosecution for criminal contempt must "state the essential *facts* constituting the charged criminal contempt" (emphasis added). This is analogous to a criminal Complaint filed under Fed.R.Crim.P. 3, which must also contain "a written statement of the essential facts constituting the offense charged"; and so the Court should apply the same pleading standards to an OSC that it applies to a criminal Complaint. A criminal Complaint "must not only set forth facts establishing the commission of an offense under federal law, it must also present facts evidencing probable cause"; and a criminal Complaint is defective if it fails to set forth a factual basis for the allegations, or if it contains merely general conclusory statements in support of the crime. *United States v. Beasley*, 485 F.2d

---

[36] Doc. 817, page 18 at lines 13-16, 22-23.
[37] I.e., his findings at Doc. 1677 at ¶¶ 157-163, which he references at page 4, line 21, and again at p. 5, line 12 of his criminal referral, Doc. 1792.

60, 62 (10th Cir. 1973); *Giordenello v. United States*, 357 U.S. 480, 486 (1958). The Court "should not accept without question the complainant's mere conclusion" that the person charged "has committed a crime." *Id*. Because the OSC is devoid of facts supporting that the Defendant committed a contemptuous act in between August 19, 2015 and October 25, 2016, and because the acts of contempt for which Defendant has been charged are time-barred, the OSC must be dismissed with prejudice.

I.     ***Defendant's charged act of criminal contempt would also constitute a criminal offense under several Arizona state and federal statutes***

The Defendant's charged criminal contempt falls within 18 U.S.C. § 402, and therefore a one-year statute of limitations applies under 18 U.S.C. § 3285, because the Defendant's alleged act of criminal contempt would constitute a crime under 18 U.S.C.A. § 242 ("Deprivation of rights under color of law"),[38] 18 U.S.C.A. § 241 ("Conspiracy against rights"),[39] 18 U.S.C.A. § 1509 ("Obstruction of court orders"),[40] A.R.S. § 13-2810(A)(2)("Interference

---

[38] "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death."

[39] "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or
"If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured--
"They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death."

[40] "Whoever, by threats or force, willfully prevents, obstructs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with, the due exercise of rights or the performance of duties under any order, judgment, or decree of a court of the United States, shall be fined under this title or imprisoned not more than one year, or both.

with judicial proceedings"),[41] and/or A.R.S. § 13-1303 ("Unlawful imprisonment"),[42] *inter alia*. If such charges had been (or were ever) brought, Defendant would be entitled to a trial by jury; and therefore in fairness, 18 U.S.C.A. § 3691 also guarantees the Defendant a trial by jury under Section 402 (discussed below).

In *Clark v. Boynton*, 362 F.2d 992 (5th Cir. 1966), contempt proceedings were instituted against a sheriff for "failure to comply with [a] private suit injunction restraining interference with voting registration efforts and demonstrations." Unlike the proceeding *sub judice*, the lower court in *Boynton* did not clearly designate its proceedings as either criminal or civil contempt; and because the lower court failed to follow the correct rules for either civil or criminal contempt, proceedings the Fifth Circuit vacated its finding of contempt. *Id.* at 999. In reviewing whether the trial court followed the rules for criminal contempt, the Fifth Circuit discussed whether there should have been a jury trial: "the District Court was from the beginning inescapably faced with the problem arising under §§402 and 3691, the effect of which is to grant a jury trial for criminal contempt in non-government actions where the actions alleged to have transgressed the order constitute a violation of Federal or State law." *Id.* at 997. "On this point we agree with the candid statement by the Government as amicus that if this were a criminal contempt proceeding, the conduct asserted to be contemptuous was, at least arguably, a violation of 18 U.S.C.A. § 242, or of 18 U.S.C.A. § 241, if not of 18 U.S.C.A. § 1509. In either situation, §§ 402 and 3691 assured a jury trial unless it were waived." *Id.* Therefore, conduct that is, at least arguably, chargeable under any of those statutes will implicate section 402. In

---

"No injunctive or other civil relief against the conduct made criminal by this section shall be denied on the ground that such conduct is a crime."

[41] "A person commits interfering with judicial proceedings if such person knowingly…[d]isobeys or resists the lawful order, process or other mandate of a court."

