AnnaLou Tirol
Acting Chief
Public Integrity Section, Criminal Division
U.S. Department of Justice

JOHN D. KELLER
Illinois State Bar No. 6293104
Deputy Chief
VICTOR R. SALGADO
DC Bar No. 975013
SIMON J. CATALDO
Massachusetts Bar No. 690879
Trial Attorneys
Public Integrity Section, Criminal Division
U.S. Department of Justice
1400 New York Ave, NW, 12th floor
Washington, D.C. 20005
Tel: (202) 514-1412
John.Keller2@usdoj.gov
Victor.Salgado@usdoj.gov
Simon.Cataldo@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Joseph M. Arpaio,<br><br>　　　　　Defendant. | No. CR-16-01012-PHX-SRB<br><br>**GOVERNMENT'S MOTION TO QUASH DEFENDANT'S TRIAL SUBPOENA TO U.S. ATTORNEY GENERAL JEFFERSON BEAUREGARD SESSIONS** |

This criminal contempt prosecution concerns the defendant's violations of a U.S. District Court's preliminary injunction that occurred in Arizona between December 2011 and May 2013. The government's evidence at trial will focus upon (1) whether there was "a clear and definite order of the court," (2) whether "the contemnor kn[ew] of the order," and (3) whether "the contemnor willfully disobey[ed] the order." *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980). In yet another attempt to distract the Court from the issues in this case, the defendant has subpoenaed the Attorney General of the United States, who acceded to that position in February 2017 and was a United States Senator from Alabama at all times relevant to the instant case. The defendant seeks testimony from the

Attorney General regarding policies, practices, and legal interpretations of the United States Department of Justice and Department of Homeland Security. See Ex. A (Def.'s May 18, 2017, Ltr. to Govt.). Regardless of the nature or extent of such policies, either now or at the time of the alleged offense, the testimony sought is simply irrelevant to the issues properly before the Court. Neither the Attorney General's legal opinions nor current Department of Justice policies can excuse the defendant's repeated, direct violations of a federal court order. Moreover, even if the defendant could somehow show relevance, the defendant has plainly failed to satisfy the demanding standard for compelling the testimony of a high-ranking official, especially an attorney for the government overseeing the prosecution of, and indeed, a party to, this case. The subpoena should be quashed.

## I. Testimony Sought by the Defendant

This Motion is filed in response to a subpoena filed on the docket on June 13, 2017. ECF No. 153-9. On April 12, 2017, the defendant filed an amended witness list adding the government's FBI case agent and Attorney General Sessions. On April 25, 2017, the government responded with a letter to defense counsel identifying federal *Touhy* regulations governing the testimony of present and former Department of Justice employees in proceedings in which the United States is a party. *See* 28 C.F.R. § 16.23 *et seq.*[1] The government's letter requested that the defendant provide a written explanation of the information sought, the information's relevance to the trial, and whether the testimony implicated the Federal Privacy Act, 5 U.S.C. § 552a, or any privileges. On May 18, 2017, the defendant sent a letter to the government stating that the Attorney General "may be called to testify with respect to the following, *inter alia* (to the best of his knowledge, and with respect to all relevant times, including the present):

1. whether, and under what circumstances, the sheriff of a state law enforcement agency may direct (and actually does direct, or should direct) deputies to

---

[1] 28 C.F.R. § 16.23(c) requires that a party seeking the testimony of a Department of Justice employee must, "in a case or matter in which the United States is a party," supply to the Department "a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought."

    communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States;

2. what constitutes "cooperat[ion] with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States" by a state law enforcement officer;

3. whether, and under what circumstances, "direct[ing] deputies to arrest and deliver unauthorized persons to ICE or the Border Patrol" constitutes "cooperat[ion] with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States";

4. whether state deputies may detain and/or transport unauthorized person(s) to Border Patrol (and actually do detain and/or transport unauthorized persons to Border Patrol), if Border Patrol has communicated that it will accept custody of them; and whether detaining and/or transporting unauthorized person(s) under those circumstances constitutes (or has been deemed by the Attorney General to constitute) cooperation with the Attorney General;

