Michael L. Piccarreta
State Bar No. 003962
mlp@pd-law.com
Jefferson Keenan
State Bar No. 013896
jkeenan@pd-law.com
PICCARRETA DAVIS KEENAN FIDEL PC
145 South Sixth Avenue
Tucson, AZ  85701-2007
(520) 622-6900
(520) 622-0521 (fax)

Ronald Fein *(pro hac vice* forthcoming*)* (MA Bar # 657930)
rfein@freespeechforpeople.org
FREE SPEECH FOR PEOPLE
1340 Centre St. #209
Newton, MA 02459
(617) 244-0234

Louise H. Renne, admission *pro hac vice* (CA Bar #36508)
lrenne@publiclawgroup.com
Dennis Aftergut, admission *pro hac vice* (CA Bar # 75656)
da1.cppd@gmail.com
Co-Founders of Amicus Coalition to Preserve,
Protect and Defend
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 678-3800
Facsimile:  (415) 678-3838

*Attorneys for Amici Martin Redish, Free Speech for People and Coalition to Preserve, Protect and Defend*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Joseph M. Arpaio,<br><br>    Defendants. | Case No. CR-16-01012-001-PHX-SRB<br><br>**[PROPOSED] BRIEF OF AMICI CURIAE MARTIN REDISH, FREE SPEECH FOR PEOPLE AND COALITION TO PRESERVE, PROTECT AND DEFEND IN OPPOSITION TO MOTION OF DEFENDANT JOSEPH ARPAIO FOR VACATUR AND DISMISSAL WITH PREJUDICE** |

-1-

## I. INTRODUCTION

Amici Martin Redish, Free Speech for People, and Coalition to Preserve, Protect and Defend, respectfully oppose the Motion of Defendant Joseph Arpaio for Vacatur and Dismissal With Prejudice. [Doc. 220]. In the narrow and unprecedented circumstances of this case, the exercise of the pardon power has exceeded the limits that the Due Process Clause of the Fifth Amendment imposes on the President's authority. Accordingly, the Court should hold the pardon unconstitutional, deny Defendant's motion, and proceed to sentencing.[1]

## II. ARGUMENT

**The Exercise of the Pardon Power in the Narrow Circumstances of this Case Undermines Judicial Protection of Constitutional Rights and Exceeds Due Process Constraints on the President's Authority to Pardon**

The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees individuals the right to a hearing before an independent judicial body before any branch of the federal government may deprive those individuals of life, liberty or property. *See e.g., Hamdi v. Rumsfeld*, 542 U.S. 507, 530-32 (2004); *Bartlett v. Bowen*, 816 F.2d 695, 703-07 (D.C. Cir. 1987); *Battaglia v. Gen. Motors Corp.*, 169 F.2d 254, 257 (2d Cir. 1948). As these cases show, under due process principles, the judiciary serves as the counter-majoritarian guardian of constitutionally protected individual rights against encroachment by the political branches of government.[2]

---

[1] In considering the Defendant's motion, the Court has full authority to resolve the issues Amici raise. Federal courts' inherent powers "to prevent abuse, oppression, and injustice" are "as extensive and efficient as may be required by the necessity for their exercise, and may be invoked by strangers to the litigation as incident to the jurisdiction already vested." *Gumbel v. Pitkin*, 124 U.S., 146 (1888); see *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-44 (1991). Courts may invoke this inherent power *sua sponte, Chambers, supra,* 501 U.S. at 49, or at the request of amici, particularly where the parties' alignment precludes their raising an issue of importance to the administration of justice. *See U.S. v. Mercedes-Benz of North America, Inc.,* 547 F.Supp. 399, 400 (N.D. Cal. 1982); *Green v. Nevers*, No. 92-CV-76881-DT) 1993 WL 1620511, at *12 (E.D. Mich., Apr. 13, 1993). That is the situation here.

[2] Constitutionally protected liberty interests under the Fourth Amendment were among the

-2-

[PROPOSED] BRIEF OF AMICI IN OPPOSITION TO MOTION OF ARPAIO FOR VACATUR AND DISMISSAL WITH PREJUDICE - Case No. CR-16-01012-001-PHX-SRB

Critically, the power of contempt for violating injunctions requiring government officers to cease their unconstitutional actions – or risk fine, imprisonment or both – is a vital means by which the judiciary enforces constitutional rights.  As stated in *Institute of Cetacean Research v. Sea Shepherd Conservation Society,* 774 F.3d 935, 951–52 (9th Cir. 2014):

> [T]he purpose of contempt proceedings is to uphold the power of the court, *Bessette v. W.B. Conkey Co.,* 194 U.S. 324, 327 (1904), and to ensure that the court's vindication of litigants' rights is not merely symbolic.  Our orders would have little practical force, and would be rendered essentially meaningless, if we were unable to prevent parties bound by them from flagrantly and materially assisting others to do what they themselves are forbidden to do.

