Jean-Jacques Cabou (Bar No. 022835)
Shane R. Swindle (Bar No. 011738)
Katherine E. May (Bar No. 032335)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Email: JCabou@perkinscoie.com
SSwindle@perkinscoie.com
KMay@perkinscoie.com
DocketPHX@perkinscoie.com

Ian Bassin*
Justin Florence*
**THE PROTECT DEMOCRACY PROJECT, INC.**
2020 Pennsylvania Avenue NW, #163
Washington, DC 20006
Telephone: 202.831.2837
Email: Ian.Bassin@protectdemocracy.org
Justin.Florence@protectdemoncracy.org

Noah Messing*
**MESSING & SPECTOR LLP**
333 E. 43rd Street, Suite 1
New York, New York 10017
Telephone: 212.960.3720
Email: nm@messingspector.com

Phil Spector*
**MESSING & SPECTOR LLP**
1200 Steuart Street, # 2112
Baltimore, Maryland 21230
Telephone: 202.277.8173
Email: ps@messingspector.com

*Attorneys for The Protect Democracy Project, Inc.*

(Additional counsel listed on following page)

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

Joseph M. Arpaio,

Defendant.

No. CR-16-01012-001-PHX-SRB

**[PROPOSED] SUPPLEMENTAL BRIEF OF *AMICI CURIAE* IN SUPPORT OF APPOINTMENT OF A PRIVATE ATTORNEY TO PROSECUTE DEFENDANT'S CRIMINAL CONTEMPT**

Locke E. Bowman* (IL Bar No. 6184129)
David M. Shapiro* (IL Bar No. 6287364)
**RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER**
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
Telephone: 312.503.0711
Email:
locke.bowman@law.northwestern.edu
david.shapiro@law.northwestern.edu

*Attorneys for Roderick and Solange MacArthur Justice Center*

Michael L. Piccarreta (AZ Bar No. 003962)
Jefferson Keenan (AZ Bar No. 013896)
**PICCARRETA DAVIS KEENAN FIDEL PC**
145 South Sixth Avenue
Tucson, AZ 85701-2007
Telephone: 520.622.6900
Fax: 520.622.0521
mlp@pd-law.com
jkeenan@pd-law.com

Ronald Fein* (MA Bar No. 657930)
**FREE SPEECH FOR PEOPLE**
1340 Centre St. #209
Newton, MA 02459
Telephone: 617.244.0234
rfein@freespeechforpeople.org

Dennis Aftergut* (CA Bar No. 75656)
**COALITION TO PRESERVE, PROTECT, AND DEFEND**
350 Sansome Street, Suite 00
San Francisco, CA 94104
dal.cppd@gmail.com

*Attorneys for Amicus Curiae Martin Redish, Free Speech for People, and Coalition to Preserve, Protect and Defend*

## I.     INTRODUCTION

This Court convicted Defendant Arpaio of criminal contempt for "willfully violat[ing]" Judge Snow's preliminary injunction order in *Melendres v. Arpaio* by directing his subordinates "to continue to detain persons for whom no criminal charges could be filed" (Doc. 210 at 14)–practices which resulted in the repeated violation of the constitutional rights of hundreds, if not thousands, of people. *See* Findings of Facts and Order Setting a Hearing for May 31, 2016 at ¶¶ 157-63; *Melendres v. Arpaio*, 2:07-cv-02513-GMS (D. Ariz. May 13, 2016), ECF No. 1677 (hundreds of persons were illegally stopped, arrested, or detained because of Sheriff Arpaio's violation of preliminary injunction order over 17 months). Notwithstanding the threat to the rule of law and the seriousness of Arpaio's conviction, the President declared that Arpaio "was 'convicted for doing his job'"[1] and issued a Presidential pardon (the "Pardon"). The Pardon bears the seal of the United States Department of Justice ("DOJ"), which also remains in charge of prosecuting Arpaio in this matter.

On August 29, 2017, *amici* Protect Democracy and Free Speech For People sent a letter to the Department of Justice advising of the substantial constitutional flaws in the Pardon and accordingly asking the Department to oppose Defendant Arpaio's motion to vacate and dismiss his conviction. [Exhibit A] Multiple *amici*, including *amici* hereto, submitted four separate briefs on September 11, 2017, setting forth substantial and well-grounded arguments that the Pardon exceeds the President's constitutional authority and so should not be given effect by this Court. Those filings make clear, at a minimum, that there are serious questions about the constitutional validity of the Pardon.