[42] "A person commits unlawful imprisonment by knowingly restraining another person," unless "[t]he restraint was accomplished by a peace officer or detention officer acting in good faith in the lawful performance of his duty…"

turn, section 402 guarantees not only the right to a jury trial, but it also carries a one-year statute of limitations in 18 U.S.C.A. § 3285 (which provides, "[n]o proceeding for criminal contempt within section 402 of this title shall be instituted against any person…unless begun within one year from the date of the act complained of…")

In particular, it is undeniable that the alleged criminal acts for which Defendant was charged would constitute a crime under A.R.S. § 13-2810(A)(2) ("Interference with judicial proceedings"), which occurs when the defendant "knowingly…[d]isobeys or resists the lawful order…of a court." Because the contemptuous acts with which Defendant was charged would constitute crimes under federal or state law, section 402 applies.

II.    ***The Defendant's charged criminal contempt was not committed in disobedience of an order entered in a "suit or action brought or prosecuted in the name of, or on behalf of, the United States"***

The December 23, 2011 preliminary injunction was entered in an action brought and prosecuted by private parties, namely Manuel de Jesus Ortega-Melendres (who filed the action on December 12, 2007); Jessica and David Rodriguez; Velia Meraz; Manuel Nieto, Jr.; and "Somos America" (all of whom filed the Motion for Partial Summary Judgment[43] on April 29, 2011 that resulted in the preliminary injunction being issued). The United States did not move to intervene in that action until much later, on July 20, 2015 [44] (with its intervention being granted on August 13, 2015).[45] Further, in the Government's Motion to Intervene, it expressly argued that "the other parties will not be prejudiced" because "the United States seeks only to intervene in future proceedings…"[46] The Government acknowledged that it sought intervention "well after the disposition of the lawsuit" and "shortly after the Defendants' recently admitted contumacious conduct";[47] and it stated that it did "not seek to reopen litigation concerning the

---

[43] Doc. 421.
[44] Doc. 1221.
[45] Doc. 1239.
[46] Doc. 1177, page 12 at lines 11-12.
[47] Doc. 1177, page 8 at 13, page 10 at lines 22-23.

scope of defendants' unconstitutional conduct, but only to participate in proceedings concerning defendants' compliance with the remedial orders in this case going forward."[48] It is clear that Government did not "bring or prosecute" the action in which the December 23, 2011 preliminary injunction was entered, and that the action was brought and prosecuted by private parties.

In *United States v. Pyle*, the District Court for the Eastern District of Pennsylvania considered whether a criminal contempt proceeding brought by private parties, to which the Government was joined as a party, was subject to the exception in Section 402 for suits "brought or prosecuted in the name of, or on behalf of, the United States." 518 F. Supp. at 146. The facts in *Melendres* are even more compelling than those in *Pyle*, where the Court nevertheless held that the matter was not brought or prosecuted by the Government. In *Pyle*, as in *Melendres*, the suit was originally brought by private parties, and the alleged criminal contempt arose out of the violation of a preliminary injunction order; however, in *Pyle*, the private plaintiffs named the Government in the original Complaint (as a defendant, amongst other party defendants), and the Government joined in the plaintiffs' motion for preliminary injunction that resulted in the order out of which the criminal contempt arose (after it had taken a position in support of the plaintiffs, and otherwise given them "moral support"). *Id.* at 157. In contrast, the Government did not join[49] *Melendres* until four years, three months, and fifteen days after the plaintiffs filed their motion[50] which resulted in entry of the preliminary injunction (or three years, seven months, and twenty-one days after entry of the preliminary injunction itself).[51] Nevertheless, the district court in *Pyle* concluded that the exception to 402 did not apply even under those circumstances, because the Government "was not charged with the prosecution of the case" and

---

[48] Doc. 1177, page 7 at line 24-26.
[49] See Order granting intervention by the USA (Doc. 1239).
[50] Plaintiffs' Motion for Partial Summary Judgment on April 29, 2011 (Doc. 421).
[51] December 23, 2011 (Doc. 494).