5. whether there exists, or has existed, a "clear and definite" order of any court that contravenes the Attorney General's answers with respect to the foregoing items;

6. whether the preliminary injunction entered in [*Melendres*] on December 23, 2011 contravenes the Attorney General's knowledge or understanding with respect to the foregoing items;

7. whether Border Patrol/ICE agents may communicate to state deputies that they will accept custody of unauthorized persons;

8. whether Border Patrol/ICE agents actually do or should communicate, or have communicated, to state deputies that they will accept custody of unauthorized persons;

9. whether Border Patrol/ICE agents actually accept custody of unauthorized persons from state deputies, or have done so."

(Hereinafter "Items 1–9").

    The defendant's letter did not explain how each of these topics is relevant to the instant case nor did it address the Federal Privacy Act or privilege issues.  In response to

this letter, an attorney from the Department of Justice's Federal Programs Branch called defense counsel to discuss the issues left unaddressed by the May 18 letter, and followed up with an email requesting "greater detail about the specific information sought from Attorney General Sessions . . . as well as the relevance of that information to Defendant's case." The defense did not supply the requested clarification; rather, the defendant filed the above-referenced subpoena.[2]

## II. Exceptional Circumstances Are Required to Compel a High Ranking Official's Testimony

Title 5, United States Code, Section 301 provides:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

5 U.S.C. § 301. In addressing this departmental authority, the Supreme Court has held that federal employees may not be held in contempt for failure to comply with a subpoena when lawful agency regulations, or a decision made pursuant to such regulations, prohibits such compliance. *See United States ex. rel. Touhy v. Ragen*, 340 U.S. 462, 469 (1951). *See also In re Boeh*, 25 F.3d 761, 763 (9th Cir 1994) (holding that Department of Justice employee "may not be held in contempt for failing to comply with a court order if a valid regulation required him not to comply" and finding "valid" Department of Justice regulations prohibiting employee testimony "without prior approval by the proper Department official"). While the Ninth Circuit has held that Section 301 and *Touhy* do not alone "authorize federal agency heads to withhold evidence sought under a valid federal court subpoena," *Exxon Shipping Co. v. United States Dep't of Labor*, 34 F.3d 774, 779 (9th Cir. 1994), the Court has simultaneously acknowledged that federal agency personnel should

---

[2] The subpoena did not comply with Federal Rule of Criminal Procedure 17's requirement that it include the seal of the court and the signature of the Clerk.

"not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations," *id.*

It is well-established that a party seeking to compel the testimony of a high-ranking official bears the burden of showing the existence of "exceptional" or "extraordinary" circumstances. *See In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) ("[E]xceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." (quotation marks omitted)); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify[.]"); *In re United States (Bernanke)*, 542 Fed. Appx. 944, 948 (Fed. Cir. 2013) (stating that party seeking the testimony bears burden of proving extraordinary circumstances "even in cases . . . in which the government is a movant").

In *In re United States (Reno)*, 197 F.3d 310, 314 (8th Cir. 1999), the Eighth Circuit quashed subpoenas issued in a capital case to the Attorney General and Deputy Attorney General of the Department of Justice and stated succinctly the nature of the "exceptional circumstances" inquiry: The party seeking the official's testimony must "establish at a minimum that the [officials] possess information essential to his case which is not obtainable from another source." *Id.* (citing *In re United States (Kessler)*, 985 F.2d 510, 512–13 (11th Cir.) (per curiam), *cert. denied*, 510 U.S. 989 (1993); *In re FDIC*, 58 F.3d at 1062). Intrinsic to that inquiry is the requirement that the official has *first-hand knowledge* relating to *the underlying claim*. *See Bogan v. City of Boston*, 489 F.3d 417, 424–25 (1st Cir. 2007) (holding that Mayor of Boston's deposition could not be compelled and stating that high ranking official's deposition is only required "where the official has first-hand knowledge related to the claim being litigated"); *Kessler*, 985 F.2d at 512–13 ("Dr. Kessler did not assume office until . . . over two years after the case was sent to the Justice Department . . . , accordingly, he could not have been responsible for selectively prosecuting the defendants."); *Bernanke*, 542 Fed. Appx. at 948 (stating that "the

government official must have personal involvement or first-hand knowledge of the underlying dispute"); *Stormo v. City of Sioux Falls*, No. 4:12-cv-04057-KES, 2016 WL 697116, at *8 (D.S.D. Feb. 19, 2016) (denying motion to depose mayor where allegations occurred before mayor entered the office).