If the President may employ his pardon power to relieve government officers of accountability and risk of penalty for defying injunctions imposed to enforce constitutional rights, that action will permanently impair the courts' authority and ability to protect those inalienable rights. The result would be an executive branch freed from the judicial scrutiny required to assure compliance with the dictates of the Bill of Rights and other constitutional safeguards. Such a result is constitutionally unacceptable.

**1.   The Due Process Clause Qualifies and Limits Otherwise Plenary Powers in the Body of the Constitution**

To be sure, the Constitution expresses the President's pardon power in broad terms. U.S. Const., art. II, § 2.[3] On its face, the provision appears virtually unlimited in the discretion it vests in the President to pardon others for crimes. But the Constitution's structure makes every provision in the body of the document, including provisions

---

rights whose violation by Defendant this Court enjoined in the matter giving rise to his criminal contempt. *Melendres v. Arpaio,* No. CV-07-2513-PHX-GMS at 36, 40 (D. Ariz. December 23, 2011); *United States of America v. Joseph M. Arpaio*, No. CR-16-01012-001-PHX-SRB, 11-14 (D. Ariz. July 31, 2017); *see Hamdi, supra,* 542 U.S. at 529; *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001).

[3] "The President shall . . . have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment."

conferring broad power, subject to limitation by amendments that impose restrictions on government. As the Supreme Court stated in *Williams v. Rhodes*, 393 U.S. 23, 29 (1968):

> [T]he Constitution is filled with provisions that grant Congress or the States specific power to legislate in certain areas; these granted powers are always subject to the limitation that they may not be exercised in a way that violates other specific provisions of the Constitution. For example, Congress is granted broad power to 'lay and collect Taxes,' but the taxing power, broad as it is, may not be invoked in such a way as to violate the privilege against self-incrimination. Nor can it be thought that the power to select electors could be exercised in such a way as to violate express constitutional commands that specifically bar States from passing certain kinds of laws.

Similarly, no court could properly hold that Congress may use its plenary power over interstate commerce to restrict First Amendment rights of free speech or press.

Indeed, courts have long applied the Fifth Amendment's Due Process Clause to restrict plenary powers that the body of the Constitution explicitly confers on the political branches. *See Battaglia v. General Motors Corp.*, *supra,* 169 F.2d at 257. The power at issue in *Battaglia* was Congress' broad authority to grant or deny federal court jurisdiction. U.S. Const., art. III, §1.[4] The court held that that Congress' exercise of its broad constitutional authority must yield when in conflict with the Due Process Clause:

> [W]hile Congress has the undoubted power to give, withhold, and restrict the jurisdiction of courts other than the Supreme Court, it must not so exercise that power as to deprive any person of life, liberty, or property without due process of law or to take private property without just compensation.

*Id.* at 257. *Accord, Bartlett v. Bowen, supra,* 816 F.2d at 706; *cf. Lockerty v. Phillips,* 319 U.S. 182 (1943).

These same Constitutional restrictions apply to the Executive Branch when, as here, a protected liberty interest is at risk. In *Hamdi v. Rumsfeld,* 542 U.S. at 530-32, the

---

[4] "The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish."

Court rejected the government's claim that its plenary powers in times of military conflict negated a citizen's right to due process in challenging his classification as an enemy-combatant. *See also Abourezk v. Reagan,* 785 F.2d 1043, 1061 (D.C. Cir. 1986), *aff'd*, 484 U.S. 1 (1987) ("The Executive has broad discretion over the admission and exclusion of aliens, but . . . [i]t . . . may not transgress constitutional limitations."). The Due Process Clause limits plenary powers conferred on the President in the body of the Constitution, just as the clause limits the powers of the Congress.

### 2. Courts Properly Constrain Application of the Pardon Power When its Exercise Conflicts with Due Process

Applying the same principles, the Supreme Court has been careful not to allow use of the Presidential pardon power in a way that treads on constitutional rights. In the only other case that Amici have found where a Presidential pardon infringed upon the Bill of Rights, the Supreme Court circumscribed application of the Presidential pardon power. *See Burdick v. United States*, 236 U.S. 79, 93-94 (1915).

In *Burdick*, a newspaper editor refused a Presidential pardon designed to compel him to disclose confidential sources to a grand jury; if effective, the pardon would have eliminated his Fifth Amendment privilege against self-incrimination, previously invoked to resist disclosure. The Court protected the privilege, holding that the editor's refusing the pardon rendered it void.  Thus, the Court gave effect to an individual's Constitutional right and limited the pardon power's application where the two conflicted.