The Government's response to Defendant Arpaio's motion, filed earlier today, takes the position that the pardon simply "ends this prosecution." [Doc. 225 at 3] Yet the Government's brief cites a recent opinion from the U.S. Court of Appeals for the Fourth Circuit, which indicates that where, as here, there is a constitutional challenge to the

---

[1] Fox News, *Trump Hints That Arpaio Pardon Will Happen* (Aug. 22, 2017), http://www.foxnews.com/politics/2017/08/22/trump-hints-that-arpaio-pardon-will-happen.html.

pardon, a court retains power to address the issue before it. [*Id.* (citing *United States v. Surratt*, 855 F.3d 218, 219 (4th Cir. 2017) (Wilkinson, J., concurring).] In the quoted sentence from *Surratt*, Judge Wilkinson wrote: "Absent some constitutional infirmity in the commutation order, which is not present here, we may not readjust or rescind what the President, in the exercise of his pardon power, has done." In this case, however, as the *amicus* briefs filed in this matter make clear, there is a serious question as to the "constitutional infirmity" of the Arpaio Pardon. And so this Court must satisfy itself of the constitutionality of that pardon before it can grant the relief that Arpaio seeks. Because the DOJ, as a result of the President's unilateral action, has now abandoned its prosecution of Defendant, this Court "must appoint another attorney to prosecute the contempt." Fed. R. Crim. P. 42(a)(2).

## II. ARGUMENT

### A. A Private Attorney Is Needed To Complete The Prosecution.

That the DOJ, a department of the Executive Branch, has declined to further prosecute the Defendant in the wake of the President's Pardon is neither surprising nor a reflection on the career DOJ lawyers who sought and secured a conviction in this case. A private attorney is necessary because this case is not yet over and because those able lawyers have been barred by Presidential fiat from defending their conviction, and through it the independence and authority of this Court. As the Supreme Court recognized in *Young v. U.S. ex rel. Vuitton et Fils S.A.*, "[i]f the Judiciary were completely dependent on [prosecutors from] the Executive Branch to redress direct affronts to its authority, it would be powerless to protect itself if that Branch declined prosecution." 481 U.S. 787, 801 (1987). Therefore, as the Court recognized in *Young*, and it is equally the case here, when the DOJ declines or otherwise refuses to prosecute a criminal contempt, not only does the court have the power to appoint a private attorney, such an appointment is a "necessity." *Id.*

**B. This Court Has Authority To Appoint A Private Attorney.**

"[I]t is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, authority which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt." *Young*, 481 U.S. at 793. That authority was codified in 2002 in Federal Rule of Criminal Procedure 42(a)(2),[2] which provides that, upon a request for prosecution of a criminal contempt to the DOJ from the judiciary, "[i]f the government declines the request, the court *must* appoint another attorney to prosecute the contempt" (emphasis added).

Contempt cases in which the government declines prosecution are of course rare. "In the great majority of cases the dedication of the executive branch to the preservation of respect for judicial authority makes the acceptance by the United States Attorney of the court's request to prosecute a mere formality . . . ." U.S. Attorneys' Manual, Criminal Resource Manual 768 (*available at* https://www.justice.gov/usam/criminal-resource-manual-768-indirect-criminal-contempt-role-prosecutor). In rare cases, however, as the U.S. Attorney's Manual recognizes, "there may be sound reasons . . . for the United States Attorney to decline participation in the proceedings and for the prosecution to be conducted on behalf of the court by private counsel appointed by the court for this purpose." *Id.*

Consistent with government practice and Rule 42(a)(2), courts have repeatedly exercised their authority to appoint private attorneys in those instances where the government cannot or will not (for whatever reason) prosecute referred contempt charges. For example, in *In re Special Proceedings*, the First Circuit upheld the district court's appointment of a private attorney pursuant to Rule 42(a)(2) where there were "multiple reasons for concern about having the government handle the matter," including that the government prosecutor was a potential source of the leak at issue in the contempt proceeding. 373 F.3d 37, 43 (1st Cir. 2004). Similarly, in *E-Smart Technologies, Inc. v.*

[2] *See* Fed. R. Crim. P. 42 advisory committee's note to 2002 amendments (noting that Rule 42 was amended in 2002 "to reflect the holding in *Young v. United States ex rel. Vuitton*, 481 U.S. 787 (1987)").