1 "that responsibility remained, in principle and in fact, in the hands of the plaintiff class [who

2 filed the case]." *Id.* at 150. The Government "did not even initiate the motion for a preliminary

3 injunction in response to which the order allegedly violated by defendants was issued; it merely

4 joined the motion which had previously been raised by [the private plaintiffs]." *Id.* "[T]he

5 litigation was brought and prosecuted throughout by the plaintiffs alone." *Id.* at 157–58.

6 Following a lengthy and erudite discussion of the historical background, legislative history,

7 intent, and case law surrounding section 402, the district court therefore concluded that section

8 402 applied, and that the defendants were entitled to a jury trial. *Id.* Clearly, if the facts in

9 *Pyle*—where the United States was a party to the case at its commencement (unlike here), and it

10 even joined in the motion for preliminary injunction (unlike here)—were insufficient to make

11 the case subject to the exception in Section 402, then the facts of this case are also insufficient.

12 Finally, the court in *Pyle* noted that in *Clark v. Boynton* (discussed *supra*), a case in which the

13 United States also intervened long "after the fact" (i.e. long after the order out of which the

14 contempt arose was entered), "it was clear that [the Government] had not" "brought or

15 prosecuted" the action within the meaning of 18 U.S.C.A. § 402. *Id.* at 148.

16      ### *There is no tolling of 18 U.S.C.A. § 3285*

17      As has been previously argued to the Court, 18 U.S.C.A. § 3285 does not allow for any

18 tolling. *See* Doc. 37 at pages 3-6 (incorporated herein by reference); Doc. 34 and Doc. 35 at

19 pages 3-6; Doc. 38 at pages 2-3. *See also Toussie v. United States,* 397 U.S. 112, 115 (1970):

20 "criminal limitations statutes are 'to be liberally interpreted in favor of repose'" (quoting *United*

21 *States v. Scharton*, 285 U.S. 518, 522 (1932)).

22      ### *Alternative Motion for Jury Trial*

23      If for any reason the Court declines to rule that this matter is time-barred, then Defendant

24 specifically re-urges his request for a jury trial, on the grounds that this matter is subject to

25 18 U.S.C.A. § 402 and 18 U.S.C.A. § 3691, which guarantee him that right. "A person being

26

prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides…" Fed. R. Crim. P. 42(a)(3). The Defendant's right to a jury trial is fundamental and clearly guaranteed here, and any denial of that right is reversible error. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). Should the Court decline to grant Defendant's request for a jury trial, then Defendant requests a stay in order to proceed by appeal for a Writ of Mandamus, as Defendant has no other adequate means by which guarantee this right before trial.

## CONCLUSION

For the foregoing reasons, this matter must be dismissed in its entirety, with prejudice. Should the Court decline to do so, it must grant Defendant's request for a trial by jury.

**RESPECTFULLY SUBMITTED** April 10, 2017.

**WILENCHIK & BARTNESS, P.C.**

**GOLDMAN & ZWILLINGER PLLC**

*/s/ Dennis I. Wilenchik*

Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

*/s/ Mark D. Goldman*

Mark D. Goldman, Esq.
Jeff S. Surdakowski, Esq.
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
docket@gzlawoffice.com

*Attorneys for Defendant Joseph M. Arpaio*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2017, I electronically transmitted the foregoing Notice to the Clerk of the Court through the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF registrants for this matter.

*/s/ Christine M. Ferreira*

# EXHIBIT 4



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-16-01012-001-PHX-SRB |
|     Plaintiff, | **ORDER** |
| v. | |
| Joseph M. Arpaio, | |
|     Defendant. | |

    The Court has reviewed Defendant's Motion to Dismiss, or in the Alternative, Motion for Trial by Jury (Doc. 130). The motion will be denied for two reasons. First, the motion was filed after the deadline set by the Court for pre-trial motions. Second, the Court has already considered and ruled on the issues raised in Defendant's motion. *See,* Docs. 60 and 83.

    IT IS ORDERED denying Defendant's Motion to Dismiss or in the Alternative Motion for Trial by Jury (Doc. 130).

                        Dated this 11th day of April, 2017.