"The reason for requiring exigency before allowing the testimony of high officials is obvious." *Kessler*, 985 F.2d at 512. For one, "[h]igh ranking government officials have greater duties and time constraints than other witnesses," and such officials' "time would be monopolized by preparing and testifying" without protection from "the constant distraction of testifying in lawsuits." *Id.* Therefore, "[t]he duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere." *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (directing district court to substitute a different witness for the Vice President's Chief of Staff). Additional concerns are implicated when the high level official who is subpoenaed is also an attorney for the government in a case where the United States is a party. *Cf. United States v. Prantil*, 764 F.2d 548, 553-54 (9th Cir. 1985) (recognizing that "courts have generally disfavored allowing a participating prosecutor to testify, at a criminal trial," and concluding that only where the prosecutor was "perhaps the most important witness to the accessory charges, a participant in the transactions," should the testimony have been permitted) *United States v. Tamura*, 694 F.2d 591, 601 (9th Cir. 1982) ("The federal courts have universally condemned the practice of a government prosecutor's testifying at a trial in which he is participating; such testimony is permitted only if required by a compelling need.").

Despite the government's requests, the defendant has failed to demonstrate the existence of "exceptional circumstances" that justify compelling the Attorney General's testimony. As explained in more detail below, the testimony sought has marginal—if any—relevance to this contempt proceeding. It is also completely unnecessary for the Attorney General to testify. Any relevant information that he could provide would not be based upon his personal, first-hand knowledge, and such evidence could be obtained by

other sources, including individuals already listed by the defendant as witnesses.

**III.     The Testimony Sought is Neither Relevant Nor Essential**

This contempt proceeding is about (1) whether there was "a clear and definite order of the court," (2) whether "the contemnor kn[ew] of the order," and (3) whether "the contemnor willfully disobey[ed] the order." *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980). The defendant has failed to show why or how the nine above-listed topics—which by and large concern the *current* policies and practices of the Department of Justice and its sub-agencies—relate in any way to those three elements. *See* Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence."). The government is unaware of the relevancy of such topics, and it is not incumbent upon the government to conjure up reasons why the Attorney General's testimony could become relevant.[3] That burden falls squarely and heavily on the defendant. The Attorney General's current interpretations of Department policies, federal statutes, and Judge Snow's injunction, *see* Items 1–9, simply have no bearing on the legality of the defendant's actions or the defendant's state of mind during his violations of Judge Snow's order. And the standard here is not mere relevance. As cited above, the defendant has the burden of showing that the information sought is "essential" to his case. *Reno*, 197 F.3d at 314. The lack of relevance alone justifies quashing the subpoena.

---

[3] On May 18, 2017, the Defendant filed a "[Federal] Rule [of Criminal Procedure] 12.3 Notice of Public-Authority Defense." ECF No. 145. It is well-established in the Ninth Circuit that "the validity of the [public-authority] defense depends upon whether the government agent in fact had the authority to empower the defendant to perform the acts in question." *United States v. Burrows*, 36 F.3d 875, 881 (9th Cir. 1994) (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)). Since neither the Attorney General nor the federal immigration enforcement agencies he now oversees had actual authority to direct MCSO deputies to contemptuously violate the order of a federal judge, this defense fails. Insofar as an agency policy could be construed to contradict a federal court's order, the state litigant's cooperation with that policy would, of course, yield to the order's requirements until the order was modified or invalidated.