*Biddle v. Perovich*, 274 U.S. 480 (1927), proves the point in reverse. There, as in *Burdick,* the intended recipient of Presidential clemency rejected it. But unlike *Burdick,* the Court held that Executive reduction of Biddle's sentence, based on a criminal conviction but presenting no infringement on the Bill of Rights, was *effective*; Justice Holmes refused to extend *Burdick* to a case where the President's action did *not* transgress a constitutional right. *Id.* at 287-88. Critically, in neither *Burdick* nor *Biddle* did the Court decline to exercise its role as final arbiter of the pardon power's scope on the ground that the power is absolute.

[PROPOSED] BRIEF OF AMICI IN OPPOSITION TO MOTION OF ARPAIO FOR VACATUR AND DISMISSAL WITH PREJUDICE - Case No. CR-16-01012-001-PHX-SRB

Together, these cases teach that courts limit the President's pardon power where, and only where, competing constitutional rights are at stake. As Justice O'Connor, joined by three other justices, wrote in *Ohio Adult Parole Authority v. Woodard*:

> I do not, however, agree . . . that, because clemency is committed to the discretion of the executive, the Due Process Clause provides no constitutional safeguards . . . . Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process.

523 U.S. 272, 288-89 (1998) (O'Connor, J., concurring).

The invocation of the pardon power in this case differs in critical ways from that power's traditional use. When the President pardons a private individual who has been convicted of a crime, there arises no risk that the President will circumvent judicial imposition, through injunction, of constitutional restraints on federal and state officials.

Here, by contrast, that is not only a danger, but it is precisely the result that the pardon would achieve. Defendant violated myriad individuals' constitutional rights, then ignored an injunction prohibiting him from continuing to do so. If the President is permitted to pardon Defendant's contempt conviction, the signal will be sent to all law enforcement officers that if their unconstitutional actions further presidential policies or preferences, they stand to benefit from the exercise of his pardon power, much as Defendant seeks to benefit here.

Just as Judge Snow issued his preliminary injunction to protect individuals in the future from the unconstitutional practices at issue in *Melendres v. Arpaio,* No. CV-07-2513-PHX-GMS, 36, 40 (D. Ariz. Dec. 23, 2011), this Court should protect the countless individuals whose constitutional rights will be placed at risk if this pardon is allowed to stand. The Court should recognize the serious constitutional pathology that would inescapably flow, and the peril to our constitutional system of checks and balances. A dangerous precedent would be set for any future presidential pardon that immunizes law

-6-

[PROPOSED] BRIEF OF AMICI IN OPPOSITION TO MOTION OF ARPAIO FOR VACATUR AND DISMISSAL WITH PREJUDICE - Case No. CR-16-01012-001-PHX-SRB

enforcement officers – or other government actors – from the penalties of contempt for violating judicial injunctions safeguarding constitutional rights.

*Ex parte Grossman,* 267 U.S. 87, 115, 120 (1925), involved no such danger. There, the Supreme Court recognized the President's power to pardon an individual for a contempt conviction arising from his flouting an injunction to stop selling liquor in the Prohibition era. The decision, however, is readily distinguishable.

The present case involves a pardon issued (1) for criminal contempt (2) for violating an injunction (3) issued to a government official (4) to cease a systemic practice of violating (5) individuals' constitutional rights. By contrast, *Grossman* involved only the first two elements. Absent the last three elements, the presidential pardon did not implicate the Due Process Clause. With them, the Court confronts a situation that threatens to empower the President, through use of his pardon power, to effectively eliminate the judiciary's ability to protect and enforce constitutional rights.

In our history's preeminent constitutional decision, *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 176-77 (1803), Chief Justice John Marshall wrote for a unanimous Court:

> To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction, between a government with limited and unlimited powers, is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed, are of equal obligation.

Chief Justice Marshall may not have foreseen a President's misuse of the pardon power to overcome constitutional limits on official actions antithetical to the Bill of Rights. Still, Marshall's warning is directly applicable to this situation. The Constitution loses its meaning as a restraint on government, and as a guarantor of individual rights, if the pardon power may be employed in the manner exercised in this case.

### III.   CONCLUSION

This case centers on a law enforcement officer's willful violation of court orders protecting constitutional rights. The power to pardon that contempt is the power to destroy

the protection of those rights. Amici respectfully urge this Court to find that this unprecedented exercise of the pardon power exceeds the limits of Presidential authority set by the Due Process Clause of the Fifth Amendment to the United States Constitution. The Court should hold that exercise invalid, deny Defendant's Motion and proceed to sentence him.