*Drizin*, the court appointed a private attorney to pursue contempt charges after the government declined to prosecute due to "conflict issues."[3] *See also United States v. Vlahos*, 33 F.3d 758, 762 (7th Cir. 1994) (approving appointment of private attorney in criminal contempt action where the government has "constructively refused" to prosecute or is "ill prepared or lacked sufficient ability to prosecute the case before the district court").

Importantly here, nothing limits the ability of the courts to determine, during the pendency of a contempt prosecution begun by the DOJ, that DOJ is incapable of continuing to pursue the case and so to appoint a private attorney to take over. In *In re Grogan*, 972 F. Supp. 992 (E.D. Va. 1997), the government moved to abandon the prosecution following an adverse ruling on a motion. Denying the government's motion to dismiss and instead appointing a private attorney to take over the case, the district court cited *Young*, reasoning that under such circumstances "it is necessary, and indeed appropriate, for the Court to appoint a special prosecutor." *Id.* at 1008 n.22.

Far from being reticent to appoint private attorneys when the Justice Department, for whatever reason, declines to prosecute or continue a criminal contempt case, *amici* are aware of no case in which a court has done anything *other* than appoint a private attorney to represent the United States and "to pursue the public interest in vindication of the court's authority." *Young*, 481 U.S. at 804. In such circumstances, courts invariably follow the directive of Rule 42(a)(2) that a private attorney "must" be appointed where the government declines to prosecute criminal contempt. This pattern holds even before Rule 42(a)(2) was codified and dates back at least to *Ex parte Grossman*, 267 U.S. 87, 108 (1925), where "[s]pecial counsel, employed by the Department of Justice, appear[ed] . . . to uphold the legality of the detention" while "[t]he Attorney General of the United States,

---

[3] Although the court determined that the matter would proceed as civil contempt, it nonetheless held that application of Rule 42(a)(2) was appropriate. Order Re Appointment of Counsel to Prosecute Contempt at 1, *E-Smart Techs., Inc.v. Drizin*, No. 3:06-cv-05528-MHP (N.D. Cal. Mar. 3, 2011), ECF No. 346.

as amicus curiae, maintain[ed] the validity and effectiveness of the President's [pardon]."

### C. The Court Should Appoint A Private Attorney To Complete The Prosecution Of This Case.

Judge Snow's August 19, 2016 referral order explicitly requested that the government prosecute Arpaio for criminal contempt. [Doc. 1 at 31] But Judge Snow also directed that if the government declined the appointment, it "should so inform the Judge to whom the criminal contempt matters arising from this case are referred, so that an additional assignment to a prosecuting attorney may be made if that Judge deems it appropriate." [*Id.*] Faced with the Pardon, the government has made clear in its Response (Doc. 225 at 1) that it will not prosecute this matter to its conclusion—that is, through sentencing and exhaustion of all direct appeals.

Arpaio's prosecution is not complete. As this Court's Order scheduling oral argument on Defendant's Motion to Vacate (Doc. 222) indicates, matters remain pending in this Court, and an appeal could presumably follow. Yet, the Government's Response makes clear that both the Executive Branch and the Defendant now want the same thing: for everyone, including this Court, to pretend that Defendant was never convicted. Even if this Court ultimately agrees with the Government and Defendant Arpaio, it should allow the full presentation of arguments about the constitutionality of the Pardon before this Court and, if necessary, on appeal. The integrity of our judicial system—an adversarial system—requires that counsel be appointed to contest the purportedly dispositive premise on which the Government and Defendant now bizarrely agree. "[O]ur adversarial system of justice . . . is premised on the well-tested principle that truth—as well as fairness—is 'best discovered by powerful statements on both sides of the question.'" *Penson v. Ohio*, 488 U.S. 75, 84 (1988) (quoting other sources). The legal questions at issue here—including the constitutionality of the Pardon and its effect on this case—deserve a full and fully adversarial hearing. Respect for the rule of law and for the integrity of the judicial branch requires no less.

## III. CONCLUSION

Criminal contempt is no ordinary crime, and Defendant Arpaio is no ordinary criminal. Arpaio was convicted for his "flagrant disregard for Judge Snow's order" prohibiting him from detaining persons not suspected of any crime, in violation of their constitutional rights. [Doc. 210 at 13] Charged with enforcing the law, Arpaio instead disregarded it, abused it, and sought to bend it to his will. The question of whether that extraordinary conviction can be washed away by Presidential pardon goes to the heart of our constitutional system, and should be decided through adversarial proceedings in which private counsel continue to defend the conviction the Government has long sought in vindication of this Court's authority.