                                      Susan R. Bolton
                                    United States District Judge

# EXHIBIT 5



1

2

3

4

5

6        IN THE UNITED STATES DISTRICT COURT

7        FOR THE DISTRICT OF ARIZONA

8    United States of America,

9                        Plaintiff,                    2:16-CR-01012-1-SRB

10            vs.                                       **ORDER TO SHOW CAUSE**

11

12   Joseph M. Arpaio,

13                        Defendant.

14        This Order is entered pursuant to 18 U.S.C. § 401 and Rule 42 of the Federal

15   Rules of Criminal Procedure.  On October 11, 2016, the Government stated its intention

16   to prosecute Joseph M. Arpaio for contempt under 18 U.S.C. § 401(3) based on the Order

17   Re Criminal Contempt entered by United States District Judge G. Murray Snow on

18   August 19, 2016, in the *Melendres* matter.  *See Melendres v. Arpaio*, no. 2:07-cv-02513

19   (D. Ariz. Aug. 19, 2016), Order Re Criminal Contempt, ECF No. 1792.  For the reasons

20   set forth below, the Court issues this Order to Show Cause as to whether Joseph M.

21   Arpaio should be held in criminal contempt for willful disobedience of Judge Snow's

22   preliminary injunction of December 23, 2011, entered in *Melendres*. *See Melendres*,

23   Order, ECF No. 494.

24        The essential facts constituting the charged criminal contempt are as follows:

25        In December 2011, prior to trial in the *Melendres* case, Judge Snow entered a

26

27

28

preliminary injunction prohibiting Sheriff Arpaio and the Maricopa County Sheriff's Office ("MCSO") from enforcing federal civil immigration law or from detaining persons they believed to be in the country without authorization but against whom they had no state charges. *See Melendres*, Order, ECF No. 494. The preliminary injunction also ordered that the mere fact that someone was in the country without authorization did not provide, without more facts, reasonable suspicion or probable cause to believe that such a person had violated state law. *See id.* Judge Snow noted that Sheriff Arpaio admitted he knew about the preliminary injunction upon its issuance and thereafter. (Doc. 1677 ¶ 15.) Sheriff Arpaio's attorney stated to the press that the Sheriff disagreed with the Order and would appeal it, but would also comply with it in the meantime. (*Id.* ¶ 14.) Sheriff Arpaio's attorney and members of his command staff repeatedly advised him on what was necessary to comply with the Order.

Almost immediately after the court entered its original October 2, 2013 injunctive order, (Doc. 606), Judge Snow had to amend and supplement the order and enter further orders because: (1) the Sheriff refused to comply in good faith with the order's requirement that he engage in community outreach, (Doc. 670; *see also* Doc. 1677 ¶¶ 368, 368 n.13), and (2) the Sheriff and his command staff were mischaracterizing the content of the order to MCSO deputies and to the general public, (Doc. 680; *see also* Doc. 1677 ¶ 367). Within one month of those revisions, the Defendants disclosed to the court the arrest, suicide, and subsequent discovery of misconduct of Deputy Ramon "Charley" Armendariz who had been a significant witness at the trial of the underlying

- 2 -

matter. Among other things, the disclosure of Armendariz's misconduct eventually resulted in the determination that the Sheriff had intentionally done nothing to implement the court's 2011 preliminary injunctive order; and the Sheriff was not investigating the allegations of misconduct in good faith—especially those that pertained to him or to members of his command staff.

The MCSO continued to stop and detain persons based on factors including their race, (*id.* at ¶ 161), and frequently arrested and delivered such persons to ICE when there were no state charges to bring against them, (*id.* ¶¶ 157–61). Judge Snow concluded that Sheriff Arpaio did so based on the notoriety he received for, and the campaign donations he received because of, his immigration enforcement activity. (*Id.* ¶¶ 58–60.) Since Sheriff Arpaio had previously taken some of his arrestees to the Border Patrol when ICE refused to take them, he determined that referral to the Border Patrol would serve as his "back-up" plan for all similar circumstances going forward. (*Id.* ¶¶ 40–41.) Sheriff Arpaio's failure to comply with the preliminary injunction continued even after the Sheriff's appeal to the Ninth Circuit Court of Appeals was denied. (*Id.* ¶¶ 42–44.) When Plaintiffs accused Sheriff Arpaio of violating the Order, he falsely told his lawyers that he had been directed by federal agencies to turn over persons whom he had stopped but for whom he had no state charges. (*Id.* ¶¶ 50–52.) Nevertheless, Sheriff Arpaio's lawyer still advised him that he was likely operating in violation of the preliminary injunction. (*Id.* ¶ 53.) Although Sheriff Arpaio told counsel on multiple occasions either that the MCSO was operating in compliance with the Order, or that he would revise his practices so that