### IV. Lack of First-Hand, Personal Knowledge

Even apart from the non-essentiality of the requested testimony, defendant has failed to demonstrate that the Attorney General had first-hand knowledge of the subjects requested. *See Kessler*, 985 F.2d at 512–13. Attorney General Sessions was representing his Alabama constituents in the U.S. Senate between December 2011 and May 2013. He was not involved in the charged contemptuous detentions and transfers of persons by MCSO to federal custody. The defendant has not shown that the Attorney General has any personal, first-hand knowledge of matters such as "whether [in December 2011 through 2013,] Border Patrol/ICE agents . . . communicated . . . to state deputies that they will accept custody of unauthorized persons," or "whether [in December 2011 through 2013,] Border Patrol/ICE agents actually accept[ed] custody of unauthorized persons from state deputies." *See* Items 7 & 8. Notably, even in cases where the subpoenaed official actually held office during, and in some instances participated in, the activity in question, courts still ruled that the failure to meet the burden of showing extraordinary or exceptional circumstances warranted quashing the subpoenas. *See In re FDIC*, 58 F.3d at 1060; *Bernanke*, 542 Fed. Appx. at 947; *Reno*, 197 F.3d 310 at 314; *Bogan*, 489 F.3d at 424. Here, the defendant has clearly failed to meet this steep burden. He can show neither first-hand knowledge nor how the testimony sought is essential.

### V. There Are Other Available Means of Eliciting the Testimony

To the extent that the defendant wishes to present evidence that, during the relevant time period, U.S. Immigration & Customs Enforcement and U.S. Border Patrol in fact accepted from MCSO custody of persons suspected of being in the country unlawfully, there are numerous individuals on both parties' witness lists who already testified in the underlying civil litigation concerning MCSO's contumacious practice of transferring persons to ICE or Border Patrol. *See United States v. Weischedel*, 201 F.3d 1250, 1255 (9th Cir. 2000) (affirming district court's decision to deny Federal Rule of Criminal Procedure 17(b) subpoenas for four witnesses whose testimony concerning appellant's duress claim, although relevant, would be cumulative). The government has no intention

of disputing that such transfers occurred. They did. The fact that federal agents accepted custody of these individuals following their unlawful detention does nothing to rebut (1) the defendant's knowledge of Judge Snow's order or (2) that he violated it willfully. Moreover, the defendant has already included on his witness list five ICE and Border Patrol employees—some of whom are supervisors—who, unlike the Attorney General, might actually have personal knowledge from the relevant time period about that practice.[4]

**VI.     The Attorney General Cannot Be Subpoenaed to Testify Absent Truly Extraordinary Circumstances**

As the Department of Justice's and the United States' top lawyer, the Attorney General is charged with supervising the world's largest law office in its representation of the United States in criminal and civil matters throughout the country. The circumstances of the defendant's request illuminate the well-recognized practical problems inherent in subpoenaing agency heads. *See Kessler*, 985 F.2d at 512; *Reno*, 197 F.3d at 313. No meaningful, limiting principle distinguishes this case from other Department-led prosecutions the facts, law, or policy of which the Attorney General may possess general knowledge.

**VII.    Conclusion**

The defendant has failed to show how the testimony sought from the Attorney General—who is without first-hand knowledge of the acts in question—is essential, or even relevant, to the question of whether the defendant willfully violated a court order. There is no valid reason—let alone an exceptional or extraordinary circumstance—why the Attorney General should be compelled to testify in this case. The subpoena should be quashed.

---

[4] The government reserves the right to object to the admissibility of any such testimony on any ground, including relevance.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                  Respectfully Submitted,

                                  ANNALOU TIROL
                                  Acting Chief, Public Integrity Section

By: */s/ John D. Keller*
    John D. Keller
    Deputy Chief
    Victor R. Salgado
    Simon J. Cataldo
    Trial Attorneys
    United States Department of Justice
    Public Integrity Section
    1400 New York Ave. NW
    Washington, DC  20005
    (202) 514-1412
    John.Keller2@usdoj.gov
    Victor.Salgado@usdoj.gov
    Simon.Cataldo@usdoj.go

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing via the CM/ECF system on today's date which will provide notice to counsel of record for the defendant.

*/s/ John D. Keller*
John D. Keller
Deputy Chief