Dated:  September 11, 2017

By: */s/ Michael L. Piccarreta*
PICCARRETA DAVIS KEENAN FIDEL PC
145 South Sixth Avenue
Tucson, AZ  85701-2007
(520) 622-6900
(520) 622-0521 (fax)
Michael L. Piccarreta
State Bar No. 003962
Email:  mlp@pd-law.com
Jefferson Keenan
State Bar No. 013896
Email: jkeenan@pd-law.com

Ronald Fein (*pro hac vice* forthcoming)
(MA Bar # 657930)
rfein@freespeechforpeople.org
FREE SPEECH FOR PEOPLE
1340 Centre St. #209
Newton, MA 02459
Telephone: 617-244-0234

Louise H. Renne, admission *pro hac vice*
(CA Bar #36508)
lrenne@publiclawgroup.com
Dennis Aftergut, admission *pro hac vice*
(CA Bar # 75656)
da1.cppd@gmail.com
Co-Founders of Amicus Coalition to Preserve, Protect and Defend
350 Sansome Street, Suite 00
San Francisco, CA 94104

*Attorneys for Amici Martin Redish, Free Speech for People, and Coalition to Preserve, Protect and Defend*

[PROPOSED] BRIEF OF AMICI IN OPPOSITION TO MOTION OF ARPAIO FOR VACATUR AND DISMISSAL WITH PREJUDICE - Case No. CR-16-01012-001-PHX-SRB

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Dennis Ira Wilenchik**
**John Douglas Wilenchik**
Wilenchik & Bartness PC
2810 N 3rd St., Ste. 103
Phoenix, AZ 85004
602-606-2810
Fax: 602-606-2811
Email: diw@wb-law.com
Email: jackw@wb-law.com
*Represents Defendant Joseph Arpaio*

**Joseph John Popolizio**
**Justin Michael Ackerman**
**Linda Kim Tivorsak**
Jones Skelton & Hochuli PLC
40 N Central Ave., Ste. 2700
Phoenix, AZ 85004
602-263-1700
Fax: 602200-7876
Email: jpopolizio@jshfirm.com
Email: jackerman@jshfirm.com
Email: ltivorsak@jshfirm.com
*Represents Defendant Joseph Arpaio*

**Jeffrey Sinclair Surdakowski**
**Mark David Goldman**
**Vincent Rene Mayr**
Goldman & Zwillinger PLLC
17851 N 85th St., Ste. 175
Scottsdale, AZ 85255
480-626-8483
Fax: 480-502-7500
Email: jsurdakowski@gzlawoffice.com
Email: mgoldman@gzlawoffice.com
Email: vmayr@gzlawoffice.com
*Represents Defendant Joseph Arpaio*

**John Dixon Keller**
US Dept of Justice Public Integrity Section
10th & Constitution Ave.
Washington, DC 20530
202-514-1412
Email: John.Keller2@usdoj.gov
*Represents Plaintiff USA*

**Victor R Salgado**
US Dept of Justice - Public Integrity Section,
1400 New York Ave. NW, 12th Fl.
Washington, DC 20005
202-353-4580
Email: victor.salgado@usdoj.gov
*Represents Plaintiff USA*

**Simon Joseph Cataldo**
US Dept of Justice
1400 New York Ave., 12th Fl.
Washington, DC 20005
202-616-2464
Email: simon.cataldo@usdoj.gov
*Represents Plaintiff USA*

[PROPOSED] BRIEF OF AMICI IN OPPOSITION TO MOTION OF ARPAIO FOR VACATUR AND DISMISSAL WITH PREJUDICE - Case No. CR-16-01012-001-PHX-SRB

| | |
|---|---|
| **Karen Ann Clark**<br>Adams & Clark PC<br>520 E Portland St., Ste. 200<br>Phoenix, AZ 85004<br>602-258-3542<br>Fax: 602-258-1377<br>Email: assistant@adamsclark.com<br>*Represents Movant Timothy Casey* | **Locke E. Bowman**<br>**David M. Shapiro**<br>RODERICK AND SOLANGE<br>MACARTHUR JUSTICE CENTER<br>Northwestern Pritzker School of Law<br>375 E. Chicago Avenue<br>Chicago, IL 60611<br>312.503.0711<br>david.shapiro@law.northwestern.edu<br>locke.bowman@law.northwestern.edu<br>*Represents Amicus Curiae Roderick and Solange MacArthur Justice Center* |

*/s/ Michael L. Piccarreta*

[PROPOSED] BRIEF OF AMICI IN OPPOSITION TO MOTION OF ARPAIO FOR VACATUR AND DISMISSAL WITH PREJUDICE - Case No. CR-16-01012-001-PHX-SRB