For the reasons set forth above and in the *amicus* briefs filed with the Court in this matter, *amici* urge the Court to exercise its authority to appoint a private attorney to see this case to completion.

Dated: September 11, 2017

**PERKINS COIE LLP**

By: */s/ Jean-Jacques Cabou*

Jean-Jacques Cabou
Shane R. Swindle
Katherine E. May
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788

Ian Bassin*
Justin Florence*
2020 Pennsylvania Avenue NW #163
Washington, DC 20006

Noah Messing*
MESSING & SPECTOR LLP
333 E. 43rd Street, Suite 1
New York, New York 10017

Phil Spector*
MESSING & SPECTOR LLP
1200 Steuart Street # 2112
Baltimore, Maryland 21230

*Attorneys for The Protect Democracy Project, Inc.*

**RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER**

By: */s/ Locke E. Bowman (with permission)*

Locke E. Bowman* (IL Bar No. 6184129)
David M. Shapiro* (IL Bar No. 6287364)
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
Telephone: 312.503.0711
Email: locke.bowman@law.northwestern.edu
david.shapiro@law.northwestern.edu

*Attorneys for Roderick and Solange MacArthur Justice Center*

**PICCARRETA DAVIS KEENAN FIDEL PC**

By: */s/ Michael L. Piccarreta (with permission)*
Michael L. Piccarreta (AZ Bar No. 003962)
Jefferson Keenan (AZ Bar No. 013896)
145 South Sixth Avenue
Tucson, AZ 85701-2007
Telephone: 520.622.6900
Fax: 520.622.0521
mlp@pd-law.com
jkeenan@pd-law.com

**FREE SPEECH FOR PEOPLE**

By: */s/ Ronald Fein (with permission)*
Ronald Fein* (MA Bar No. 657930)
1340 Centre St. #209
Newton, MA 02459
Telephone: 617.244.0234
rfein@freespeechforpeople.org

**COALITION TO PRESERVE, PROTECT, AND DEFEND**

By: */s/ Dennis Aftergut (with permission)*
Dennis Aftergut* (CA Bar No. 75656)
350 Sansome Street, Suite 00
San Francisco, CA 94104
dal.cppd@gmail.com

*Attorneys for Martin Redish, Free Speech for People, and Coalition to Preserve, Protect and Defend*

*Application for Admission *Pro Hac Vice* Forthcoming

**CERTIFICATE OF SERVICE**

☒   I hereby certify that on September 11, 2017, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

/s/ Marie van Olffen

# Exhibit A

 

Raymond N. Hulser, Chief
John Dixon Keller
Public Integrity Section, Criminal Division
U.S. Department of Justice
1400 New York Ave, NW, 12th floor
Washington, D.C. 20005

August 29, 2017

      RE:    Presidential pardon issued to Joseph M. Arpaio

Dear Mr. Hulser and Mr. Keller,

We write to urge you to oppose defendant Joseph M. Arpaio's motion, filed Monday, to vacate and dismiss his conviction in *United States v. Joseph M. Arpaio*, No. 2:16-CR-01012-SRB-1. The basis for his motion is a presidential pardon issued on Friday, August 25. However, this pardon raises serious constitutional questions.

Your office secured a conviction of Arpaio for criminal contempt of court after he was found to have deliberately violated an injunction in the matter of *Melendres v. Arpaio*, 2:07-CV-02513-GMS, stemming from his then role as Sheriff of Maricopa County. *Melendres* involved, inter alia, Arpaio's longstanding policy of illegally detaining persons of Latino ancestry suspected to be unauthorized immigrants, even if the Sheriff's Office could not charge them with any state crimes. The court enjoined the Sheriff's Office and its officers "from detaining persons for further investigation without reasonable suspicion that a crime has been or is being committed." The judge in the original case, and now Judge Bolton, both found that Arpaio deliberately violated that injunction. As Judge Bolton stated in her findings in the case for criminal contempt of court, Arpaio "willfully violated the order by failing to do anything to ensure his subordinates' compliance and by directing them to continue to detain persons for whom no criminal charges could be filed." Two weeks later, President Trump issued a pardon.