the MCSO was operating in compliance with the Order, he continued to direct his deputies to arrest and deliver unauthorized persons to ICE or the Border Patrol. (*Id.* ¶¶ 55–57.) After exhausting "all of its other methods to obtain compliance," Judge Snow referred Sheriff Arpaio's intentional and continuing non-compliance with the court's preliminary injunction to another Judge to determine whether he should be held in criminal contempt. (Order Re Criminal Contempt at 12.)

**THEREFORE**, the Court issues a notice to show cause as to whether Joseph M. Arpaio should be held in criminal contempt for willful disobedience of Judge Snow's preliminary injunction of December 23, 2011.

**IT IS FURTHER ORDERED** that Trial for this matter is set for **December 6, 2016 at 9:00 a.m.** in the Sandra Day O'Connor U.S. Courthouse, 401 W. Washington Street, Courtroom 502, Phoenix, Arizona 85003.

Dated this 25th day of October, 2016.

Susan R. Bolton
United States District Judge

- 4 -

# EXHIBIT 6



Case 2:16-cr-01012-SRB Document 161 Filed 12/13/16 Page 74 of 77

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-16-01012-PHX-SRB |
| Plaintiff, | **ORDER** |
| v. | |
| Joseph M. Arpaio,<br>Steven R. Bailey,<br>Michele Iafrate, and<br>Gerard Sheridan | |
| Defendants. | |

At issue are Defendants' Memoranda Re: Statute of Limitations (Docs. 34, 35, 37, & 38).[1]

## I.  BACKGROUND

This case arises from Judge G. Murray Snow's Order Re Criminal Contempt directing this Court to determine whether Defendants Joseph M. Arpaio, Steven R. Bailey, Michele Iafrate, and Gerard Sheridan should be held in criminal contempt for their conduct during their civil case. (Doc. 1, Aug. 19, 2016 Order at 31-32.) This order addresses the criminal contempt referral of Sheriff Arpaio and Chief Deputy Sheridan involving the non-disclosure of 50 Montgomery hard drives and the criminal contempt referral of Chief Deputy Sheridan, Captain Bailey, and Ms. Iafrate involving the

---

[1] Each Defendant filed a separate memorandum briefing the applicable statute of limitations. The briefs all raise similar arguments, so the Court will refer to one brief throughout.

concealment of 1,459 IDs. (Order at 6-7, 10, 15, 18-19, 27.) These aspects of Judge Snow's civil contempt proceeding have a long history which the Court briefly summarizes here. In the underlying civil suit, Judge Snow appointed a Monitor to oversee various Maricopa County Sheriff's Office internal affairs investigations. Defendants were required to turn over various related materials to the Monitor. Judge Snow ordered Sheriff Arpaio to oversee preservation and production of the Montgomery materials, which he did not do. (Order at 6-7.) Chief Deputy Sheridan also did not produce the 50 Montgomery hard drives. (Order at 15.) The Monitor discovered the hard drives in July 2015. (Order at 16.) Chief Deputy Sheridan also concealed 1,459 IDs that were found during the course of an internal affairs investigation and ordered Captain Bailey to suspend the investigation. (Order at 10, 18.) Chief Deputy Sheridan consulted Ms. Iafrate about whether they had to disclose the IDs to the Monitor, and she told them not to disclose the IDs. (Order at 19, 27.) Captain Bailey told the Monitor that they had not found any new IDs. (Order at 20, 25.) The Monitor was informed about the IDs on July 22, 2015. (*Id.*) Judge Snow held a hearing on July 24, 2015, wherein each Defendant testified regarding their participation in the concealment of the IDs and/or the Montgomery materials.