While the Constitution's pardon power is broad, it is not unlimited. Like all provisions of the original Constitution of 1787, it is limited by later-enacted amendments, starting with the Bill of Rights. For example, were a president to announce that he planned to pardon all white defendants convicted of a certain crime but not all black defendants, that would conflict with the Fourteenth Amendment's Equal Protection Clause.

Similarly, issuance of a pardon that violates the Fifth Amendment's Due Process Clause is also suspect. Under the Due Process Clause, no one in the United States (citizen or otherwise) may "be deprived of life, liberty, or property, without due process of law." But for due process and judicial review to function, courts must be able to restrain government officials. Due process requires that, when a government official is found by a court to be violating individuals' constitutional rights, the court can issue effective relief (such as an injunction) ordering the official to cease this unconstitutional conduct. And for an injunction to be effective, there must be a penalty for violation of the injunction—principally, contempt of court.

Put another way, one of the most important safeguards for the Due Process Clause is the courts' power to hold wayward law enforcement officials in criminal contempt.

The president's unprecedented pardon of Arpaio undermines the rule of law by immunizing unscrupulous law enforcement officials from judicial review. The foundation of the role of courts as protectors of individual rights will be nullified if they cannot execute and protect their own orders. The pardon itself conveys the unmistakable message that similarly-situated local, state, and federal law enforcement officials need not fear the judiciary, because if they run afoul of a court order, the president will pardon them.

Furthermore, if there were any doubt as to the meaning of the pardon, the president himself erased it through his own communications. Two weeks after the verdict, Trump told a reporter that he was considering a pardon for Arpaio, and that Arpaio "doesn't deserve to be treated this way" because he "has protected people from crimes and saved lives." On August 22, just days after the horrifying white supremacist rally in Charlottesville, Virginia, Trump rhetorically asked a Phoenix campaign audience, "Was Sheriff Joe convicted for doing his job?" On August 25, the president issued the pardon. In a two-paragraph statement, the White House said: "Throughout his time as Sheriff, Arpaio continued his life's work of protecting the public from the scourges of crime and illegal immigration. Sheriff Joe Arpaio is now eighty-five years old, and after more than fifty years of admirable service to our Nation, he is worthy candidate for a Presidential pardon." Trump also added in a tweet, "He kept Arizona safe!" On August 28, he emphasized that Arpaio is "very strong on illegal immigration."

Importantly in this case, President Trump has not issued a pardon after an acknowledgement by Arpaio (or Trump) of his guilt in the matter, as is the case with most pardons. Rather, President Trump has made clear that he believes Arpaio should never have followed the court's order to begin with, and was right to ignore it. That factual context raises grave questions about this pardon's potential to lead to other due process violations.

This issue is not just about Arpaio. Other local, state, and federal government officials will take cues from what happens next, and, if left unchallenged, the pardon will embolden unlawful official action. That is why the pardon power, properly construed with the Due Process Clause, does not allow a president to pardon a government official for contempt of court based on the official's violation of an injunction ordering him to stop violating individuals' constitutional rights.

This position is not in conflict with *Ex parte Grossman*, 267 U.S. 87 (1925). That Prohibition-era case involved a pardon of an individual for criminal contempt after he violated a temporary restraining order against selling liquor at his business in Chicago. *Grossman* simply did not contemplate the present circumstance, involving a pardon issued to a government official for criminal contempt after violating an injunction to stop a systemic practice of violating individuals' constitutional rights. Furthermore, there are serious questions about whether *Grossman* would be reaffirmed today in the current context, given the evolution since 1925 of Due Process Clause analysis with respect to the ability of the other branches of government to limit availability of judicial remedies for constitutional rights violations, and the current erosion of the presumption of regularity and legitimacy for executive action that underlies that decision.

This is an extraordinary request. But that is because of the president's unprecedented action. Your duty to support and defend the Constitution, to protect the ability of the United States to enforce federal civil rights law, and to pursue justice on behalf of individuals whose constitutional rights have been violated trumps this pardon.

We urge you to oppose Arpaio's motion to vacate and dismiss the conviction, because of serious questions about the constitutionality of the presidential pardon. We would be happy to discuss this with your office at your earliest convenience.

Sincerely,

Ronald A. Fein, Legal Director
Shanna M. Cleveland, Senior Counsel
John C. Bonifaz, President
Ben T. Clements, Chair, Board of Directors
Free Speech For People

Ian Bassin, Executive Director
Protect Democracy