Judge Snow issued his Order Re Contempt on August 19, 2016 directing this Court to determine whether Sheriff Arpaio, Chief Deputy Sheridan, Captain Bailey, and Attorney Iafrate should be held in criminal contempt. (Doc. 1, Order at 32.) Judge Snow's order set forth three categories of contumacious conduct: Defendant Arpaio's violation of the court's preliminary injunction, Defendants Arpaio and Sheridan's participation in the non-disclosure of the Montgomery hard drives, and Defendants Sheridan, Bailey, and Iafrate's concealment of the IDs. (*See* Order at 1-2.) The Court held a status conference on October 11, 2016. (Doc. 24, Minute Entry.)

At the status conference, the Government asserted that there were two statutes governing criminal contempt, 18 U.S.C. § 401 and 18 U.S.C. § 402. (Doc. 27, Rep.'s Tr. of Status Conference at 5.) Section 401 addresses disobedience of court orders. (*Id.*)

Section 402 addresses a subset of that conduct, conduct that also constitutes a criminal offense. (*Id.*) The Government argued that Sheriff Arapio's contumacious conduct of violating Judge Snow's preliminary injunction order is punishable under Section 401, but because non-disclosure of the Montgomery hard drives and concealment of the IDS also constitute obstruction of justice, a separate crime, this contumacious conduct is punishable under Section 402. (*Id.* at 6.) Contumacious conduct subject to Section 401 does not have a statute of limitations; however conduct subject to Section 402 has a one-year statute of limitations, which the Government claimed had run. 18 U.S.C. § 3285; (Rep.'s Tr. of Status Conference at 7-8.) The Court directed counsel to file briefs regarding the statute of limitations and possible tolling of the statute as relevant to the Government's position on the charges arising from the Montgomery hard drives and the IDs. (Doc. 24, Minute Entry.) The parties entered into an agreement tolling the statute of limitations that day awaiting a determination of the issue by the Court. (*Id.*) The Court now considers whether the statute of limitations applicable to contumacious conduct under 18 U.S.C. § 402 has run.

## II.    LEGAL STANDARD AND ANALYSIS

Defendants argue that a criminal contempt prosecution related to the non-disclosure of Montgomery materials and the IDs cannot be brought because 18 U.S.C. § 3285 sets a one year statute of limitations for contumacious conduct punishable under Section 402, which expired prior to Judge Snow's order. (Doc. 34, Mem. Regarding Expiration of Statute of Limitations under 18 U.S.C. § 3285 at 2-3.) "No proceeding for criminal contempt within section 402 of this title shall be instituted against any person, corporation or association unless begun within one year from the date of the act complained of." 18 U.S.C. § 3285. Defendants Arpaio and Sheridan's contumacious conduct arose from their actions regarding the Montgomery hard drives and Defendants Sheridan, Bailey, and Iafrate's contumacious conduct arose from concealment of the IDs. At latest, their conduct ceased on July 24, 2015 when they were called to the hearing before Judge Snow because at that time the Monitor had possession of the undisclosed

evidence. Judge Snow's order was not issued until August 19, 2016, more than three weeks after the statute of limitations expired. Additionally, there is no basis for tolling the statute of limitations because any potentially excludable time periods occurred prior to the July 24, 2015 hearing. Therefore, the Court cannot proceed with criminal contempt charges against Defendants Arpaio and Sheridan for their conduct regarding the non-disclosure of the Montgomery hard drives or against Defendants Sheridan, Bailey, and Iafrate for their conduct regarding concealment of the IDs.

## III.    CONCLUSION

Because 18 U.S.C. § 3285 provides a one year statute of limitations for criminal contempt that is also a crime and the contumacious conduct at issue ended more than one year ago, the Court dismisses Defendants Sheridan, Bailey, and Iafrate from the criminal contempt proceedings and will proceed against Defendant Arpaio only for those allegations of criminal contempt in the Order to Show Cause (Doc. 36).

**IT IS ORDERED** dismissing Defendants Sheridan, Bailey, and Iafrate.

Dated this 13th day of December, 2016.

Susan R. Bolton
United States District Judge

- 4 -